FILED

1  ROBINS, KAPLAN, MILLER & CIRESI, L.L.P.
   William A. Webster, (Bar #262359)
2  WAWebster@rkmc.com
   2049 Century Park East, 34th Floor
3  Los Angeles, CA 90067-3208
   Telephone:  310-552-0130
4  Facsimile:   310-229-5800

2014 SEP 10  PM 12: 52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY:_____

5  Attorneys for Defendants
   XL SPECIALTY INSURANCE COMPANY

6

7

8            UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10                                       SACV 14 · 01461 JVS (JCG)

11  SAVAS ZOIS and JUAN AMAYA        Case No.
    dba DUKES BURGERS,
12                                   **NOTICE OF REMOVAL OF**
            Plaintiffs,              **ACTION UNDER 28 U.S.C. §1441(b)**
13                                   **(DIVERSITY JURISDICTION)**
            v.
14
    XL SPECIALTY INSURANCE
15  COMPANY, DOES 1 through 25,
    and ROES 1 through 25, inclusive,
16
            Defendants.
17

18

19

20  TO THE CLERK OF THE ABOVE-ENTITLED COURT:

21        PLEASE TAKE NOTICE that defendants hereby remove to this Court the

22  state court action described below.

23        1.    On August 12, 2014 an action was filed in the Superior Court of the

24  State of California in and for the County of Orange entitled Savas Zois and Juan

25  Amaya dba Dukes Burgers v. XL Specialty Insurance Company ("Complaint"). A

26  copy of the Complaint, Civil Case Cover Sheet, and Notice of Related Case are

27  attached hereto as Exhibit "A".

28

60846459.1

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(B) (DIVERSITY)

COPY

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

2.     The Complaint was served on XL Specialty Insurance Company on August 13, 2014 and the removal is therefore timely.

3.     Defendant XL Specialty Insurance Company filed and served its Answer to the Complaint a September 9, 2014.  A copy of the Answer is attached hereto as Exhibit "B".

4.     This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. §1332, and is one which may be removed to this Court by defendants pursuant to the provisions of 28 U.S.C. §1441(b) in that it is a civil action between citizens of a State and citizens or subjects of a foreign state and the matter in controversy exceeds $75,000 exclusive of interest and costs. As alleged in the Complaint, Plaintiff seeks damages in excess of $100,000 exclusive of interest and costs.  Exhibit "A" at page 5 and 7.

5.     Plaintiff Savas Zois is a resident of the county of Los Angeles and does business at Duke's Charbroiled located at 14350 E. Valley Boulevard, La Puente, California 91746 and is a citizen of California.

6.     Plaintiff Juan P. Amaya is a resident of the county of Los Angeles and is a co-owner of the business identified as Duke's Burgers and is a citizen of California.

7.     Defendant XL Specialty Insurance Company is incorporated in the State of Delaware, with its principal place of business in Connecticut.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

60846459.1

- 2 -

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(B) (DIVERSITY)

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

1      8.      Defendants are informed and believe that Exhibit "A" constitutes the

2   entirety of the state court's file. Attached as Exhibit "C" is a current copy of the

3   docket for the action originally filed in state court.

4

5   DATED:  September 10, 2014          **ROBINS, KAPLAN, MILLER &**
                                        **CIRESI L.L.P.**
6

7                                       By:
8                                            William A. Webster

9                                       **ATTORNEYS FOR DEFENDANT**
                                        **XL SPECIALTY INSURANCE**
10                                       **COMPANY**

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(B) (DIVERSITY)

# CERTIFICATE OF SERVICE

I hereby certify that I have on this 10th day of September, 2014, served the foregoing **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(b) (DIVERSITY JURISDICTION)** via the manner listed below and addressed as follows:

**<u>Via U.S. Mail</u>**

David C. Werner
Law Offices of David C. Werner
35-900 Bob Hope Drive., Suite 105
Rancho Mirage, CA 92270
Tel: 760-321-1676 / Fax: 760-321-1567

*Attorneys for Plaintiffs Savas Zois and Juan Amaya dba Dukes Burgers*

CAROL LEE

60846459.1

- 4 -

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §1441(B) (DIVERSITY)

# EXHIBIT A

1   **LAW OFFICES OF DAVID C. WERNER**
    David C. Werner [SBN: 67993]
2   35-900 Bob Hope Drive, Suite 105
    Rancho Mirage, CA 92270
3   Telephone: (760) 321-1676
    Facsimile: (760) 321-1567
4

5   Attorney for: SAVAS ZOIS and JUAN AMAYA
    dba DUKES BURGERS
6

7

8                 SUPERIOR COURT OF CALIFORNIA – COUNTY OF ORANGE

9                             CENTRAL JUSTICE CENTER

10

11  SAVAS ZOIS and JUAN AMAYA dba       )   Case No:  30-2014-00739439-CU-IC-CJC
    DUKES BURGERS,                      )   Assigned for all Purposes to
12                                      )   Honorable Judge   Judge Geoffrey T. Glass
13          Plaintiffs,                 )   Department:
                                        )
14      v.                              )   **COMPLAINT FOR:**
15                                      )   1. **BREACH OF INSURANCE**
    XL SPECIALTY INSURANCE              )      **CONTRACT**
16  COMPANY, DOES 1 through 25, and     )   2. **BAD FAITH**
    ROES 1 through 25, inclusive,       )
17                                      )
18          Defendants.                 )   Complaint Filed:
                                        )
19

20          COMES NOW Savas Zois and Juan Amaya and alleges causes of action against Defendants
    and each of them as follows:
21

22                                          I.

23                      **IDENTIFICATION OF THE PARTIES**

24      1.  Plaintiffs are ignorant of the true names and capacities of Does 1 through 25 and Roes 1
    through 25. Each of these are sued in this fictitious capacity. When the true names and capacities of
25  these individuals are known, they will be set forth and served and brought and be made a part of this
    action.
26

27      2.  Savas Zois is a resident of the county of Los Angeles and does business at Duke's Charbroiled
28  located at 14350 E. Valley Boulevard, La Puente, California 91746. He is the owner of the business

Law Offices
Of
David C. Werner

                                        1
                                 ─────────────
                                    Complaint

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**08/12/2014** at 04:24:34 PM
Clerk of the Superior Court
By Norri Lau, Deputy Clerk

1   known as Duke's Burger and at all times relevant herein was the operator of said business.

2      3. Juan P. Amaya is a resident of the county of Los Angeles and is a co-owner of the business

3   identified as Duke's Burgers.

4      4. XL Specialty Insurance Company is, on information and belief, an insurance company that is

5   authorized to do and is doing business in the state of California. It has no place of business designated

6   in the state of California and as such is subject to the jurisdiction of each, every and all counties giving

7   jurisdiction to this honorable Court.

8 <div align="center">**II.**</div>

9 <div align="center">**IDENTIFICATION OF PERTINENT DOCUMENTS**</div>

10      5. Attached hereto marked **Exhibit "A"** and incorporated herein by reference is a true and correct

11   copy of policy of insurance, policy number 63A 1003781-03 that was issued to Savas Zois and Juan

12   Amaya dba Dukes Burgers covering them for their losses in their business pertaining to the terms of

13   the policy.

14 <div align="center">**III.**</div>

15 <div align="center">**FIRE DAMAGE**</div>

16      6. On or about November 6, 2012, a fire occurred at the premises where Duke's Burgers conduct

17   its business. The fire damaged the leasehold property of plaintiffs herein and specifically damaged and

18   destroyed the structure which housed their business damaging their appliances as well as their structure

19   and personal property. At all times relevant herein, the plaintiffs had an insurable interest in the

20   structure as well as in the appliances including refrigerators, stoves, food that was stored and other

21   fixtures in the property as they were the rightful tenant of the property and held possession pursuant to

22   an operative lease. They were also the named insured under the XL Specialty Insurance Company

23   policy. As a result of the fire, the business was partially damaged in an amount in excess of $100,000.

24 <div align="center">**IV.**</div>

25 <div align="center">**FACTS PERTINENT TO ALL CAUSES OF ACTION**</div>

26      7. Savas Zois and Juan Amaya (hereinafter collectively referred to as PLAINTIFFS) made a claim

27   in a timely fashion under the XL Specialty Insurance Company policy for the fire damages caused to

28   their business and to the structures that form a part of the business.

Law Offices
Of
David C. Werner

<div align="center">2</div>

<div align="center">Complaint</div>

8.   PLAINTIFFS have performed all conditions precedent on their part to be performed under the aforementioned insurance contract and have fully cooperated with the insurance carrier XL Specialty Insurance Company at all times relevant herein.

9.   Despite the fact that PLAINTIFFS have suffered a covered loss to property as well as to their business, and despite the fact that they have performed all conditions precedent on their part to be performed, XL Specialty Insurance Company has refused to honor their claim, in whole or in part, and has refused to provide them with the benefits due them under the aforementioned policy, thereby breaching the contract.

10. PLAINTIFFS have been damaged as follows:

a)  Because XL Specialty Insurance Company has refused to honor their claim, PLAINTIFFS have suffered damages to property that they have an insurable interest in and they have suffered damage to their business in that they have been out of business since the date of the fire. They have suffered financial losses as a result of the insurance company's refusal to perform its duties and obligations under the contract. They have suffered further financial damages because the insurance company has denied their claim in whole or in part for such items as food spoilage, reimbursement for fixtures, reimbursement for appliances, payment of loss of business income.

b)  As a direct result of the insurance company's refusal to honor its obligations and duties under the policy, PLAINTIFFS have suffered damages in excess of the jurisdictional minimum of this court in an amount to be set forth at time of trial.

11. In refusing to honor the legitimate claim of PLAINTIFFS, the insurance company at all times was unreasonable and acted without proper cause.

12. Specifically, it rejected PLAINTIFFS claim without proper cause: it refused to honor their claim in a timely fashion delaying payment for a substantial period of time; misallocating their damages to the wrong coverages thereby voiding those coverages because they were exhausted when in fact they were not exhausted but had plenty of coverage left had the claim been properly adjusted. In particular, PLAINTIFFS have suffered a denial of their coverage for their food that was spoiled in the fire because of the misallocation by XL Specialty Insurance Company to the business personal

1   property policy limit.

2   13. As a direct result of the unreasonable and improper conduct of XL Specialty Insurance

3   Company and indeed their bad faith, PLAINTIFFS have been required to retain counsel and have and

4   will incur attorney's fees and other court costs associated with prosecuting this action which is an

5   additional item of damage to be claimed by PLAINTIFFS.

6                                         **V.**

7                          **FIRST CAUSE OF ACTION:**

8                           **BREACH OF CONTRACT**

9   14. PLAINTIFFS incorporate by reference as if fully set forth herein each, every and all of the

10  allegations referenced in paragraphs 1 through 13 above.

11  15. PLAINTIFFS have performed all duties and obligations on their part to be performed under the

12  terms of the policy and specifically have done the following: 1) PLAINTIFFS have made a timely and

13  appropriate claim for items that have an insurable interest in associated with Duke's Burgers; 2)

14  PLAINTIFFS have fully cooperated with XL Specialty Insurance Company and provided them with

15  all data, all materials and all other items that they require; 3) PLAINTIFFS have properly documented

16  their claim and have awaited payment.

17  16. XL Specialty Insurance Company (because PLAINTIFFS have suffered a covered loss to their

18  business, a loss covered under the XL Specialty Insurance Company policy) has breached its contract

19  with PLAINTIFFS as follows:

20      a)  They have refused to pay, in whole or in part, covered damages to the structure and to the

21          fixtures;

22      b)  They have refused to pay, in whole or in part, for the personal property;

23      c)  They have misallocated damages covered in one part (Coverage for Structures) to another part

24          (coverage for business personal property);

25      d)  They have retained the vendors performing the work and have unreasonably and

26          inappropriately delayed the reconstruction.

27  17. As a direct result of the breach of contract by XL Specialty Insurance Company, PLAINTIFFS

28  have been damaged as follows:

Law Offices
Of
David C. Werner

4

Complaint

a) They have been wrongfully denied benefits that they are entitled to under the XL Specialty Insurance Company policy in an amount to be set forth at time of trial but in excess of $100,000.

## VI.

## SECOND CAUSE OF ACTION:

## BAD FAITH

18. PLAINTIFFS incorporate by reference as if fully set forth herein each, every and all of the allegations referenced in paragraphs 1 through 17 above.

19. In every insurance contract there is an implied covenant of good faith and fair dealing. This duty requires that the insurance carrier give equal consideration to the interest of its insured and conduct a full, complete and total investigation that is objective and fair minded seeking always to find coverage and to benefit their insured. In addition, it must keep its insureds fully informed of all coverages under the policy and of all duties and obligations available to the insured.

20. Further, it has a duty to respond to communications. It has a duty to properly act and to act reasonably and with proper purpose when resolving the claim. It further has a duty to act with the interest of the insured in mind to make sure that payment is not delayed and is timely paid.

21. Further, the duty of good faith and fair dealing has been defined in CACI 2330, 2332, 2333 and 2337. Same are incorporated herein by this reference.

22. XL Specialty Insurance Company has breached the duty of good faith and fair dealing in that it has failed to accomplish any of these items and specifically it has: 1) failed to give equal consideration to the interest of PLAINTIFFS as to its own interest; 2) it has unreasonably denied claims presented to it or has unreasonably delayed payment; 3) it has unreasonably refused to honor PLAINTIFFS claim for food spoilage, damage to fixtures, damage to appliances and ovens; 4) they did not, thoroughly, properly and with proper cause investigate the claim of Plaintiffs; 5) they failed to evaluate the claim objectively, reasonably, and with proper purpose; 6) they had an unduly restrictive interpretation of the claim thereby resulting in a denial of the benefits obviously due to the plaintiffs; 7) they used improper standards for evaluating and denying the claim in whole or in part; 8) they unreasonably delayed the payment of the claim without proper cause or purpose; 9) they had dilatory claims handling practices

Law Offices
Of
David C. Werner

5

Complaint

1   that resulted in the denial or delay of the payment of the claim; 10) they used deceptive practices to
2   avoid payment of the claim; 11) they used abusive or coercive practices to avoid payment of the claim
3   in whole or in part; 12) they used unreasonably low settlement offers to deny and restrict the payment
4   of the claim; 13) they controlled the rebuilding of the Dukes Burgers building by controlling the
5   vendors, restricting the vendors, and directing the reconstruction as if they were the general contractor
6   and reasonably denying to the plaintiffs their right to select their own contractor and to perform the
7   reconstruction and rebuilding of the property in a timely fashion.

8      23. By way of example only, XL Specialty Insurance Company has allocated to business personal
9   property payment of certain appliances in the kitchen including ovens, refrigerators and other storage
10  items necessary to conduct PLAINTIFFS business. Under the terms of the XL Specialty Insurance
11  Company policy, this is defined as a covered loss under structures with a policy limits of $550,000.00.
12  Instead of allocating the above items to this loss coverage, XL Specialty Insurance Company has
13  allocated it to Business Personal Property which has a lower limit of $130,000. By doing this, XL
14  Specialty Insurance Company essentially exhausted the business personal property coverage and
15  therefore turned down PLAINTIFFS claim for compensation for food that had spoiled. This has
16  deprived PLAINTIFFS of the benefit of the policy amounts well in excess of $30,000. PLAINTIFFS
17  were also required to pay out of their own pocket the cost to refurbish the kitchen, the ovens and other
18  appliances. XL Specialty Insurance Company was presented with the fact that it had made a
19  misallocation and it has admitted that it had done so. True and correct copies of letters dated July 1,
20  2014 and July 11, 2014 admitting this are collectively attached hereto and marked **Exhibit "B"** and
21  incorporated herein by this reference. XL Specialty Insurance Company was then requested to correct
22  this item. XL Specialty Insurance Company advised that they would only correct this mistake that they
23  had made if the check issued by XL Specialty Insurance Company to pay for the appliances under the
24  business personal property were first returned and then voided and a new check would be issued, not to
25  PLAINTIFFS but to the owner of the building. Moreover, they refused to issue a check or allow
26  PLAINTIFFS to utilize the check already issued to pay for the food spoilage that had previously been
27  demanded.

28     24. XL Specialty Insurance Company was informed that PLAINTIFFS were penniless and without

1   funds and without the necessary and proper funding of the claim, by XL Specialty Insurance Company,

2   that PLAINTIFFS would face financial ruin. Despite this fact, XL Specialty Insurance Company

3   refused to honor PLAINTIFFS reasonable request, acted unreasonable and without proper purpose and

4   with the intent to damage and to destroy PLAINTIFFS for no apparent reason.

5       25. Because of the breach of the duty of good faith and fair dealing, PLAINTIFFS have suffered

6   damages as follows:

7       a)  PLAINTIFFS claim has been wrongfully denied and they have been deprived of the benefits

8           due under the policy in an amount that will be set forth at time of trial but which is in excess of

9           $100,000.

10       b)  PLAINTIFFS have suffered great and considerable financial distress and associated emotional

11           distress as a result of having to fund the reconstruction of their business on their own without

12           the benefit of the policy issued by XL Specialty Insurance Company which was being

13           wrongfully withheld from them without proper purpose and on an unreasonable basis.

14       c)  PLAINTIFFS have been required to retain counsel to represent their interest as XL Specialty

15           Insurance Company absolutely refuses to provide – in a self-executing fashion – the proceeds

16           of the coverage as is required by the policy.

17

18       WHEREFORE, PLAINTIFFS pray for damages as follows:

19       FOR FIRST CAUSE OF ACTION:  They have been wrongfully denied benefits that they are

20       entitled to under the XL Specialty Insurance Company policy in an amount to be set forth at

21       time of trial but in excess of $100,000. For all benefits due under the policy which will be set

22       forth at time of trial.

23       FOR SECOND CAUSE OF ACTION: PLAINTIFFS claim has been wrongfully denied in bad

24       faith and they have been deprived of the benefits due under the policy in an amount that will be

25       set forth at time of trial but which is in excess of $100,000. PLAINTIFFS have suffered great

26       and considerable financial distress and associated emotional distress as a result of having to

27       fund the reconstruction of their business on their own without the benefit of the policy issued

28       by XL Specialty Insurance Company which was being wrongfully withheld from them without

Law Offices
Of
David C. Werner

7

Complaint

1   proper purpose and on an unreasonable basis. PLAINTIFFS have been required to retain

2   counsel to represent their interest as XL Specialty Insurance Company absolutely refuses to

3   provide – in a self-executing fashion – the proceeds of the coverage as is required by the

4   policy.

5

6

7   DATED:  June 6, 2014                          LAW OFFICES OF DAVID C. WERNER

8

9                                              By:  _____

10                                                    DAVID C. WERNER
11                                                    Attorney for SAVAS ZOIS and JUAN AMAYA
12                                                    dba DUKES BURGERS

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Law Offices
Of
David C. Werner

# EXHIBIT "A"



**UCA** GENERAL INSURANCE SERVICES
*"Service Is Our Strength"*™

# Information Sheet

**\*\*PLEASE NOTE – This sheet must be included when the policy is delivered to the insured.**

**Named Insured:** Savas Zois  and Juan Amaya
**DBA:** DBA: Dukes Burgers
**Effective Date:** 10/17/2012 12:01 A.M. Standard Time to 10/17/2013 12:01 A.M. Standard Time
**Policy #:** 63A1003781-03

**Mailing Address:** 14350 E. Valley Blvd.
La Puente, CA  91746

**Agency:** GRG Best Insurance Agency
1400 E Katella Ave #213
Orange CA

Phone #:
Email:  grbest@sbcglobal.net

|  |  |  |
|---|---|---|
| **Certified Acts of Terrorism Premium:** | $ | Excluded |
| **Policy Premium:** | $ | 6,404.00 |
| **CIGA Fees:** | $ | 0.00 |
| **Total Premium Including State Fees:** | $ | 6,404.00 |
| **Fee:** | $ | 200.00 |
| **Total Amount Due:** | $ | 6,604.00 |
| | | **FEE IS FULLY EARNED** |

*This is a summary of the policy premium and fees charged by UCA General Insurance Services Inc.  This information is provided by UCA General Insurance Services, Inc. as a courtesy to our clients and is __not a part of your insurance policy__.   You will need to refer to your policy for all terms, conditions, limitations and exclusions.*

INSURED COPY

This side left blank.

COMMERCIAL PACKAGE POLICY



## XL Specialty Insurance Company

## COMMON POLICY DECLARATIONS

Policy Number: 63A1003781-03      Renewal of: 63A1003781-02

| | |
|---|---|
| Named Insured: | Savas Zois  and Juan Amaya<br>DBA: Dukes Burgers |
| Address: | 14350 E. Valley Blvd.<br>La Puente  CA  91746 |
| Policy Period: | From  10/17/2012  12:01 A.M. Standard Time     To  10/17/2013  12:01 A.M. Standard Time |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

This policy consists of the following coverage parts for which a premium is indicated. This premium may be subject to adjustment.

| | | |
|---|---|---|
| Section I Coverages | | Included |
| Section II Coverages | | Included |
| Section III Coverages | | Included |
| Section IV Coverages | | Included |
| Section V Coverages | | Included |
| Certified Acts of Terrorism Premium | $ | Excluded |
| Policy Premium | $ | 6,404.00 |
| CIGA Fee | $ | 0.00 |
| Total Amount: | $ | 6,404.00 |

Form of Business:      Partnership

Forms applicable to all Coverage Parts:      See Attached Schedule of Forms and Endorsements.

Producer Name and Address:
GRG Best Insurance Agency
1400 E Katella Ave #213
Orange CA

Date:12/05/2012

_____
Authorized Representative or Countersignature
(in states where applicable)

Declaration (01/10)           Insured Copy

POLICY NUMBER:      63A1003781-03                                   **COMMERCIAL PACKAGE POLICY**



## XL Specialty Insurance Company

### ADDITIONAL INSURED

| | |
|---|---|
| Named Insured: | Savas Zois  and Juan Amaya<br>DBA: Dukes Burgers |
| Address: | 14350 E. Valley Blvd.<br>La Puente  CA  91746 |
| Policy Period: | From  10/17/2012 12:01 A.M. Standard Time  To  10/17/2013 12:01 A.M. Standard Time |

| | | | | | |
|---|---|---|---|---|---|
| Additional Insured | The Sam and Demetra Dohkas Family Trust<br>408 N. Ocean View St.<br>Orange  CA  92865 | Loc # | 1 | Bld # | 1 |
| Mortgagee | First California Bank<br>P.O. Box 6017<br>Camarillo  CA  93011 | Loc # | 1 | Bld # | 1 |
| | | Loc # | | Bld # | |
| | | Loc # | | Bld # | |
| | | Loc # | | Bld # | |
| | | Loc # | | Bld # | |
| | | Loc # | | Bld # | |
| | | Loc # | | Bld # | |

LP-1 (05/08)                                                                  10451-1/CA

Insured Copy

POLICY NUMBER:   63A1003781-03                        COMMERCIAL PACKAGE POLICY



# XL Specialty Insurance Company

## ADVISORY STATEMENT
## COMMERCIAL PROPERTY COVERAGE PART

| | |
|---|---|
| Named Insured: | Savas Zois  and Juan Amaya |
| | DBA: Dukes Burgers |
| Address: | 14350 E. Valley Blvd. |
| | La Puente  CA   91746 |

Policy Period:   From  10/17/2012 12:01 A.M. Standard Time     To  10/17/2013 12:01 A.M. Standard Time

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

Description of Premises:     Restaurant - Pref.

| Loc# | Bld# | Location/Construction/Occupancy |
|---|---|---|
| 1 | 1 | 14350 E. Valley Blvd. |
| | | La Puente,  CA  91746 |

SEE NEXT PAGE                                                    Policy Page: 1

PR-01 (05/08)                                                    10451-1/CA

Insured Copy

POLICY NUMBER: 63A1003781-03                    COMMERCIAL PACKAGE POLICY



## XL Specialty Insurance Company

### ADVISORY STATEMENT
### COMMERCIAL PROPERTY COVERAGE PART
#### (Continued)

Coverages Provided      (insurance at the described premises applies only for
coverages for which a limit of insurance is shown)

| Loc # | Bld# | Coverage | Limit | Deductible | Co-ins % |
|-------|------|----------|-------|------------|----------|
| 1 | 1 | Building - Special Form - Replacement Cost | $ 550,000 | $ 1,000 | 90 |
| 1 | 1 | Business Personal Property-Special Form-Rep Cost-Inc Stock | $ 130,000 | $ 1,000 | 90 |
| 1 | 1 | Signs - Special Form - Aggregate Limit | $ 10,000 | $ 250 | |
| 1 | 1 | Business Income Coverage per ALS-2 (UP TO 12 MONTHS LIMIT) | Included | N/A | |
| 1 | 1 | HARTFORD - Business Income & Extra Expense | Included | N/A | |
| 1 | 1 | HARTFORD - Expediting Expense | $ 100,000 | $ 1,000 | |
| 1 | 1 | HARTFORD - Hazardous Substance | $ 100,000 | $ 1,000 | |
| 1 | 1 | HARTFORD - Data Restoration | $ 100,000 | $ 1,000 | |
| 1 | 1 | HARTFORD - Spoilage & CFC Refrigerant | $ 100,000 | $ 1,000 | |
| 1 | 1 | Fine Arts (5,000 per item, 50,000 agg per policy term) | $ 5,000 | $ 1,000 | |

POLICY NUMBER:    63A1003781-03

COMMERCIAL PACKAGE POLICY



## XL Specialty Insurance Company

## GENERAL LIABILITY LIMITS FORM

| | |
|---|---|
| Named Insured: | Savas Zois  and Juan Amaya |
| | DBA: Dukes Burgers |
| Address: | 14350 E. Valley Blvd. |
| | La Puente  CA  91746 |

Policy Period:    From  10/17/2012 12:01 A.M. Standard Time  To  10/17/2013 12:01 A.M. Standard Time

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

| COVERAGE | LIMIT |
|---|---|
| General Liability | |
|     General Aggregate Limit | $ 2,000,000 |
|     Each Occurrence Limit | $ 1,000,000 |
|     Products & Completed Operation Limit | Included |
|     Personal Injury and Advertising Limit | Included |
|     Fire Damage Limit | $ 100,000 |
|     Medical Expense Limit | $ 1,000 |
|     Hired and Non-Owned Auto Liability | Excluded |
| Liquor Law Liability | |
|     General Aggregate Limit | Excluded |
|     Each Common Cause | Excluded |

| Loc | Bld | Class | Code No. | Premium Basis |
|---|---|---|---|---|
| 1 | 1 | PREF. RESTAURANT | 334-16816 | A)1400 |
| 1 | 1 | SAME | 336-16816 | INCLUDED |

LM-1 (05/08)

Insured Copy

10451-1/CA

POLICY NUMBER:   63A1003781-03

COMMERCIAL PACKAGE POLICY



## XL Specialty Insurance Company

# ADVISORY STATEMENT
# COMMERCIAL CRIME COVERAGE PART

| | |
|---|---|
| Named Insured: | Savas Zois  and Juan Amaya   DBA: Dukes Burgers |
| Address: | 14350 E. Valley Blvd.<br>La Puente CA<br>91746 |
| Policy Period: | From  10/17/2012 12:01 A.M. Standard Time  To  10/17/2013 12:01 A.M. Standard Time |

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

Cancellation of prior insurance: By acceptance of this Coverage Part you give us notice that all prior policies or bonds are cancelled effective at the time this Coverage Part becomes effective.

| Loc | Bld | Coverage | Deductible | Limit |
|---|---|---|---|---|
| 1 | 1 | Theft,Disappearance & Destruction Inside (Money & Sec.) | $ 250 | $ 10,000 |
| 1 | 1 | Theft,Disappearance & Destruction Outside (Money & Sec.) | $ 250 | $ 10,000 |
| 1 | 1 | Employee Dishonesty-Blanket Occurrence/Aggregate Limit | $ 250 | $ 25,000 |
| 1 | 1 | Forgery & Alteration | $ 250 | $ 5,000 |

CR-01 (05/08)

10451-1/CA

Insured Copy

POLICY NUMBER:   63A1003781-03                                    COMMERCIAL PACKAGE POLICY



## XL Specialty Insurance Company

### ADVISORY STATEMENT
### COMMERCIAL INLAND MARINE COVERAGE PART

Named Insured:   Savas Zois  and Juan Amaya
DBA: Dukes Burgers

Address:        14350 E. Valley Blvd.
La Puente  CA  91746

Policy Period:   From  10/17/2012  12:01 A.M. Standard Time   To  10/17/2013  12:01 A.M. Standard Time

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY,
WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

Business Description:   Partnership

| loc # | bld # | Coverage | Deductible | Limit |
|-------|-------|----------|------------|-------|
| 1 | 1 | Accts Receivable - at Loc. shown -in metal file cabinet | N/A | $ 100,000 |

IN-01 (05/08)                                    Insured Copy                                    10451-1/CA



## EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
## CLAIMS MADE AND REPORTED COVERAGE (STANDARD)

### DECLARATIONS

**NOTICE:   This is a Claims Made and Reported Policy.  Please read this coverage part carefully and discuss the coverage with your insurance agent. The Application and attachments are hereby attached and made a part of this coverage part.**

Insurance Provided by:    XL Specialty Insurance Company

Policy Number:         63A1003781-03
Renewal of:            63A1003781-02

1.   **NAMED INSURED:**   Savas Zois  and Juan Amaya    DBA: Dukes Burgers

(☐)   Individual      (☒)   Partnership   (☐)   Corporation   (☐)   Joint Venture   (☐)   Other

2.   POLICY PERIOD:

Effective Date:   10/17/2012          Expiration Date:    10/17/2013
12:01 A.M. standard time at your mailing address shown below.

3.   ADDRESS:      14350 E. Valley Blvd.
La Puente CA  91746

4.   LIMIT OF LIABILITY (INCLUDES **DEFENSE COSTS**):

a)   $   100,000                Each **Insured Event** Limit

b)   $   100,000                Aggregate Limit of Liability

5.   RETENTION (INCLUDES **DEFENSE COSTS**):

$   2,500                Any One **Insured Event**

6.   PRIOR KNOWLEDGE DATE:      10/17/2010

7.   RETROACTIVE DATE:           10/17/2010

8.   PREMIUM:                $  Included

9.   ENDORSEMENTS EFFECTIVE AT INCEPTION:

GUD 000 0110

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

Page 1 of 2

| Endorsement Number | Endorsement Form | Endorsement Title |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**Refer to Common Policy Declarations**

Authorized Representative for Notice of Claim or Potential Claim:

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE DATE (12:01 A.M. STANDARD TIME) | NAMED INSURED |
|---|---|---|
| 63A1003781-03 | 10/17/2012 | Savas Zois  and Juan Amaya   DBA: Dukes Burgers |

# FORMS LIST

| FORM NAME | EDITION DATE | FORM DESCRIPTION |
|---|---|---|
| Policy Coversheet | | Policy Information Sheet |
| XL Declaration | 0110 | Common Policy Declarations |
| XL LP1 | 0508 | Commercial Pkg Policy - Additional Insured |
| XL PR01 | 0508 | Advisory Statement - Commercial Property Coverage Part |
| XL PR01 PT2 | 0508 | Advisory Statement (Cont'd) - Commercial Property Coverage Part |
| XL LM1 | 0508 | General Liability Limits Form |
| XL CR01 | 0508 | Advisory Statement - Commercial Crime Coverage Part |
| XL IN01 | 0508 | Advisory Statement - Commercial IM Coverage Part |
| GUD 000 | 0110 | Employment-Related Practices Liability Coverage Part Claims Made and Reported Coverage (Standard) |
| APL1 | 1200 | Schedule of Forms and Endorsements |
| COEND ALS2 | 0206 | Business Income Coverage (Actual Loss Sustained) |
| COEND CC2 | 0206 | Credit Card Slips Coverage Extension |
| COEND CR2 | 0206 | Coverage Extension - Coat Check Room Liability |
| COEND CSA2 | 0903 | Burglary & Robbery Protective Systems Warranty |
| COEND EBC1 | 0209 | Equipment Breakdown Coverage |
| ED1 | 0508 | Coverage For Employee Dishonesty |
| COENDEBI90 | 0508 | Coverage Extension - Extended Business Income |
| COENDPE | 1010 | Platinum Endorsement |
| COEND10 | 0994 | Professional Services |
| COEND13 | 0907 | Pollution/Contamination Exclusion |
| COEND15 | 1294 | Interinsured Claims and Suits Exclusion |
| COEND16 | 1294 | Asbestos Exclusion |
| COEND17 | 1294 | Lead Exclusion |
| COEND21 | 0196 | Discovered Injury or Damage Exclusion |
| COEND24CA | 0496 | California Disability Discrimination Exclusion |
| COEND25 | 0804 | Punitive or Exemplary Damage Exclusion |
| COEND29 | 0303 | Limitation of Coverage to Designated Premises and Designated Operations |
| COEND31 | 0496 | Amendment of Other Insurance Condition (Excess Insurance) |
| COEND33 | 0905 | Exclusion - Subsidence |
| COEND35 | 1101 | Pathogenic Organisms Exclusion |
| MP1 | 0802 | Limitation On Amount Paid For Insured Property Damaged By Fungus |
| COEND44 | 0312 | Advertising Distribution Exclusion |
| PNCW01 | 1211 | Fraud Notice |
| PN CW 05 | 1010 | U.S. Treasury Department's Office Of Foreign Assets Control |
| COEND8 | 0303 | Additional Insured - Managers or Lessors of Premises |
| IL0003 | 0689 | Calculation of Premium |
| IL0017 | 1185 | Common Policy Conditions |
| IL0021 | 1194 | Nuclear Energy Liability Exclusion Endorsement |
| IL0270 | 1104 | California Changes - Cancellation and Nonrenewal |
| IL0935 | 0498 | Exclusion of Certain Computer Related Losses |
| IL0953 | 0108 | Exclusion of Certified Acts of Terrorism |
| IL MP 9104 | 0710 | In Witness Whereof |
| CP0010 | 0402 | Building and Personal Property Coverage |
| CP0030 | 0402 | Business Income Coverage Form (And Extra Expense) |
| CP0090 | 0788 | Commercial Property Conditions |

| CP0186 | 0486 | Changes - Pollutants |
| CP0299 | 1185 | Cancellation Changes (Mandatory with Building Coverage) |
| CP1030 | 0402 | Causes of Loss - Special Form |
| CP1210 | 1185 | Protective Safeguards |
| CP1440 | 0788 | Outside Signs |
| CP1510 | 1090 | Ordinary Payroll Limitation or Exclusion |
| CR0001 | 1090 | Employee Dishonesty Coverage Form |
| LED-1 | 0107 | Limitation on Amount Paid Under The Employee Dishonesty Coverage Forms |
| CR0003 | 0186 | Forgery or Alteration  Coverage Form |
| CR0004 | 1090 | Theft, Disappearance and Destruction |
| CG0001 | 1204 | Commercial General Liability Coverage |
| CG0099 | 1185 | Changes In General Liability Forms-Commercial Package |
| CG2147 | 1093 | Employment Related Practices Exclusion |
| CG2160 | 0498 | Exclusion - Year 2000 Computer-Related |
| CG2161 | 0498 | Year 2000 Computer Exclusion |
| CG2173 | 0108 | Exclusion of Certified Acts Of Terrorism |
| CG2407 | 0196 | Products/Completed Operations Hazards |
| CR1000 | 0695 | Crime General Provisions |
| CM0001 | 0695 | Commercial Inland Marine Conditions |
| CM0066 | 0695 | Accounts Receivable Coverage Form |
| GUD 050 | 0110 | Employment Related Practices Liability Coverage Part Claims Made and Reported Coverage (Standard) |
| PN CA 02 | 0405 | Notice to Policyholders |
| PN CW 02 | 0505 | Notice to Policyholders |

APL-1 1200

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BUSINESS INCOME COVERAGE (Actual Loss Sustained)

This endorsement modifies insurance provided under the following:

**BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM**

1.  *The section entitled "6. Coverage Extension" of the Business Income Coverage Form is deleted and replaced with the following provisions:*

    6.  Coverage Extension

        Newly Acquired Locations

        a.  You may extend your Business Income Coverage to apply to property at any location you acquire other than fairs or exhibitions.

        b.  The most we will pay for loss under this extension is $100,000 at each location.

        c.  Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

            (1) This policy expires;

            (2) 30 days expire after you acquire or begin to construct the property; or

            (3) You report values to us.

            We will charge you additional premium for values reported from the date you acquire the property.

2.  *The following provisions are added to the section "A. Coverage" provisions as "7. Limits of Insurance", immediately after the section "6. Coverage Extension" of the Business Income Coverage Form.*

    7.  Limits of Insurance

        We will pay for loss of Business Income or Extra Expense that occurs within 12 consecutive months immediately following the date of direct physical loss or damage caused by a covered cause of loss.

3.  *The section entitled "B. Limits of Insurance" of the Business Income Coverage Form is deleted.*

4.  *The section entitled "D. Additional Condition" of the Business Income Coverage Form is deleted.*

5.  *The section entitled "E. Optional Coverages", of the Business Income Coverage Form is deleted.*

6.  *The definition of the term **"Period of Restoration"**, of the Business Income Coverage Form is deleted and replaced with the following:*

    3.  **"Period of Restoration"** means the period of time that:

        a.  Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

        b.  Ends on the earlier of the following dates:

            (1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality, or

            (2) One year immediately following the date of direct physical loss or damage caused by a covered cause of loss.

    "Period of Restoration: does not include any increased period required due to the enforcement of any law that regulates the construction, use or repair, or requires the tearing down of any property.

    The expiration date of this policy will not cut short the "Period of Restoration".

Co. End ALS-2
02/06

POLICY NUMBER: 63A1003781-03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Coverage Extension – Credit Card Slips

This endorsement modifies insurance provided under the following:

Building and Personal Property Coverage Form and Cause of Loss Form

We will pay up to $5,000.00 for amounts you are unable to collect because of a covered loss to your credit card slips while they are at a covered location. This limit is the most we will pay in any one occurrence.  If it is not possible to determine the amount involved in such a loss, your past business experience will be used as a guide in setting the amount.

A $250.00 deductible applies to each Extension shown above, per Claim.  All other applicable terms and conditions of this policy apply unless they are specifically contradicted by provisions that appear within each Extension.

Co. End. CC-2
02/06

POLICY NUMBER:  63A1003781-03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# Coverage Extension – Coat Check Room Liability

This endorsement modifies insurance provided under the following:

Building and Personal Property Coverage Form

Coverage A., section 5, Paragraph g. is hereby added.

g.  We will pay up to $250 per item and $1,000 in the aggregate for loss of or damage to Articles of clothing and/or personal effects that are personal property of others and while under check or receipt in the check room of the insured's premises.

A.  **EXCLUSIONS**

This policy does not cover the insured's liability for:

1.  Accounts, deeds, bills, currency, evidence of debts, money notes, credit cards, securities, jewels, jewelry, passports, documents, tickets or manuscripts.

This additional coverage is subject to the same terms and conditions as stated in the Cause of Loss form located in the Commercial Property Coverage Part.

In case of loss or damage for which claim is made under this coverage, the company reserves the right to adjust this claim with the owner or owners of the property involved.  Settlement of such claim to the satisfaction of such owner or owners shall be in full satisfaction of any claim of the insured.

Co. End. CR-2
02/06

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# BURGLARY & ROBBERY PROTECTIVE SYSTEMS WARRANTY

This endorsement modifies insurance provided under the following:

> **BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM**
> **COMMERCIAL PROPERTY COVERAGE PART**

In consideration of the premium at which this policy is written, based on the protection of the insured property by a Central Station Burglar Alarm, it is warranted by the insured, and a condition of this policy, that the Insured shall maintain in complete working order all equipment and services pertaining to the system.

The Insured shall give immediate notice of any impairment in or suspension of such equipment or services within the knowledge of the Insured to this Company.

Theft insurance under this Coverage Part will be automatically suspended at the involved location if you fail to notify us immediately.

**FAILURE TO COMPLY WITH THIS WARRANTY SHALL SUSPEND THIS INSURANCE.**

CSA-2 (9-03)

<u>THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.</u>

# EQUIPMENT BREAKDOWN COVERAGE

This endorsement modifies insurance provided under the following:
COMMERCIAL PROPERTY COVERAGE PART

A.   The following is added as an Additional Coverage to the Causes of Loss— Basic Form, Broad Form or Special Form.

**Additional Coverage – Equipment Breakdown**
The term Covered Cause of Loss includes the Additional Coverage Equipment Breakdown as described and limited below.

1.   We will pay for direct physical damage to Covered Property that is the direct result of an "accident." As used in this Additional Coverage, "accident" means a fortuitous event that causes direct physical damage to "covered equipment." The event must be one of the following:

   a.   mechanical breakdown, including rupture or bursting caused by centrifugal force;

   b.   artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

   c.   explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

   d.   loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

   e.   loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

2.   The following coverages also apply to the direct result of an "accident." These coverages do not provide additional amounts of insurance.

   a.   Expediting Expenses
      With respect to your damaged Covered Property, we will pay up to $100,000, the reasonable extra cost to:
      (1)   make temporary repairs; and
      (2)   expedite permanent repairs or permanent replacement.

   b.   Hazardous Substances
      We will pay for the additional cost to repair or replace Covered Property because of contamination by a "hazardous substance." This includes the additional expenses to clean up or dispose of such property.

      This does not include contamination of "perishable goods" by refrigerant, including but not limited to ammonia, which is addressed in 2.c.(1)(b) below. As used in this coverage, additional costs mean those beyond what would have been payable under this Equipment Breakdown Coverage had no "hazardous substance" been involved.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EBC-1 (2/09)                                     Page 1 of 5

The most we will pay for loss, damage or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $100,000.

   c.   Spoilage

      (1)   We will pay:

          (a)   for physical damage to "perishable goods" due to spoilage;

          (b)   for physical damage to "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia;

          (c)   any necessary expenses you incur to reduce the amount of loss under this coverage to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

      (2)   If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the "accident," less discounts and expenses you otherwise would have had. Otherwise our payment will be determined in accordance with the Valuation condition.

The most we will pay for loss, damage or expense under this coverage is $100,000.

   d.   Data Restoration

      We will pay for your reasonable and necessary cost to research, replace and restore lost "data."

The most we will pay for loss or expense under this coverage, including actual loss of Business Income you sustain and necessary Extra Expense you incur, if shown as covered, is $100,000.

   e.   Service Interruption

      (1)   Any insurance provided for Business Income, Extra Expense or Spoilage is extended to apply to your loss, damage or expense caused by an "accident" to equipment that is owned by a utility, landlord or other supplier with whom you have a contract to supply you with any of the following services: electrical power, waste disposal, air conditioning, refrigeration, heating, natural gas, compressed air, water, steam, internet access, telecommunications services, wide area networks or data transmission. The equipment must meet the definition of "covered equipment" except that it is not Covered Property.

      (2)   The most we will pay for loss, damage or expense under this coverage is the limit that applies to Business Income, Extra Expense or Spoilage.

   f.   Business Income and Extra Expense

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

EBC-1 (2/09)

Any insurance provided under this coverage part for Business Income or Extra Expense is extended to the coverage provided by this endorsement. The most we will pay for loss of Business Income you sustain or necessary Extra Expense you incur is the limit shown in the Declarations for that coverage.

3.    **EXCLUSIONS**

All exclusions in the Causes of Loss form apply except as modified below and to the extent that coverage is specifically provided by this Additional Coverage Equipment Breakdown.

    a.    The exclusions are modified as follows:

        (1)    If the Causes of Loss -- Basic Form or Causes of Loss -- Broad Form applies, the following is added to Exclusion B.2.:

            Depletion, deterioration, corrosion, erosion, wear and tear, or other gradually developing conditions. But if an "accident" results, we will pay for the resulting loss, damage or expense.

        (2)    If the Causes of Loss—Special Form applies, as respects this endorsement only, the last paragraph of Exclusion B.2.d. is deleted and replaced with the following:

            But if an excluded cause of loss that is listed in 2.d.(1) through (7) results in an "accident," we will pay for the loss, damage or expense caused by that "accident."

    b.    We will not pay under this endorsement for loss, damage or expense caused by or resulting from:

        (1)    any defect, programming error, programming limitation, computer virus, malicious code, loss of "data," loss of access, loss of use, loss of functionality or other condition within or involving "data" or "media" of any kind. But if an "accident" results, we will pay for the resulting loss, damage or expense; or

        (2)    any of the following tests:

            a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel, or an electrical insulation breakdown test of any type of electrical equipment.

    c.    With respect to Service Interruption coverage, we will also not pay for an "accident" caused by or resulting from: fire; lightning; windstorm or hail; explosion (except as specifically provided in A.1.c. above); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing; collapse; flood or earth movement.

    d.    With respect to Business Income, Extra Expense and Service Interruption coverages, we will also not pay for any increase in loss resulting from an agreement between you and your customer or supplier.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Page 3 of 5

EBC-1 (2/09)

e.  We will not pay for loss, damage or expense caused directly or indirectly by the following, whether or not caused by or resulting from an "accident": Any mold, fungus, mildew or yeast, including any spores or toxins produced by or emanating from such mold, fungus, mildew or yeast. This includes, but is not limited to, costs arising from clean up, removal, or abatement of such mold, fungus, mildew or yeast, spores or toxins. However, this exclusion does not apply to spoilage of personal property that is "perishable goods," to the extent that spoilage is covered under Spoilage coverage.

f.  We will not pay under this endorsement for any loss or damage to animals.

4.  DEFINITIONS

The following definitions are added:

a.  "Covered equipment"

  (1)  "Covered equipment" means Covered Property:

    (a)  that generates, transmits or utilizes energy, including electronic communications and data processing equipment; or

    (b)  which, during normal usage, operates under vacuum or pressure, other than the weight of its contents.

  (2)  None of the following is "covered equipment":

    (a)  structure, foundation, cabinet, compartment or air supported structure or building;

    (b)  insulating or refractory material;

    (c)  sewer piping, underground vessels or piping, or piping forming a part of a sprinkler system;

    (d)  water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

    (e)  "vehicle" or any equipment mounted on a "vehicle",

    (f)  satellite, spacecraft or any equipment mounted on a satellite or spacecraft;

    (g)  dragline, excavation or construction equipment; or

    (h)  equipment manufactured by you for sale.

b.  "Data" means information or instructions stored in digital code capable of being processed by machinery.

c.  "Hazardous substance" means any substance that is hazardous to health or has been declared to be hazardous to health by a governmental agency.

d.  "Media" means material on which "data" is recorded, such as magnetic tapes, hard disks, optical disks or floppy disks.

e.  "One accident" means: If an initial "accident" causes other "accidents," all will be considered "one accident." All "accidents" that are the result of the same event will be considered "one accident."

f.  "Perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

EBC-1 (2/09)

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Page 4 of 5

g.    "Vehicle" means, as respects this endorsement only, any machine or apparatus that is used for transportation or moves under its own power. "Vehicle" includes, but is not limited to, car, truck, bus, trailer, train, aircraft, watercraft, forklift, bulldozer, tractor or harvester.

However, any property that is stationary, permanently installed at a covered location and that receives electrical power from an external power source will not be considered a "vehicle."

B.    The Building and Personal Property Coverage Form is modified as follows.
The definitions stated above also apply to section B. of this endorsement.

CONDITIONS

The following conditions are in addition to the Conditions in the Building and Personal Property Coverage Form and the Common Policy Conditions.

1.    Suspension

Whenever "covered equipment" is found to be in, or exposed to, a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an "accident" to that "covered equipment." This can be done by mailing or delivering a written notice of suspension to:

a.    your last known address; or

b.    the address where the "covered equipment" is located.

Once suspended in this way, your insurance can be reinstated only by an endorsement for that "covered equipment." If we suspend your insurance, you will get a pro rata refund of premium for that "covered equipment" for the period of suspension. But the suspension will be effective even if we have not yet made or offered a refund.

2.    Jurisdictional Inspections

If any property that is "covered equipment" under this endorsement requires inspection to comply with state or municipal boiler and pressure vessel regulations, we agree to perform such inspection on your behalf. We do not warrant that conditions are safe or healthful.

3.    Environmental, Safety and Efficiency Improvements

If "covered equipment" requires replacement due to an "accident", we will pay your additional cost to replace with equipment that is better for the environment, safer or more efficient than the equipment being replaced.

However, we will not pay more than 125% of what the cost would have been to repair or replace with like kind and quality. This condition does not increase any of the applicable limits. This condition does not apply to any property to which Actual Cash Value applies.

The most we will pay for loss, damage or expense under this endorsement arising from any "one accident" is the applicable Limit of Insurance in the Declarations, loss or damage with a $1,000 deductible applicable. Coverage provided under this endorsement does not provide an additional amount of insurance.

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**

# COVERAGE FOR EMPLOYEE DISHONESTY

This endorsement modifies insurance provided under the following:

COMMERCIAL CRIME COVERAGE PART

A.  Schedule:

| Number of Days: | **60   DAYS** |
|---|---|
| | • Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations. |

B.  Provisions

The Discovery Period for Loss is changed by replacing the 1 year period to discover loss with the number of days shown in the Schedule above.  Further, the loss must be reported to us no later than the Number of Days stated in the Schedule above from the end of the policy period.  However, this extended period to discover and report loss terminates immediately upon the effective date of any other insurance obtained by you replacing in whole or in part the insurance afforded hereunder, whether or not the other insurance provides coverage for loss sustained prior to its effective date.

As respects any employee benefit plan(s) the 1 year period to discover loss remains unchanged.

ALL OTHER TERMS, CONDITIONS AND EXCLUSIONS REMAIN UNCHANGED.

ED1 05/08

POLICY NUMBER: 63A1003781-03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# Coverage Extension – Extended Business Income

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

A. Coverage, section 5. Additional Coverages, c., Extended Business Income, (1).(b).(ii). & (2).(b).(ii). are hereby deleted and replaced with the following:

(1).(b).(ii). 90 consecutive days after the date determined in (1).(a). above.

(2).(b).(ii). 90 consecutive days after the date determined in (2).(a). above.

Co. End. EBI-90 05/08

# PLATINUM ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

**COMMERCIAL PROPERTY COVERAGE PART**

I.   Applicable to:
**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**CONDOMINIUM ASSOCIATION COVERAGE FORM**

**Section A. COVERAGE**

**1.a. Building** is amended to include:
For CP 00 10
   6) Bridges, roadways, walks, patios or other paved surfaces;

   7) Retaining walls which are not part of a building;

   8) Fences.
For CP 00 17, the number will be **7), 8)** and **9)** accordingly
Items **d.** and **l.** are deleted from Section **A.2. Property Not Covered.** The word "fences" is deleted from Section A. **2. q. (2).**

Section A. **2. Property Not Covered** is amended as follows:

   r.   Fine Arts, except as provided in Section A. **5. Coverage Extensions.** Fine Arts means objects of art, art glass windows, antique or period furniture, and other items that have artistic merit, antique value or historic worth.

**4. Additional Coverages**

   a. **Debris Removal – Refer to Coverage form CP 00 10 & CP 00 17.**

   b. **Preservation of Property – Refer to Coverage form CP 00 10 & CP 00 17.**

   c. **Fire Department Service Charge**

   The $1,000 limit is increased to $25,000. (This coverage is increased to $2,500 in Arizona.)

   d. **Pollutant Clean Up and Removal – Refer to Coverage form CP 00 10 & CP 00 17.**

The following Additional Coverages are added:

   g. **Accounts Receivable – Refer to Coverage form CM 00 01 & CM 00 66 and the limits shown in the Declaration.**

   h. **Arson Reward for Conviction**

   We will pay a reward to anyone who gives legal authorities information that leads to the conviction of anyone who commits arson with respect to any property covered by this policy.

   We will pay up to 10 percent of the amount of the covered fire loss or $25,000, whichever is less. No matter how many persons provide information or how many persons are convicted of arson, our liability under this coverage will not be increased.

   i. **Business Income (and Extra Expense) - Actual Loss Sustained – Refer to Coverage forms CP 00 30 and ALS-2, if Business Income coverage limit is shown in the Declarations.**

   j. **Money & Securities – Refer to Coverage form CR 10 00 & CR 00 04, and if the limits shown in the Declarations.**

   k. **Employee Dishonesty – Refer to Coverage form CR 10 00 & CR 00 01 and the limits shown in the Declarations.**

   l. **Forgery & Alteration – Refer to Coverage form CR 00 03 & CR 10 00, and if the limits shown in the Declarations.**

   m. **Innkeeper Legal – Refer to Coverage form CR 10 00 & CR 0013, and if the limits shown in the declarations.**

   n. **Credit Card and Slips – Refer to Coverage form COEND CC-2, and if the limits shown in the declarations.**

   o. **Food Contamination – Refer to Coverage form COEND FC-2, and if the limits shown in the declarations.**

p. **Utility Services**

If the failure of a power or other utility service supplied to the described premises caused by a Covered Cause of Loss causes loss or damage to covered Business Personal Property, we will pay up to $25,000 for that loss or damage, unless a higher limit is shown in form EBC-1. The failure must occur away from the described premises.

We will pay up to $250 per day, but not more than a maximum of $1,000 in the aggregate, for actual Business Income Loss you sustain as a result of damage to covered Business Personal Property caused by a covered off-premises utility service failure.

The amount payable under this Additional Coverage is subject to the policy deductible shown in the Declarations.

5. **Coverage Extensions**

a. **Newly Acquired or Constructed Property**

The policy limits that apply to a loss or damage to newly acquired or constructed Buildings, and newly acquired Business Personal Property described in Section **A. 5. a. Newly Acquired or Constructed Property**, are increased to $500,000 at each Building for Buildings; and $250,000 for Business Personal Property at each Building.

The amount payable under this Coverage Extension is subject to the policy deductible shown in the Declarations.

b. **Personal Effects And Property of Others**

The policy limit that applies to Section **A. 5. b. Personal Effects and Property of Others**, is increased to $10,000 at each described premises
The amount payable under this Coverage Extension is subject to the policy deductible shown in the Declarations.

c. **Valuable Papers And Records (Other Than Electronic Data)** is amended to the following:

The policy limit that applies to Section **A. 5. c. Valuable Papers and Records (Other Than Electronic Data)**, is increased to $100,000 at each described premises, unless a higher limit is shown in the Declarations

The amount payable under this Coverage Extension is subject to $1,000 deductible and is additional insurance

d. **Property Off Premises – Refer to coverage form CP 00 10 & CP 00 17.**

e. **Outdoor Property**

The limits that apply to a loss or damage to outdoor property described in Section **A. 5. e. Outdoor Property**, are increased to $50,000, but not more than $500 for any one tree, shrub or plant.

The amount payable under this Coverage Extension is subject to the policy deductible shown in the Declarations.

**The following Coverage Extensions are added:**

g. **Fine Arts**

You may extend the insurance that applies to Business Personal Property to apply to your Fine Arts and Fine Arts owned by others but in your care, custody or control at a premises described in the Declarations. The coverage limit is shown in the Declaration, if any; and the most we will pay for loss or damage under this coverage extension is $5,000 per item and $50,000 aggregate per policy term.

We will determine the value of Fine Arts at the market value as of the time of loss or damage. We will not pay for loss caused by breakage, marring or scratching of Fine Arts unless such loss is a result of a "specified cause of loss".

The amount payable under this Coverage Extension is subject to a $1,000 deductible.

h. **Utility Services – Refer to Coverage Form EBC-1.**

i. **Spoilage Coverage – Refer to Coverage Form EBC-1.**

j. **Computer Coverage – Refer to Coverage Form EBC-1.**

k. **Automatic Fire Suppression System Equipment – Referred to Cause of Loss Forms.**

**Section C. Limits of Insurance:**

The limit that applies to loss or damage to outdoor signs attached or detached to buildings described in Section **C. Limits of Insurance** is increased to $10,000 per sign in any one occurrence, unless a Limit's shown in the declaration page.

The amount payable under this coverage is subject to the policy deductible shown in the Declarations

Section G. Optional Coverages

2. **Inflation Guard**

a. The Limit of Insurance for buildings will automatically increase by 2%, or the annual percentage shown in the Declarations, whichever is higher.

b. The amount of increase will be:
   1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times.
   2) The higher of 2% or the percentage of annual increase shown in the Declarations, expressed as a decimal (example: 2% is .02), times
   3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example:**

If:  The applicable Limit of
     Insurance is:                    $100,000
     The annual percentage
     increase is:                          2%
     The number of days
     since the beginning of
     the policy year (or last
     policy change) is:                   200

     The amount of increase is:
     $100,000 x .02 x 200 / 365 =     $1,095

II. **Applicable To:**
    CAUSES OF LOSS – SPECIAL FORM
    CAUSES OF LOSS – BROAD

**Section B. Exclusions**

1.e. Utility Services

The following sentence is added to the beginning of Section B. 1. e. Utility Services:

Except as stated in the Section 4. n. Utility Services:

**Special Exclusions**

b. **Leasehold Interest Coverage Form**
   (1) Paragraph B.1.a. Ordinance Or Law, does not apply to insurance under this Coverage Form.
   (2) We will not pay for any loss caused by:
       (a) Your canceling the lease;
       (b) The suspension, lapse or cancellation of any license; or

COEND PE 10/10

(c) Any other consequential loss.
(3) We will pay for loss of "tenants lease interest" you sustain due to the cancellation of your lease, the cancellation must result from direct physical loss or damage at a premises described in the Declarations due to a Covered Cause of loss.

"Tenants lease interest" means the difference between the rent you will pay under a new lease at the described premises; or elsewhere, and the rent you now pay.

The most we will pay for such loss is the least of:
(a) The total difference in rent based on the period of time remaining under your current lease; or
(b) The total difference in rent for one year; or
(c) $5,000;
whichever is less.

**Limitations**
The following is added to Section C. Limitations in the CAUSES OF LOSS-SPECIAL FORM, Section E. Limitation in the CAUSES OF LOSS-BROAD FORM, and Section D. Limitation in the CAUSES OF LOSS-BASIC FORM:

**Building Glass**

We will not pay more than $2,500 in any one occurrence for the loss of or damage to glass that is part of a building or structure, regardless of the number of panes, plates or similar units of glass. Subject to this $2,500 aggregate, we will not pay more than $500 for any one pane, plate, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter.
However, this limitation does not apply to:
a. Loss or damage by the "specified causes of loss", except vandalism; or
b. Business Income coverage or Extra Expense coverage.
The amount payable under this Limitation is subject to the policy deductible shown in the Declarations

**Additional Coverage Extensions**

1. The following is added to Section F. Additional Coverage Extensions of the CAUSES OF LOSS – SPECIAL FORM, and is added as a new Section G, Additional Coverage Extensions to the CAUSES OF LOSS – BROAD FORM:

Sewer Back-Up- We will pay for loss to covered property caused by:

a. Water that backs up or overflows from a sewer drain or sump.

Page 3 of 4

b.  We will pay not more than $100,000 aggregate limit per policy term for loss or damage caused by water that backs up or overflows from a sewer, drain or sump.  This limit includes the cost to tear out and replace any part of the building or structure to make repairs to the system or appliance from which the water or other substance escapes. Any Business Income loss under Part III. Section A BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM resulting from the back up of water or the overflow from a sewer, drain or sump is excluded.

The amount payable under this Additional Coverage Extension is subject to a $1,000 deductible.

2.  The following is added as an **Additional Coverage Extension** to the CAUSES OF LOSS – BROAD FORM:

Property In Transit- This Extension applies only to your personal property to which this form applies.

a.  You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

b.  Loss or damage must be caused by or result from one of the following causes of loss:

(1)  Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.
(2)  Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean

your vehicle's contact with the road bed.
(3)  Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

c.  The most we will pay for loss or damage under this Additional Coverage Extension is $10,000.

The Additional Condition, Coinsurance, does not apply to this Additional Coverage Extension. The amount payable under this Additional Coverage Extension is subject to the policy deductible shown in the Declarations

3.  The policy limit that applies to Section **F. 1.** **Property in Transit** in the CAUSES OF LOSS SPECIAL FORM is increased to $10,000.

The amount payable under this Additional Coverage Extension is subject to the policy deductible shown in the Declarations.

III.  Applicable To:
BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Section A. Coverage

5.  Additional Coverages

a.  Civil Authority – Refer to Coverage form CP 00 30.

**Except as changed herein, this endorsement is subject to all the terms, conditions, provisions and stipulations of the policy to which it is attached.**

POLICY NUMBER:    63A1003781-03                           **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" due to or arising out of rendering or failure to render any professional service.

CO END. #10

9\94

POLICY NUMBER: 63A1003781-03                    COMMERCIAL GENERAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLLUTION/CONTAMINATION EXCLUSION

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The language of Exclusion f. under Paragraph 2. of **SECTION I , COVERAGE A, EXCLUSIONS** regarding **BODILY INJURY AND PROPERTY DAMAGE LIABILITY**, is deleted in its entirety and is replaced by the following language. In addition, the following language is added under Paragraph **m.** of **COVERAGE B, EXCLUSIONS** regarding **PERSONAL AND ADVERTISING INJURY LIABILITY**, and the definition of "Pollutants" in **SECTION V** is replaced by this form.

(1) The "pollution" and/or "contamination" of any "environment" by "pollutants" that are introduced at any time, anywhere, or in any manner, or arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants"; or

(2) Any "bodily injury" or "property damage", "personal and advertising injury" arising out of such "pollution" and/or "contamination"; or

(3) Payment for the investigation or the defense of any loss, injury or damage, or for any cost, fine or penalty, or for any expense, claim or "suit", related to any of the above, including any payment for any loss, cost or expense incurred by any insured or others, whether pursuant to governmental direction or request or otherwise, with respect to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in anyway responding to or assessing the effects of, such "pollution" and/or "contamination".

As used in this exclusion, the following terms have the following meanings:

"Pollution" and/or "contamination" means any unclean or unsafe or damaging or injurious or unhealthful conditions arising out of the presence of "pollutants", whether permanent or transient, in any "environment";

"Environment" means any man-made object or feature (including but not limited to buildings and other items of man-made property), any crop or vegetation, any land, any body of water or water course, any underground water or water table supply, any air, and any other feature of the earth or its atmosphere, whether or not altered, developed, cultivated, owned, rented, controlled, occupied or used by any "insured";

"Pollutants" means any noise, solid, semi-solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fume, acid, alkali, chemical, biological and/or other etiological agent or material, electromagnetic and/or ionizing radiation and energy, genetically engineered agent or material, teratogenic, carcinogenic and/or mutagenic agent or material, and waste. Waste includes any material to be disposed of, recycled, reconditioned or reclaimed.

This exclusion applies regardless of the capacity in which any "insured" is acting and regardless of the relationship of any "insured" to the "environment", "pollution", "contamination", and/or "pollutants".

CO END. #13
(9/2007)

POLICY NUMBER:   63A1003781-03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# INTERINSURED CLAIMS AND SUITS EXCLUSION

This endorsement modifies insurance provided under the following:

ALL LIABILITY COVERAGE SECTIONS

The liability coverage afforded by this policy does not apply to any claim or "suit" for damages by any "insured" against another "insured" because of "bodily injury", "property damage", "personal injury" or "advertising injury". We have no obligation to defend or indemnify any "insured" as to any such claim or "suit" by another "insured".

CO END. #15
(12/94)

POLICY NUMBER:    63A1003781-03

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ASBESTOS EXCLUSION

This endorsement modifies insurance provided under the following:

ALL LIABILITY COVERAGE SECTIONS

The liability coverage afforded by this policy does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" at any time, in any way, or anywhere arising out of:

(1)  The inhalation, ingestion, or absorption of or any other physical exposure to asbestos, including asbestos fibers and asbestos dust, or to any good, product, or structure containing asbestos; or

(2)  The use of asbestos in constructing or manufacturing any good, product, or structure; or

(3)  The installation or removal of asbestos from any good, product or structure; or

(4)  The manufacture, mining, transportation, handling, storage, use, sale, distribution or disposal of asbestos or any good, product or structure containing asbestos.

The liability coverage afforded by this policy does not apply to payment for the investigation or the defense of any loss, injury or damage, or for any cost, fine or penalty, or for any expense, claim or "suit", related to any of the above, including any payment for any loss, cost or expense incurred by any "insured" or others, whether pursuant to governmental direction or request or otherwise, with respect to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing or in any way responding to, or assessing the effects of, asbestos or any good, product or structure containing asbestos.

This exclusion applies regardless of the capacity in which any "insured" is acting and regardless of the relationship of any "insured" to the asbestos and/or good, product or structure containing asbestos.

CO END. #16
(12/94)

POLICY NUMBER:    63A1003781-03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LEAD EXCLUSION

This endorsement modifies insurance provided under the following:

ALL LIABILITY COVERAGE SECTIONS

The liability coverage afforded by this policy does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" at any time, in any way or anywhere arising out of:

(1) The inhalation, ingestion, or absorption of or any other physical exposure to lead in any form, any lead compound, or any good, product or structure containing lead or any lead compound; or

(2) The use of lead or any lead compound in constructing or manufacturing any good, product, or structure; or

(3) The installation or removal of lead or any lead compound from any good, product or structure; or

(4) The manufacture, mining, transportation, handling, storage, use, sale, distribution or disposal of lead, any lead compound, or any good, product or structure containing lead or any lead compound.

The liability coverage afforded by this policy does not apply to payment for the investigation or the defense of any loss, injury or damage, or for any cost, fine or penalty, or for any expense, claim or "suit", related to any of the above, including any payment for any loss, cost or expense incurred by any "insured" or others, whether pursuant to governmental direction or request or otherwise, with respect to testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to, or assessing the effects of lead, any lead compound or any good, product or structure containing lead or any lead compound.

This exclusion applies regardless of the capacity in which any "insured" is acting and regardless of the relationship of any "insured" to the lead, lead compound and/or good, product or structure containing lead or any lead compound.

CO END. #17
(12/94)

POLICY NUMBER:   63A1003781-03                              COMMERCIAL GENERAL LIABILITY

# DISCOVERED INJURY OR DAMAGE EXCLUSION

It is agreed that:

A.  The insurance provided under the Commercial General Liability Coverage Part does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" which occurred and was "discovered" before the inception date of this insurance stated in the policy Declarations.

B.  For purposes of this exclusion:

    (1)  Injury or damage is "discovered" when appreciable injury or damage is observed by anyone, whether an "insured" or a non-"insured";

    (2)  Discovery of some injury or damage caused by an "occurrence" or by a "personal injury" or "advertising injury" offense constitutes discovery of all injury or damage caused by the same "occurrence" or offense.

C.  This exclusion applies regardless of whether, as of the "date of inception of this insurance", there was uncertainty about any of the following:

    (1)  The extent of the injury or damage;

    (2)  Whether the injury or damage would continue to occur or would progressively deteriorate;

    (3)  Whether any claim or "suit" arising out of the injury or damage would be brought against an "insured"; or

    (4)  Whether an "insured" would have a legal obligation to pay for the injury or damage.

CO END. #21
(1/96)

POLICY NUMBER:    63A1003781-03                          COMMERCIAL GENERAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DISABILITY DISCRIMINATION EXCLUSION

This endorsement modifies insurance provided under the following:

> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> EMPLOYERS' LIABILITY STOP-GAP COVERAGE ENDORSEMENT

This insurance does not apply to "bodily injury", "property damage", "advertising injury" or "personal injury" arising out of:

(a) actual or threatened discrimination on the basis of disability engaged in by anyone and directed against any person or persons, or

(b) the negligent:

> (i)  employment;
> (ii)  investigation;
> (iii)  supervision;
> (iv)  reporting to the proper authorities, or failure to so report; or
> (v)  retention;
> of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

For purposes of this exclusion, discrimination on the basis of disability means any and all discrimination, intentional and unintentional, because of any physical or mental impairment of a person or because another person perceives a person as having such physical or mental impairment.  Discrimination on the basis of disability includes but is not limited to any act or omission in violation of the Americans with Disabilities Act of 1990 (Public Law 101-336; 42 U.S.C.A. § 12101, et seq.), and amendments thereto, or similar provisions of any federal, state, or local statutory law or common law.

CO END. #24CA

POLICY NUMBER: 63A1003781-03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# PUNITIVE OR EXEMPLARY DAMAGE EXCLUSION

This endorsement modifies insurance provided under the following:

Commercial General Liability Coverage Part
Businessowners Liability Part
Hired Auto & Non-Owned Auto Liability Coverage Part
Liquor Liability Coverage Part

The following exclusion is added:

This insurance does not apply to:

Damages that are awarded as punitive damages.

CO END. #25 (8/2004)

POLICY NUMBER:   63A1003781-03                          COMMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## LIMITATION OF COVERAGE TO DESIGNATED PREMISES AND DESIGNATED OPERATIONS

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**EMPLOYERS' LIABILITY STOP-GAP COVERAGE ENDORSEMENT**

### SCHEDULE

Premises:     Per PR-01

Operations:   Per PR-01

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance applies only to "bodily injury", "property damage", "personal injury", and "advertising injury" arising out of the ownership, occupation or maintenance of the premises shown in the Schedule and those limited operations which are shown in the Schedule and that occur on the premises shown in the Schedule.

We will have no duty to defend any "insured" with respect to any claim or "suit" seeking damages because of injury or damage arising out of the ownership, occupation, operations or maintenance of any premises not designated in this endorsement or any loss that does not occur on the premises designated in this endorsement.

Co End #29                                                          Ed. Date 3/2003

POLICY NUMBER:   63A1003781-03                          **COMMERCIAL GENERAL LIABILITY**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# AMENDMENT OF OTHER INSURANCE CONDITION (EXCESS INSURANCE)

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **4.b.** of the Other Insurance Condition (**Section IV – Commercial General Liability Coverage Conditions**) is replaced by the following:

**4.   Other Insurance.**

    **b.   Excess Insurance**

        This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

        **(1)**  That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

        **(2)**  That is Fire insurance for premises rented to you; or

        **(3)**  If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I); or

        **(4)**  That is Directors and Officers Liability insurance or similar coverage for your directors and officers.

        When this insurance is excess, we will have no duty under Coverages A or B to defend any claim or "suit" that any other insurer has a duty to defend or as to which any other insurer has a duty to reimburse defense costs.  If no other insurer defends or otherwise pays for (reimburses) defense costs, we will defend, but we will be entitled to the insured's rights against all those other insurers.

        When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

        **(1)**  The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

        **(2)**  The total of all deductible and self-insured amounts under all that other insurance.

        We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Co. End. #31

POLICY NUMBER:  63A1003781-03

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This Endorsement modifies insurance provided under the Commercial General Liability Coverage Form or Businessowners Liability Coverage Form.

# EXCLUSION – SUBSIDENCE

This insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" arising out of the "subsidence of land" and the direct or indirect consequential damages resulting therefrom, including but not limited to settling, bulging, cracking, shrinkage, expansion or damage of any type.

For the purpose of this exclusion, "subsidence of land" is defined as earth-movement of any kind, including but not limited to earthquake, landslide, mudflow, earth-sinking, earth-rising or earth-shifting, regardless of the cause.

Other terms:

All other terms of your policy remain unchanged.

Co End #33 (9-2005)

POLICY NUMBER:  63A1003781-03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PATHOGENIC ORGANISMS EXCLUSION

This endorsement modifies insurance provided under this policy:

BUSINESSOWNERS POLICY

COMMERCIAL GENERAL LIABILITY COVERAGE PART

COMMERCIAL UMBRELLA POLICY

The following exclusion is added to the "Exclusions" section of the policy:

This insurance does not apply to:

1.  "Bodily injury," "Property Damage," "Personal Injury", or "Advertising Injury" arising out of any "pathogenic organisms", regardless of any other cause or event that contributed concurrently or in any sequence to that injury or damage.
2.  The costs of testing, monitoring, abating, mitigating, removing, remediating, or disposing of fungi.
3.  Any supervision, instruction, recommendation, warning, or advice given or which should have been given in connection with 1. Or 2. Above.
4.  Any obligation to share with or repay someone else who must pay damages because of such injury or damage.

The above applies regardless of any other cause that contributed concurrently or in any sequence to the injury or damage.

"Pathogen organisms" means any bacteria, yeasts, mildew, virus, fungi, mold, or their spores, mycotoxins or other metabolic products.

CO END. #35

Edition 11/2001

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies the insurance provided under this policy.

BUSINESS OWNERS POLICY
COMMERCIAL PROPERTY COVERAGE PART
BUILDING AND PERSONAL PROPERTY COVERAGE FORM
BUSINESSOWNERS STANDARD PROPERTY COVERAGE FORM
BUSINESSOWNERS SPECIAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM
BUILDERS RISK COVERAGE FORM
BUSINESS INCOME COVERAGE FORM
EXTRA EXPENSE COVERAGE FORM
BUILDING ORDINANCE COVERAGE
ORDINANCE OR LAW COVERAGE

# LIMITATION ON AMOUNT PAID FOR INSURED PROPERTY DAMAGED BY FUNGUS

We will not pay more than $25,000, or the applicable policy limit, or limits, whichever is less, for the repair or replacement of insured property damaged by fungus when the loss is otherwise covered under the terms and conditions of the policy.

This limitation applies to any and all coverages afforded by the above listed policy forms.

This limitation applies to any loss regardless of the number of buildings or other property located at the premises described in the Declarations.

This limitation applies to all costs related to the repair or replacement of insured property damaged by fungus; including but not limited to, the following:

1. Testing or monitoring to confirm the absence, presence, level, or type of fungus.  This includes testing or monitoring done before, during, or after repairs and restoration.
2. Remediation efforts, including:
    a. Removal, cleaning, repair, and/or replacement of property damaged by fungus.
    b. Removal, repair and replacement of undamaged property.
    c. Costs to contain, treat, neutralize, and/or dispose of fungus damaged property.
    d. Costs to remove and store undamaged property to protect it from exposure to and damage from fungus.
3. Increased costs caused by enforcement of any law or statute that:
    a. Requires demolition of property.
    b. Regulates the construction or repair of buildings.
    c. Regulates the repair or replacement of personal property damaged by fungus.

This limitation applies to all costs and expenses related to the loss of use of the property, or any suspension of the insured's operations, including but not limited to, the following:
1. Delay in rebuilding and repair.
2. Increase in the "period of restoration" caused by the repair or replacement of insured or other property at the premises described in the Declarations.

MP1 (8/2002)

POLICY NUMBER 63A1003781-03

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

## ADVERTISING AND DISTRIBUTION OF MATERIAL OR INFORMATION IN VIOLATION OF LAW EXCLUSION

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
**BUSINESSOWNERS COVERAGE FORM**
**LIQUOR LIABILITY COVERAGE FORM**

This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1)    The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2)    The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3)    The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

(4)    Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

COEND #44 0312

# NOTICE TO POLICYHOLDERS

### FRAUD NOTICE

| Arkansas | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
|---|---|
| Colorado | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.** |
| District of Columbia | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| Florida | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| Kansas | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| Kentucky | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| Louisiana | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| Maine | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| Maryland | Any person who knowingly and willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly and willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| New Jersey | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| New Mexico | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

PN CW 01 1211 

© 2011 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **New York** | **All Commercial Insurance, Except As Provided for Automobile Insurance:**  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation. <br><br> **Automobile Insurance:**  Any person who knowingly and with intent to defraud any insurance company or other person files an application for commercial or personal insurance or a statement of claim for any commercial or personal insurance benefits containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, and any person who, in connection with such application or claim, knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation. |
| **Ohio** | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| **Oklahoma** | **WARNING:**  Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| **Pennsylvania** | **All Commercial Insurance, Except As Provided for Automobile Insurance:**  Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties. <br><br> **Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| **Puerto Rico** | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |

PN CW 01 1211

© 2011 X.L. America, Inc.  All Rights Reserved. <br> May not be copied without permission.

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| Tennessee | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:** It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| Utah | **Workers' Compensation:** Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| Virginia | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| Washington | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| West Virginia | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| All Other States | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison. |

© 2011 X.L. America, Inc. All Rights Reserved.
May not be copied without permission.

# NOTICE TO POLICYHOLDERS

## U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC and possibly the U.S. Department of State. **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency". OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as *Specially Designated Nationals and Blocked Persons.* This list can be found on the U.S. Department of the Treasury's web site - httpl//www.treas.gov/ofac.

The Secretary of the Treasury also has identified a number of entities in the insurance, petroleum, and petrochemicals industries determined to be owned or controlled by the Iranian government. Business transactions with any of these entities are expressly prohibited. These entities have been added to OFAC's list of *Financial Institutions Determined To Be Owned or Controlled by the Government of Iran.* This list can be found on the U.S. Department of the Treasury's web site - http://www.treas.gov/offices/enforcement/lists/

In accordance with OFAC regulations, or any applicable regulation promulgated by the U.S. Department of State, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PN CW 05 1010

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
©2010 X.L. America, Inc. All rights reserved. May not be copied without permission.

POLICY NUMBER:  63A1003781-03                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

1. Designation of Premises (part leased to you):      Per PR-01

2. Name of Person or Organization (Additional Insured):     Per LP-1

3. Additional Premium:      Included

(If no entry appears above, the information required to complete this endorsement will be shown in the declarations as applicable to this endorsement.)

Who is an Insured (section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to such person or organization's liability which both (1) arises out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule, and (2) occurs on that part of the premises leased to you and shown in the Schedule, and (3) results from and by reason of your act or omission or an act or omission of your agent or employee in the course of your operations at that part of the premises leased to you and shown in the Schedule, and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to lease the premises shown in the schedule; or
2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule; or
3. Liability arising out of the sole negligence of the person or organization shown in the Schedule.

**Other Insurance.**  If there is other insurance collectible for a loss covered under this policy, we will pay the amount of loss that is left after the full amount available under the other policy has been paid.  We will not, however, pay more than the applicable Limits of Liability under this policy.

Co. End. #8                                        Ed. Date 3/2003

POLICY NUMBER: 63A1003781-03

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL CRIME COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY – NEW YORK

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

IL 00 03 06 89

Copyright, Insurance Services Office, Inc., 1983, 1988
Copyright, ISO Commercial Risk Services, Inc., 1983, 1988

POLICY NUMBER:  63A1003781-03

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTIONS AND SURVEYS**

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E. PREMIUMS**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1982, 1983

POLICY NUMBER:    63A1003781-03

IL 00 21 11 94

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT

### (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF
TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:
   A. Under any Liability Coverage, to "bodily injury" or "property damage":
      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or
      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.
   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.
   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;
      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured", or
      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:
   "Hazardous properties" includes radioactive, toxic or explosive properties.
   "Nuclear material" means "source material", "special nuclear material" or "by-product material".
   "Source material", special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.
   "Spent fuel" means any fuel element or fuel component, solid or liquid, which had been used or exposed to radiation in a "nuclear reactor".

IL 00 21 11 94                    Copyright, Insurance Services Office, Inc., 1994                    Page 1 of 2

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Copyright, Insurance Services Office, Inc., 1994

IL 00 21 11 94

IL 02 70 11 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraphs 2. and 3. of the **Cancellation** Common Policy Condition are replaced by the following:

   **2. All Policies In Effect For 60 Days Or Less**

     If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

     **a.** 10 days before the effective date of cancellation if we cancel for:

       **(1)** Nonpayment of premium; or

       **(2)** Discovery of fraud by:

         **(a)** Any insured or his or her representative in obtaining this insurance; or

         **(b)** You or your representative in pursuing a claim under this policy.

     **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

   **a.** If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

     **(1)** Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

     **(2)** Discovery of fraud or material misrepresentation by:

       **(a)** Any insured or his or her representative in obtaining this insurance; or

       **(b)** You or your representative in pursuing a claim under this policy.

     **(3)** A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

IL 02 70 11 04                           © ISO Properties, Inc., 2004                           Page 1 of 4

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that the:

   (a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

   (b) Continuation of the policy coverage would:

      (i) Place us in violation of California law or the laws of the state where we are domiciled; or

      (ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

b. We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

(1) 10 days before the effective date of cancellation if we cancel for nonpayment of premium or discovery of fraud; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph **3.a.**

**B.** The following provision is added to the **Cancellation** Common Policy Condition:

**7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

Commercial Property Coverage Part

Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

**a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

**b.** We may not cancel this policy solely because the first Named Insured has:

(1) Accepted an offer of earthquake coverage; or

(2) Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

**c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This Restriction **(c.)** applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) Capital Assets Program Coverage Form (Output Policy);

(2) Commercial Property Coverage Part – Causes Of Loss – Special Form; or

(3) Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

 © ISO Properties, Inc., 2004 IL 02 70 11 04

C. The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

1. Subject to the provisions of Paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

   We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

2. **Residential Property**

   This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under one of the following:

   Capital Assets Program (Output Policy) Coverage Part

   Commercial Property Coverage Part

   Farm Coverage Part – Farm Property – Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

   a. We may elect not to renew such coverage for any reason, except as provided in **b., c.** and **d.** below:

   b. We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

      However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

      (1) The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

      (2) The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

      (3) We have:

         (a) Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

         (b) Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

         the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

   c. We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

   d. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction (**d.**) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

      (1) Capital Assets Program Coverage Form (Output Policy);

      (2) Commercial Property Coverage Part – Causes Of Loss – Special Form; or

      (3) Farm Coverage Part – Causes Of Loss Form – Farm Property, Paragraph **D.** Covered Causes Of Loss – Special.

3. We are not required to send notice of nonrenewal in the following situations:

   a. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

IL 02 70 11 04                 © ISO Properties, Inc., 2004                 Page 3 of 4

**b.** If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph **C.1.**

**c.** If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

**d.** If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

**e.** If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

**f.** If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

© ISO Properties, Inc., 2004      IL 02 70 11 04

POLICY NUMBER:    63A1003781-03                                                    IL 09 35 04 98

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    COMMERCIAL CRIME COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    STANDARD PROPERTY POLICY

**A.** We will not pay for loss ("loss") or damage caused directly or indirectly by the following.  Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

   **1.** The failure, malfunction or inadequacy of:

   **a.** Any of the following, whether belonging to any insured or to others:

   **(1)** Computer hardware, including microprocessors;

   **(2)** Computer application software;

   **(3)** Computer operating systems and related software;

   **(4)** Computer networks;

   **(5)** Microprocessors (computer chips) not part of any computer system; or

   **(6)** Any other computerized or electronic equipment or components; or

   **b.** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

   due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times.  An example is the inability of computer software to recognize the year 2000.

   **2.** Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

**B.** If an excluded Cause of Loss as described in Paragraph A. of this endorsement results:

   **1.** In a Covered Cause of Loss under the Boiler And Machinery Coverage Part, the Commercial Crime Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

   **2.** Under the Commercial Property Coverage Part:

   **a.** In a "Specified Cause of Loss" under the Causes of Loss – Special Form; or

   **b.** In a Covered Cause of Loss under the Causes of Loss – Basic Form or the Causes of Loss – Broad Form;

   we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss" or Covered Cause of Loss.

**C.** We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

**IL 09 35 04 98**               Copyright, Insurance Services Office, Inc., 1997               **Page 1 of 1**   □

POLICY NUMBER: 63A1003781-03                                            IL 09 53 01 08

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

> BOILER AND MACHINERY COVERAGE PART
> COMMERCIAL INLAND MARINE COVERAGE PART
> COMMERCIAL PROPERTY COVERAGE PART
> CRIME AND FIDELITY COVERAGE PART
> EQUIPMENT BREAKDOWN COVERAGE PART
> FARM COVERAGE PART
> STANDARD PROPERTY POLICY

### SCHEDULE

The **Exception Covering Certain Fire Losses** (Paragraph **C**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | |

**A.** The following definition is added with respect to the provisions of this endorsement:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

We will not pay for loss or damage caused directly or indirectly by a "certified act of terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**C. Exception Covering Certain Fire Losses**

The following exception to the exclusion in Paragraph **B.** applies only if indicated and as indicated in the Schedule of this endorsement.

If a "certified act of terrorism" results in fire, we will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**D. Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© ISO Properties, Inc., 2007
IL 09 53 01 08 □

# IN WITNESS

## XL SPECIALTY INSURANCE COMPANY

REGULATORY OFFICE
505 EAGLEVIEW BOULEVARD, SUITE 100
DEPARTMENT:  REGULATORY
EXTON, PA  19341-0636
PHONE:  800-688-1840

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

_____                    _____
Bernard R. Horovitz                                              Toni Ann Perkins
President                                                              Secretary

IL MP 9104 0710 XLS

© 2010 X.L. America, Inc.  All Rights Reserved.  May not be copied without permission.

COMMERCIAL PROPERTY
CP 00 10 04 02

# BUILDING AND PERSONAL PROPERTY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **H. – Definitions.**

## A. Coverage

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

### 1. Covered Property

Covered Property, as used in this Coverage Part, means the type of property described in this Section, **A.1.,** and limited in **A.2.,** Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

a. **Building,** meaning the building or structure described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

(a) Machinery and

(b) Equipment;

(4) Personal property owned by you that is used to maintain or service the building or structure or its premises, including:

(a) Fire extinguishing equipment;

(b) Outdoor furniture;

(c) Floor coverings; and

(d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(5) If not covered by other insurance:

(a) Additions under construction, alterations and repairs to the building or structure;

(b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the building or structure.

b. **Your Business Personal Property** located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or on the Your Business Personal Property – Separation of Coverage form:

(1) Furniture and fixtures;

(2) Machinery and equipment;

(3) "Stock";

(4) All other personal property owned by you and used in your business;

(5) Labor, materials or services furnished or arranged by you on personal property of others;

(6) Your use interest as tenant in improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own; and

(b) You acquired or made at your expense but cannot legally remove;

(7) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Personal Property of Others.

© ISO Properties, Inc., 2001

c. **Personal Property Of Others** that is:

(1) In your care, custody or control; and

(2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

However, our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

2. **Property Not Covered**

Covered Property does not include:

a. Accounts, bills, currency, food stamps or other evidences of debt, money, notes or securities. Lottery tickets held for sale are not securities;

b. Animals, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside of buildings;

c. Automobiles held for sale;

d. Bridges, roadways, walks, patios or other paved surfaces;

e. Contraband, or property in the course of illegal transportation or trade;

f. The cost of excavations, grading, backfilling or filling;

g. Foundations of buildings, structures, machinery or boilers if their foundations are below:

(1) The lowest basement floor; or

(2) The surface of the ground, if there is no basement;

h. Land (including land on which the property is located), water, growing crops or lawns;

i. Personal property while airborne or waterborne;

j. Bulkheads, pilings, piers, wharves or docks;

k. Property that is covered under another coverage form of this or any other policy in which it is more specifically described, except for the excess of the amount due (whether you can collect on it or not) from that other insurance;

l. Retaining walls that are not part of a building;

m. Underground pipes, flues or drains;

n. Electronic data, except as provided under Additional Coverages – Electronic Data. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data. This Paragraph n., does not apply to your "stock" of prepackaged software.

o. The cost to replace or restore the information on valuable papers and records, including those which exist as electronic data. Valuable papers and records include but are not limited to proprietary information, books of account, deeds, manuscripts, abstracts, drawings and card index systems. Refer to the Coverage Extension for Valuable Papers And Records (Other Than Electronic Data) for limited coverage for valuable papers and records other than those which exist as electronic data.

p. Vehicles or self-propelled machines (including aircraft or watercraft) that:

(1) Are licensed for use on public roads; or

(2) Are operated principally away from the described premises.

This paragraph does not apply to:

(a) Vehicles or self-propelled machines or autos you manufacture, process or warehouse;

(b) Vehicles or self-propelled machines, other than autos, you hold for sale;

(c) Rowboats or canoes out of water at the described premises; or

(d) Trailers, but only to the extent provided for in the Coverage Extension for Non-Owned Detached Trailers.

© ISO Properties, Inc., 2001

CP 00 10 04 02   □

q. The following property while outside of buildings:

   (1) Grain, hay, straw or other crops;

   (2) Fences, radio. or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants (other than "stock" of trees, shrubs or plants), all except as provided in the Coverage Extensions.

3. **Covered Causes Of Loss**

   See applicable Causes of Loss Form as shown in the Declarations.

4. **Additional Coverages**

   a. **Debris Removal**

   (1) Subject to Paragraphs (3) and (4), we will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date of direct physical loss or damage.

   (2) Debris Removal does not apply to costs to:

      (a) Extract "pollutants" from land or water; or

      (b) Remove, restore or replace polluted land or water.

   (3) Subject to the exceptions in Paragraph (4), the following provisions apply:

      (a) The most we will pay for the total of direct physical loss or damage plus debris removal expense is the Limit of Insurance applicable to the Covered Property that has sustained loss or damage.

      (b) Subject to (a) above, the amount we will pay for debris removal expense is limited to 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

   (4) We will pay up to an additional $10,000 for debris removal expense, for each location, in any one occurrence of physical loss or damage to Covered Property, if one or both of the following circumstances apply:

      (a) The total of the actual debris removal expense plus the amount we pay for direct physical loss or damage exceeds the Limit of Insurance on the Covered Property that has sustained loss or damage.

      (b) The actual debris removal expense exceeds 25% of the sum of the deductible plus the amount that we pay for direct physical loss or damage to the Covered Property that has sustained loss or damage.

      Therefore, if (4)(a) and/or (4)(b) apply, our total payment for direct physical loss or damage and debris removal expense may reach but will never exceed the Limit of Insurance on the Covered Property that has sustained loss or damage, plus $10,000.

   (5) **Examples**

      The following examples assume that there is no coinsurance penalty.

**Example #1**

| | |
|---|---|
| Limit of Insurance | $ 90,000 |
| Amount of Deductible | $ 500 |
| Amount of Loss | $ 50,000 |
| Amount of Loss Payable | $ 49,500 |
| | ($50,000'- $500) |
| Debris Removal Expense | $ 10,000 |
| Debris Removal Expense Payable | $ 10,000 |
| ($10,000 is 20% of $50,000) | |

The debris removal expense is less than 25% of the sum of the loss payable plus the deductible. The sum of the loss payable and the debris removal expense ($49,500 + $10,000 = $59,500) is less than the Limit of Insurance. Therefore the full amount of debris removal expense is payable in accordance with the terms of Paragraph (3).

CP 00 10 04 02                 © ISO Properties, Inc.,  2001                 Page 3 of 14   □

**Example #2**

| | | |
|---|---|---|
| Limit of Insurance | $ | 90,000 |
| Amount of Deductible | $ | 500 |
| Amount of Loss | $ | 80,000 |
| Amount of Loss Payable | $ | 79,500 |
| | | ($80,000 - $500) |
| Debris Removal Expense | $ | 30,000 |
| Debris Removal Expense | | |
| Payable | | |
| Basic Amount | $ | 10,500 |
| Additional Amount | $ | 10,000 |

The basic amount payable for debris removal expense under the terms of Paragraph **(3)** is calculated as follows: $80,000 ($79,500 + $500) x .25 = $20,000; capped at $10,500. The cap applies because the sum of the loss payable ($79,500) and the basic amount payable for debris removal expense ($10,500) cannot exceed the Limit of Insurance ($90,000).

The additional amount payable for debris removal expense is provided in accordance with the terms of Paragraph **(4)**, because the debris removal expense ($30,000) exceeds 25% of the loss payable plus the deductible ($30,000 is 37.5% of $80,000), and because the sum of the loss payable and debris removal expense ($79,500 + $30,000 = $109,500) would exceed the Limit of Insurance ($90,000). The additional amount of covered debris removal expense is $10,000, the maximum payable under Paragraph **(4)**. Thus the total payable for debris removal expense in this example is $20,500; $9,500 of the debris removal expense is not covered.

**b. Preservation Of Property**

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss or damage to that property:

**(1)** While it is being moved or while temporarily stored at another location; and

**(2)** Only if the loss or damage occurs within 30 days after the property is first moved.

**c. Fire Department Service Charge**

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

**(1)** Assumed by contract or agreement prior to loss; or

**(2)** Required by local ordinance.

No Deductible applies to this Additional Coverage.

**d. Pollutant Clean Up And Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the date on which the Covered Cause of Loss occurs.

This Additional Coverage does not apply to costs to test for, monitor or assess the existence, concentration or effects of "pollutants". But we will pay for testing which is performed in the course of extracting the "pollutants" from the land or water.

The most we will pay under this Additional Coverage for each described premises is $10,000 for the sum of all covered expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**e. Increased Cost Of Construction**

**(1)** This Additional Coverage applies only to buildings to which the Replacement Cost Optional Coverage applies.

**(2)** In the event of damage by a Covered Cause of Loss to a building that is Covered Property, we will pay the increased costs incurred to comply with enforcement of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property, subject to the limitations stated in e.**(3)** through e.**(9)** of this Additional Coverage.

© ISO Properties, Inc., 2001

CP 00 10 04 02    □

(3) The ordinance or law referred to in e.(2) of this Additional Coverage is an ordinance or law that regulates the construction or repair of buildings or establishes zoning or land use requirements at the described premises, and is in force at the time of loss.

(4) Under this Additional Coverage, we will not pay any costs due to an ordinance or law that:

(a) You were required to comply with before the loss, even when the building was undamaged; and

(b) You failed to comply with.

(5) Under this Additional Coverage, we will not pay for:

(a) The enforcement of any ordinance or law which requires demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

(b) Any costs associated with the enforcement of an ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

(6) The most we will pay under this Additional Coverage, for each described building insured under this Coverage Form, is $10,000 or 5% of the Limit of Insurance applicable to that building, whichever is less. If a damaged building is covered under a blanket Limit of Insurance which applies to more than one building or item of property, then the most we will pay under this Additional Coverage, for that damaged building, is the lesser of: $10,000 or 5% times the value of the damaged building as of the time of loss times the applicable coinsurance percentage.

The amount payable under this Additional Coverage is additional insurance.

(7) With respect to this Additional Coverage:

(a) We will not pay for the Increased Cost of Construction:

(i) Until the property is actually repaired or replaced, at the same or another premises; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years. We may extend this period in writing during the two years.

(b) If the building is repaired or replaced at the same premises, or if you elect to rebuild at another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the same premises.

(c) If the ordinance or law requires relocation to another premises, the most we will pay for the Increased Cost of Construction, subject to the provisions of e.(6) of this Additional Coverage, is the increased cost of construction at the new premises.

(8) This Additional Coverage is not subject to the terms of the Ordinance or Law Exclusion, to the extent that such Exclusion would conflict with the provisions of this Additional Coverage.

(9) The costs addressed in the Loss Payment and Valuation Conditions, and the Replacement Cost Optional Coverage, in this Coverage Form, do not include the increased cost attributable to enforcement of an ordinance or law. The amount payable under this Additional Coverage, as stated in e.(6) of this Additional Coverage, is not subject to such limitation.

f. Electronic Data

(1) Under this Additional Coverage, electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) Subject to the provisions of this Additional Coverage, we will pay for the cost to replace or restore electronic data which has been destroyed or corrupted by a Covered Cause of Loss. To the extent that electronic data is not replaced or restored, the loss will be valued at the cost of replacement of the media on which the electronic data was stored, with blank media of substantially identical type.

(3) The Covered Causes of Loss applicable to Your Business Personal Property apply to this Additional Coverage – Electronic Data, subject to the following:

© ISO Properties, Inc., 2001

(a) If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Electronic Data is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

(b) If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Electronic Data includes Collapse as set forth in that form.

(c) If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Electronic Data.

(d) The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for loss or damage caused by or resulting from manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, modify, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage – Electronic Data is $2,500 for all loss or damage sustained in any one policy year, regardless of the number of occurrences of loss or damage or the number of premises, locations or computer systems involved. If loss payment on the first occurrence does not exhaust this amount, then the balance is available for subsequent loss or damage sustained in but not after that policy year. With respect to an occurrence which begins in one policy year and continues or results in additional loss or damage in a subsequent policy year(s), all loss or damage is deemed to be sustained in the policy year in which the occurrence began.

5. **Coverage Extensions**

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

If a Coinsurance percentage of 80% or more or, a Value Reporting period symbol, is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

a. **Newly Acquired Or Constructed Property**

(1) **Buildings**

If this policy covers Building, you may extend that insurance to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations, other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

(2) **Your Business Personal Property**

(a) If this policy covers Your Business Personal Property, you may extend that insurance to apply to:

(i) Business personal property, including such property that you newly acquire, at any location you acquire other than at fairs, trade shows or exhibitions;

(ii) Business personal property, including such property that you newly acquire, located at your newly constructed or acquired buildings at the location described in the Declarations; or

(iii) Business personal property that you newly acquire, located at the described premises.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

(b) This Extension does not apply to:

(i) Personal property of others that is temporarily in your possession in the course of installing or performing work on such property; or

© ISO Properties, Inc.,  2001

CP 00 10 04 02   □

(ii) Personal property of others that is temporarily in your possession in the course of your manufacturing or wholesaling activities.

**(3) Period Of Coverage**

With respect to insurance on or at each newly acquired or constructed property, coverage will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire the property or begin construction of that part of the building that would qualify as covered property; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property or begin construction of that part of the building that would qualify as covered property.

**b. Personal Effects And Property Of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

(1) Personal effects owned by you, your officers, your partners or members, your managers or your employees. This extension does not apply to loss or damage by theft.

(2) Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**c. Valuable Papers And Records (Other Than Electronic Data)**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to the cost to replace or restore the lost information on valuable papers and records for which duplicates do not exist. But this Extension does not apply to valuable papers and records which exist as electronic data. Electronic data has the meaning described under Property Not Covered – Electronic Data.

(2) If the Causes Of Loss – Special Form applies, coverage under this Extension is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

(3) If the Causes Of Loss – Broad Form applies, coverage under this Extension includes Collapse as set forth in that form.

(4) Under this Extension, the most we will pay to replace or restore the lost information is $2,500 at each described premises, unless a higher limit is shown in the Declarations. Such amount is additional insurance. We will also pay for the cost of blank material for reproducing the records (whether or not duplicates exist), and (when there is a duplicate) for the cost of labor to transcribe or copy the records. The costs of blank material and labor are subject to the applicable Limit of Insurance on Your Business Personal Property and therefore coverage of such costs is not additional insurance.

**d. Property Off-Premises**

(1) You may extend the insurance provided by this Coverage Form to apply to your Covered Property while it is away from the described premises, if it is:

(a) Temporarily at a location you do not own, lease or operate;

(b) In storage at a location you lease, provided the lease was executed after the beginning of the current policy term; or

(c) At any fair, trade show or exhibition.

(2) This Extension does not apply to property:

(a) In or on a vehicle; or

(b) In the care, custody or control of your salespersons, unless the property is in such care, custody or control at a fair, trade show or exhibition.

(3) The most we will pay for loss or damage under this Extension is $10,000.

e. **Outdoor Property**

You may extend the insurance provided by this Coverage Form to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants (other than "stock" of trees, shrubs or plants), including debris removal expense, caused by or resulting from any of the following causes of loss if they are Covered Causes of Loss:

(1) Fire;

(2) Lightning;

(3) Explosion;

(4) Riot or Civil Commotion; or

(5) Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant. These limits apply to any one occurrence, regardless of the types or number of items lost or damaged in that occurrence.

f. **Non-Owned Detached Trailers**

(1) You may extend the insurance that applies to Your Business Personal Property to apply to loss or damage to trailers that you do not own, provided that:

(a) The trailer is used in your business;

(b) The trailer is in your care, custody or control at the premises described in the Declarations; and

(c) You have a contractual responsibility to pay for loss or damage to the trailer.

(2) We will not pay for any loss or damage that occurs:

(a) While the trailer is attached to any motor vehicle or motorized conveyance, whether or not the motor vehicle or motorized conveyance is in motion;

(b) During hitching or unhitching operations, or when a trailer becomes accidentally unhitched from a motor vehicle or motorized conveyance.

(3) The most we will pay for loss or damage under this Extension is $5,000, unless a higher limit is shown in the Declarations.

(4) This insurance is excess over the amount due (whether you can collect on it or not) from any other insurance covering such property.

Each of these Extensions is additional insurance unless otherwise indicated. The Additional Condition, Coinsurance, does not apply to these Extensions.

B. **Exclusions And Limitations**

See applicable Causes of Loss Form as shown in the Declarations.

C. **Limits Of Insurance**

The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The most we will pay for loss or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

The limits applicable to the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

Payments under the Preservation of Property Additional Coverage will not increase the applicable Limit of Insurance.

D. **Deductible**

In any one occurrence of loss or damage (hereinafter referred to as loss), we will first reduce the amount of loss if required by the Coinsurance Condition or the Agreed Value Optional Coverage. If the adjusted amount of loss is less than or equal to the Deductible, we will not pay for that loss. If the adjusted amount of loss exceeds the Deductible, we will then subtract the Deductible from the adjusted amount of loss, and will pay the resulting amount or the Limit of Insurance, whichever is less.

When the occurrence involves loss to more than one item of Covered Property and separate Limits of Insurance apply, the losses will not be combined in determining application of the Deductible. But the Deductible will be applied only once per occurrence.

© ISO Properties, Inc., 2001

**Example No. 1:**

(This example assumes there is no coinsurance penalty.)

| | | |
|---|---|---:|
| Deductible: | $ | 250 |
| Limit of Insurance – Bldg. 1: | $ | 60,000 |
| Limit of Insurance – Bldg. 2: | $ | 80,000 |
| Loss to Bldg. 1: | $ | 60,100 |
| Loss to Bldg. 2: | $ | 90,000 |

The amount of loss to Bldg. 1 ($60,100) is less than the sum ($60,250) of the Limit of Insurance applicable to Bldg. 1 plus the Deductible.

The Deductible will be subtracted from the amount of loss in calculating the loss payable for Bldg. 1:

$ 60,100
–     250
$ 59,850 Loss Payable – Bldg. 1

The Deductible applies once per occurrence and therefore is not subtracted in determining the amount of loss payable for Bldg. 2. Loss payable for Bldg. 2 is the Limit of Insurance of $80,000.

Total amount of loss payable: $59,850 + 80,000 = $139, 850

**Example No. 2:**

(This example, too, assumes there is no coinsurance penalty.)

The Deductible and Limits of Insurance are the same as those in Example No. 1.

Loss to Bldg. 1:  $  70,000
  (exceeds Limit of Insurance plus Deductible)
Loss to Bldg. 2:  $   90,000
  (exceeds Limit of Insurance plus Deductible)
Loss Payable – Bldg. 1:    $60,000
  (Limit of Insurance)
Loss Payable – Bldg. 2:    $80,000
  (Limit of Insurance)
Total amount of loss payable:
            $140,000

**E. Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Abandonment**

There can be no abandonment of any property to us.

**2. Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

**a.** You must see that the following are done in the event of loss or damage to Covered Property:

**(1)** Notify the police if a law may have been broken.

**(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

**(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

**(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment**

**a.** In the event of loss or damage covered by this Coverage Form, at our option, we will either:

**(1)** Pay the value of lost or damaged property;

**(2)** Pay the cost of repairing or replacing the lost or damaged property, subject to **b.** below;

**(3)** Take all or any part of the property at an agreed or appraised value; or

**(4)** Repair, rebuild or replace the property with other property of like kind and quality, subject to **b.** below.

We will determine the value of lost or damaged property, or the cost of its repair or replacement, in accordance with the applicable terms of the Valuation Condition in this Coverage Form or any applicable provision which amends or supersedes the Valuation Condition.

**b.** The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

**c.** We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

**d.** We will not pay you more than your financial interest in the Covered Property.

**e.** We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

**f.** We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

**g.** We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

**(1)** We have reached agreement with you on the amount of loss; or

**(2)** An appraisal award has been made.

**5. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, the property will be returned to you. You must then return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**6. Vacancy**

**a. Description Of Terms**

**(1)** As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

**(a)** When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

**(b)** When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

**(i)** Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

**(ii)** Used by the building owner to conduct customary operations.

© ISO Properties, Inc., 2001     CP 00 10 04 02   □

**(2)** Buildings under construction or renovation are not considered vacant.

**b. Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

**(1)** We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

**(a)** Vandalism;

**(b)** Sprinkler leakage, unless you have protected the system against freezing;

**(c)** Building glass breakage;

**(d)** Water damage;

**(e)** Theft; or

**(f)** Attempted theft.

**(2)** With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

**7. Valuation**

We will determine the value of Covered Property in the event of loss or damage as follows:

**a.** At actual cash value as of the time of loss or damage, except as provided in **b., c., d.** and **e.** below.

**b.** If the Limit of Insurance for Building satisfies the Additional Condition, Coinsurance, and the cost to repair or replace the damaged building property is $2,500 or less, we will pay the cost of building repairs or replacement.

The cost of building repairs or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property. However, the following property will be valued at the actual cash value even when attached to the building:

**(1)** Awnings or floor coverings;

**(2)** Appliances for refrigerating, ventilating, cooking, dishwashing or laundering; or

**(3)** Outdoor equipment or furniture.

**c.** "Stock" you have sold but not delivered at the selling price less discounts and expenses you otherwise would have had.

**d.** Glass at the cost of replacement with safety glazing material if required by law.

**e.** Tenant's Improvements and Betterments at:

**(1)** Actual cash value of the lost or damaged property if you make repairs promptly.

**(2)** A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

**(a)** Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

**(b)** Divide the amount determined in **(a)** above by the number of days from the installation of improvements to the expiration of the lease.

If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

**(3)** Nothing if others pay for repairs or replacement.

**F. Additional Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

**1. Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies.

**a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

Instead, we will determine the most we will pay using the following steps:

**(1)** Multiply the value of Covered Property at the time of loss by the Coinsurance percentage;

**(2)** Divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

© ISO Properties, Inc., 2001

(3) Multiply the total amount of loss, before the application of any deductible, by the figure determined in Step (2); and

(4) Subtract the deductible from the figure determined in Step (3).

We will pay the amount determined in Step (4) or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

**Example No. 1 (Underinsurance):**

| When: | | |
|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 100,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

Step (1):  $250,000 x 80% = $200,000

(the minimum amount of insurance to meet your Coinsurance requirements)

Step (2):  $100,000 ÷ $200,000 = .50

Step (3):  $40,000 x .50 = $20,000

Step (4):  $20,000 − $250 = $19,750

We will pay no more than $19,750. The remaining $20,250 is not covered.

**Example No. 2 (Adequate Insurance):**

| When: | | |
|---|---|---|
| The value of the property is | $ | 250,000 |
| The Coinsurance percentage for it is | | 80% |
| The Limit of Insurance for it is | $ | 200,000 |
| The Deductible is | $ | 250 |
| The amount of loss is | $ | 40,000 |

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($250,000 x 80%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $39,750 ($40,000 amount of loss minus the deductible of $250).

b. If one Limit of Insurance applies to two or more separate items, this condition will apply to the total of all property to which the limit applies.

**Example No. 3:**

| When: | | |
|---|---|---|
| The value of property is: | | |
| Bldg. at Location No. 1 | $ | 75,000 |
| Bldg. at Location No. 2 | $ | 100,000 |
| Personal Property at Location No. 2 | $ | 75,000 |
| | $ | 250,000 |
| The Coinsurance percentage for it is | | 90% |
| The Limit of Insurance for Buildings and Personal Property at Location Nos. 1 and 2 is | $ | 180,000 |
| The Deductible is | $ | 1,000 |
| The amount of loss is: | | |
| Bldg. at Location No. 2 | $ | 30,000 |
| Personal Property at Location No. 2. | $ | 20,000 |
| | $ | 50,000 |

Step (1):  $250,000 x 90% = $225,000

(the minimum amount of insurance to meet your Coinsurance requirements and to avoid the penalty shown below)

Step (2):  $180,000 ÷ $225,000 = .80

Step (3):  $50,000 x .80 = $40,000

Step (4):  $40,000 − $1,000 = $39,000

We will pay no more than $39,000. The remaining $11,000 is not covered.

**2. Mortgageholders**

a. The term mortgageholder includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this Coverage Part, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this Coverage Part at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this Coverage Part will then apply directly to the mortgageholder.

e. If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Coverage Part:

(1) The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2) The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f. If we cancel this policy, we will give written notice to the mortgageholder at least:

(1) 10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2) 30 days before the effective date of cancellation if we cancel for any other reason.

g. If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

**G. Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1. Agreed Value**

a. The Additional Condition, Coinsurance, does not apply to Covered Property to which this Optional Coverage applies. We will pay no more for loss of or damage to that property than the proportion that the Limit of Insurance under this Coverage Part for the property bears to the Agreed Value shown for it in the Declarations.

b. If the expiration date for this Optional Coverage shown in the Declarations is not extended, the Additional Condition, Coinsurance, is reinstated and this Optional Coverage expires.

c. The terms of this Optional Coverage apply only to loss or damage that occurs:

(1) On or after the effective date of this Optional Coverage; and

(2) Before the Agreed Value expiration date shown in the Declarations or the policy expiration date, whichever occurs first.

**2. Inflation Guard**

a. The Limit of Insurance for property to which this Optional Coverage applied will automatically increase by the annual percentage shown in the Declarations.

b. The amount of increase will be:

(1) The Limit of Insurance that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Limit of Insurance, times

(2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

(3) The number of days since the beginning of the current policy year or the effective date of the most recent policy change amending the Limit of Insurance, divided by 365.

**Example:**

| If: | | | |
|---|---|---|---|
| | The applicable Limit of Insurance is | $ | 100,000 |
| | The annual percentage increase is | | 8% |
| | The number of days since the beginning of the policy year (or last policy change) is | | 146 |
| | The amount of increase is $100,000 x .08 x 146 ÷ 365 = | $ | 3,200 |

**3. Replacement Cost**

a. Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form.

b. This Optional Coverage does not apply to:

(1) Personal property of others;

(2) Contents of a residence;

(3) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac; or

(4) "Stock", unless the Including "Stock" option is shown in the Declarations.

Under the terms of this Replacement Cost Optional Coverage, tenants' improvements and betterments are not considered to be the personal property of others.

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

With respect to tenants' improvements and betterments, the following also apply:

(3) If the conditions in d.(1) and d.(2) above are not met, the value of tenants' improvements and betterments will be determined as a proportion of your original cost, as set forth in the Valuation Condition of this Coverage Form; and

(4) We will not pay for loss or damage to tenants' improvements and betterments if others pay for repairs or replacement.

e. We will not pay more for loss or damage on a replacement cost basis than the least of (1), (2) or (3), subject to f. below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and

(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

If a building is rebuilt at a new premises, the cost described in e.(2) above is limited to the cost which would have been incurred if the building had been rebuilt at the original premises.

f. The cost of repair or replacement does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

4. Extension Of Replacement Cost To Personal Property Of Others

a. If the Replacement Cost Optional Coverage is shown as applicable in the Declarations, then this Extension may also be shown as applicable. If the Declarations show this Extension as applicable, then Paragraph 3.b.(1) of the Replacement Cost Optional Coverage is deleted and all other provisions of the Replacement Cost Optional Coverage apply to replacement cost on personal property of others.

b. With respect to replacement cost on the personal property of others, the following limitation applies:

If an item(s) of personal property of others is subject to a written contract which governs your liability for loss or damage to that item(s), then valuation of that item(s) will be based on the amount for which you are liable under such contract, but not to exceed the lesser of the replacement cost of the property or the applicable Limit of Insurance.

H. Definitions

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

3. "Stock" means merchandise held in storage or for sale, raw materials and in-process or finished goods, including supplies used in their packing or shipping.

© ISO Properties, Inc., 2001

CP 00 10 04 02   □

COMMERCIAL PROPERTY
CP 00 30 04 02

# BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **G. – Definitions.**

## A.  Coverage

### 1.  Business Income

Business Income means the:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred; and

**b.** Continuing normal operating expenses incurred, including payroll.

For manufacturing risks, Net Income includes the net sales value of production.

Coverage is provided as described and limited below for one or more of the following options for which a Limit of Insurance is shown in the Declarations:

**a.** Business Income including "Rental Value".

**b.** Business Income other than "Rental Value".

**c.** "Rental Value".

If option **a.** above is selected, the term Business Income will include "Rental Value". If option **c.** above is selected, the term Business Income will mean "Rental Value" only.

If Limits of Insurance are shown under more than one of the above options, the provisions of this Coverage Part apply separately to each.

We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. With respect to loss of or damage to personal property in the open or personal property in a vehicle, the described premises include the area within 100 feet of the site at which the described premises are located.

With respect to the requirements set forth in the preceding paragraph, if you occupy only part of the site at which the described premises are located, your premises means:

**a.** The portion of the building which you rent, lease or occupy; and

**b.** Any area within the building or on the site at which the described premises are located, if that area services, or is used to gain access to, the described premises.

### 2.  Extra Expense

**a.** Extra Expense coverage is provided at the premises described in the Declarations only if the Declarations show that Business Income coverage applies at that premises.

**b.** Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.

We will pay Extra Expense (other than the expense to repair or replace property) to:

**(1)** Avoid or minimize the "suspension" of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.

**(2)** Minimize the "suspension" of business if you cannot continue "operations".

We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

© ISO Properties, Inc.,  2001

3. **Covered Causes Of Loss, Exclusions And Limitations**

   See applicable Causes of Loss Form as shown in the Declarations.

4. **Additional Limitation – Interruption Of Computer Operations**

   a. Coverage for Business Income does not apply when a "suspension" of "operations" is caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage – Interruption Of Computer Operations.

   b. Coverage for Extra Expense does not apply when action is taken to avoid or minimize a "suspension" of "operations" caused by destruction or corruption of electronic data, or any loss or damage to electronic data, except as provided under the Additional Coverage – Interruption Of Computer Operations.

   c. Electronic data means information, facts or computer programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), on hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other repositories of computer software which are used with electronically controlled equipment. The term computer programs, referred to in the foregoing description of electronic data, means a set of related electronic instructions which direct the operations and functions of a computer or device connected to it, which enable the computer or device to receive, process, store, retrieve or send data.

5. **Additional Coverages**

   a. **Civil Authority**

      We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

      The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for Extra Expense will begin immediately after the time of that action and will end:

   (1) 3 consecutive weeks after the time of that action; or

   (2) When your Business Income coverage ends;

   whichever is later.

   b. **Alterations And New Buildings**

      We will pay for the actual loss of Business Income you sustain and necessary Extra Expense you incur due to direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss to:

      (1) New buildings or structures, whether complete or under construction;

      (2) Alterations or additions to existing buildings or structures; and

      (3) Machinery, equipment, supplies or building materials located on or within 100 feet of the described premises and:

         (a) Used in the construction, alterations or additions; or

         (b) Incidental to the occupancy of new buildings.

      If such direct physical loss or damage delays the start of "operations", the "period of restoration" for Business Income Coverage will begin on the date "operations" would have begun if the direct physical loss or damage had not occurred.

   c. **Extended Business Income**

      (1) Business Income Other Than "Rental Value"

         If the necessary "suspension" of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

         (a) Begins on the date property (except "finished stock") is actually repaired, rebuilt or replaced and "operations" are resumed; and

         (b) Ends on the earlier of:

            (i) The date you could restore your "operations", with reasonable speed, to the level which would generate the business income amount that would have existed if no direct physical loss or damage had occurred; or

© ISO Properties, Inc., 2001

CP 00 30 04 02   □

     (ii) 30 consecutive days after the date determined in **(1)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**(2)** "Rental Value"

If the necessary "suspension" of your "operations" produces a "Rental Value" loss payable under this policy, we will pay for the actual loss of "Rental Value" you incur during the period that:

**(a)** Begins on the date property is actually repaired, rebuilt or replaced and tenantability is restored; and

**(b)** Ends on the earlier of:

     **(i)** The date you could restore tenant occupancy, with reasonable speed, to the level which would generate the "Rental Value" that would have existed if no direct physical loss or damage had occurred; or

     **(ii)** 30 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of "Rental Value" incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

Loss of "Rental Value" must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

**d. Interruption Of Computer Operations**

**(1)** Under this Additional Coverage, electronic data has the meaning described under Additional Limitation – Interruption Of Computer Operations.

**(2)** Subject to all provisions of this Additional Coverage, you may extend the insurance that applies to Business Income and Extra Expense to apply to a "suspension" of "operations" caused by an interruption in computer operations due to destruction or corruption of electronic data due to a Covered Cause of Loss.

**(3)** With respect to the coverage provided under this Additional Coverage, the Covered Causes of Loss are subject to the following:

**(a)** If the Causes Of Loss – Special Form applies, coverage under this Additional Coverage – Interruption Of Computer Operations is limited to the "specified causes of loss" as defined in that form, and Collapse as set forth in that form.

**(b)** If the Causes Of Loss – Broad Form applies, coverage under this Additional Coverage – Interruption Of Computer Operations includes Collapse as set forth in that form.

**(c)** If the Causes Of Loss Form is endorsed to add a Covered Cause of Loss, the additional Covered Cause of Loss does not apply to the coverage provided under this Additional Coverage – Interruption Of Computer Operations.

**(d)** The Covered Causes of Loss include a virus, harmful code or similar instruction introduced into or enacted on a computer system (including electronic data) or a network to which it is connected, designed to damage or destroy any part of the system or disrupt its normal operation. But there is no coverage for an interruption related to manipulation of a computer system (including electronic data) by any employee, including a temporary or leased employee, or by an entity retained by you or for you to inspect, design, install, maintain, repair or replace that system.

(4) The most we will pay under this Additional Coverage – Interruption of Computer Operations is $2,500 for all loss sustained and expense incurred in any one policy year, regardless of the number of interruptions or the number of premises, locations or computer systems involved. If loss payment relating to the first interruption does not exhaust this amount, then the balance is available for loss or expense sustained or incurred as a result of subsequent interruptions in that policy year. A balance remaining at the end of a policy year does not increase the amount of insurance in the next policy year. With respect to any interruption which begins in one policy year and continues or results in additional loss or expense in a subsequent policy year(s), all loss and expense is deemed to be sustained or incurred in the policy year in which the interruption began.

(5) This Additional Coverage – Interruption in Computer Operations does not apply to loss sustained or expense incurred after the end of the "period of restoration", even if the amount of insurance stated in (4) above has not been exhausted.

6. **Coverage Extension**

If a Coinsurance percentage of 50% or more is shown in the Declarations, you may extend the insurance provided by this Coverage Part as follows:

**Newly Acquired Locations**

a. You may extend your Business Income and Extra Expense Coverages to apply to property at any location you acquire other than fairs or exhibitions.

b. The most we will pay under this Extension, for the sum of Business Income loss and Extra Expense incurred, is $100,000 at each location.

c. Insurance under this Extension for each newly acquired location will end when any of the following first occurs:

(1) This policy expires;

(2) 30 days expire after you acquire or begin to construct the property; or

(3) You report values to us.

We will charge you additional premium for values reported from the date you acquire the property.

This Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

B. **Limits Of Insurance**

The most we will pay for loss in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

The limit applicable to the Coverage Extension is in addition to the Limit of Insurance.

Payments under the following coverages will not increase the applicable Limit of Insurance:

1. Alterations and New Buildings;

2. Civil Authority;

3. Extra Expense; or

4. Extended Business Income.

C. **Loss Conditions**

The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.

1. **Appraisal**

If we and you disagree on the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of Net Income and operating expense or amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

a. Pay its chosen appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

2. **Duties In The Event Of Loss**

a. You must see that the following are done in the event of loss:

(1) Notify the police if a law may have been broken.

(2) Give us prompt notice of the direct physical loss or damage. Include a description of the property involved.

(3) As soon as possible, give us a description of how, when, and where the direct physical loss or damage occurred.

© ISO Properties, Inc., 2001          CP 00 30 04 02   □

(4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(6) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(7) Cooperate with us in the investigation or settlement of the claim.

(8) If you intend to continue your business, you must resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including any insured's books and records. In the event of an examination, an insured's answers must be signed.

3. **Loss Determination**

a. The amount of Business Income loss will be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage; and

(4) Other relevant sources of information, including:

(a) Your financial records and accounting procedures;

(b) Bills, invoices and other vouchers; and

(c) Deeds, liens or contracts.

b. The amount of Extra Expense will be determined based on:

(1) All expenses that exceed the normal operating expenses that would have been incurred by "operations" during the "period of restoration" if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:

(a) The salvage value that remains of any property bought for temporary use during the "period of restoration", once "operations" are resumed; and

(b) Any Extra Expense that is paid for by other insurance, except for insurance that is written subject to the same plan, terms, conditions and provisions as this insurance; and

(2) Necessary expenses that reduce the Business Income loss that otherwise would have been incurred.

c. **Resumption Of Operations**

We will reduce the amount of your:

(1) Business Income loss, other than Extra Expense, to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

(2) Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

d. If you do not resume "operations", or do not resume "operations" as quickly as possible, we will pay based on the length of time it would have taken to resume "operations" as quickly as possible.

**4. Loss Payment**

We will pay for covered loss within 30 days after we receive the sworn proof of loss, if you have complied with all of the terms of this Coverage Part and:

a. We have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

**D. Additional Condition**

**Coinsurance**

If a Coinsurance percentage is shown in the Declarations, the following condition applies in addition to the Common Policy Conditions and the Commercial Property Conditions.

We will not pay the full amount of any Business Income loss if the Limit of Insurance for Business Income is less than:

a. The Coinsurance percentage shown for Business Income in the Declarations; times

b. The sum of:

(1) The Net Income (Net Profit or Loss before income taxes), and

(2) Operating expenses, including payroll expenses,

that would have been earned or incurred (had no loss occurred) by your "operations" at the described premises for the 12 months following the inception, or last previous anniversary date, of this policy (whichever is later).

Instead, we will determine the most we will pay using the following steps:

1. Multiply the Net Income and operating expense for the 12 months following the inception, or last anniversary date, of this policy by the Coinsurance percentage;

2. Divide the Limit of Insurance for the described premises by the figure determined in Step **1.**; and

3. Multiply the total amount of loss by the figure determined in Step **2.**

We will pay the amount determined in Step **3.** or the limit of insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

In determining operating expenses for the purpose of applying the Coinsurance condition, the following expenses, if applicable, shall be deducted from the total of all operating expenses:

1. Prepaid freight – outgoing;

2. Returns and allowances;

3. Discounts;

4. Bad debts;

5. Collection expenses;

6. Cost of raw stock and factory supplies consumed (including transportation charges);

7. Cost of merchandise sold (including transportation charges);

8. Cost of other supplies consumed (including transportation charges);

9. Cost of services purchased from outsiders (not employees) to resell, that do not continue under contract;

10. Power, heat and refrigeration expenses that do not continue under contract (if Form **CP 15 11** is attached);

11. All ordinary payroll expenses or the amount of payroll expense excluded (if Form **CP 15 10** is attached); and

12. Special deductions for mining properties (royalties unless specifically included in coverage; actual depletion commonly known as unit or cost depletion – not percentage depletion; welfare and retirement fund charges based on tonnage; hired trucks).

**Example No. 1 (Underinsurance):**

| When: | The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been | $ | 400,000 |
|---|---|---|---|
| | The Coinsurance percentage is | | 50% |
| | The Limit of Insurance is | $ | 150,000 |
| | The amount of loss is | $ | 80,000 |
| Step 1: | $400,000 x 50% = $200,000 | | |
| | (the minimum amount of insurance to meet your coinsurance requirements) | | |
| Step 2: | $150,000 ÷ $200,000 = .75 | | |
| Step 3: | $80,000 x .75 = $60,000 | | |

We will pay no more than $60,000. The remaining $20,000 is not covered.

© ISO Properties, Inc., 2001   CP 00 30 04 02  □

**Example No. 2 (Adequate Insurance):**

When:   The Net Income and operating expenses for the 12 months following the inception, or last previous anniversary date, of this policy at the described premises would have been $ 400,000

The Coinsurance percentage is 50%

The Limit of Insurance is $ 200,000

The amount of loss is $ 80,000

The minimum amount of insurance to meet your Coinsurance requirement is $200,000 ($400,000 x 50%). Therefore, the Limit of Insurance in this Example is adequate and no penalty applies. We will pay no more than $80,000 (amount of loss).

This condition does not apply to Extra Expense coverage.

**E.   Optional Coverages**

If shown as applicable in the Declarations, the following Optional Coverages apply separately to each item.

**1.   Maximum Period Of Indemnity**

a.   The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b.   The most we will pay for the total of Business Income loss and Extra Expense is the lesser of:

(1)   The amount of loss sustained and expenses incurred during the 120 days immediately following the beginning of the "period of restoration"; or

(2)   The Limit of Insurance shown in the Declarations.

**2.   Monthly Limit Of Indemnity**

a.   The Additional Condition, Coinsurance, does not apply to this Coverage Form at the described premises to which this Optional Coverage applies.

b.   The most we will pay for loss of Business Income in each period of 30 consecutive days after the beginning of the "period of restoration" is:

(1)   The Limit of Insurance, multiplied by

(2)   The fraction shown in the Declarations for this Optional Coverage.

**Example:**

When:   The Limit of Insurance is $ 120,000

The fraction shown in the Declarations for this Optional Coverage is 1/4

The most we will pay for loss in each period of 30 consecutive days is:

$120,000 x 1/4 = $30,000

If, in this example, the actual amount of loss is:

| | | |
|---|---|---|
| Days 1-30 | $ | 40,000 |
| Days 31-60 | | 20,000 |
| Days 61-90 | | 30,000 |
| | $ | 90,000 |

We will pay:

| | | |
|---|---|---|
| Days 1-30 | $ | 30,000 |
| Days 31-60 | | 20,000 |
| Days 61-90 | | 30,000 |
| | $ | 80,000 |

The remaining $10,000 is not covered.

**3.   Business Income Agreed Value**

a.   To activate this Optional Coverage:

(1)   A Business Income Report/Work Sheet must be submitted to us and must show financial data for your "operations":

(a)   During the 12 months prior to the date of the Work Sheet; and

(b)   Estimated for the 12 months immediately following the inception of this Optional Coverage.

(2)   The Declarations must indicate that the Business Income Agreed Value Optional Coverage applies, and an Agreed Value must be shown in the Declarations. The Agreed Value should be at least equal to:

(a)   The Coinsurance percentage shown in the Declarations; multiplied by

(b)   The amount of Net Income and operating expenses for the following 12 months you report on the Work Sheet.

b.   The Additional Condition, Coinsurance, is suspended until:

(1)   12 months after the effective date of this Optional Coverage; or

**(2)** The expiration date of this policy;
whichever occurs first.

**c.** We will reinstate the Additional Condition, Coinsurance, automatically if you do not submit a new Work Sheet and Agreed Value:

**(1)** Within 12 months of the effective date of this Optional Coverage; or

**(2)** When you request a change in your Business Income Limit of Insurance.

**d.** If the Business Income Limit of Insurance is less than the Agreed Value, we will not pay more of any loss than the amount of loss multiplied by:

**(1)** The Business Income Limit of Insurance; divided by

**(2)** The Agreed Value.

Example:

| When: | The Limit of Insurance is | $ | 100,000 |
|---|---|---|---|
| | The Agreed Value is | $ | 200,000 |
| | The amount of loss is | $ | 80,000 |

Step (a) :    $100,000 ÷ $200,000 = .50

Step (b) :    .50 x $80,000 = $40,000

We will pay $40,000. The remaining $40,000 is not covered.

**4. Extended Period Of Indemnity**

Under Paragraph **A.5.c.,** Extended Business Income, the number "30" in Subparagraphs **(1)(b)** and **(2)(b)** is replaced by the number shown in the Declarations for this Optional Coverage.

**F. Definitions**

**1.** "Finished Stock" means stock you have manufactured.

"Finished stock" also includes whiskey and alcoholic products being aged, unless there is a Coinsurance percentage shown for Business Income in the Declarations.

"Finished stock" does not include stock you have manufactured that is held for sale on the premises of any retail outlet insured under this Coverage Part.

**2.** "Operations" means:

**a.** Your business activities occurring at the described premises; and

**b.** The tenantability of the described premises, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

**3.** "Period of Restoration" means the period of time that:

**a.** Begins:

**(1)** 72 hours after the time of direct physical loss or damage for Business Income coverage; or

**(2)** Immediately after the time of direct physical loss or damage for Extra Expense coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

**b.** Ends on the earlier of:

**(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

**(2)** The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property; or

**(2)** Requires any insured or others to test for, monitor, clean up, remove, contain,. treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

The expiration date of this policy will not cut short the "period of restoration".

**4.** "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**5.** "Rental Value" means Business Income that consists of:

**a.** Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred as rental income from tenant occupancy of the premises described in the Declarations as furnished and equipped by you, including fair rental value of any portion of the described premises which is occupied by you; and

**b.** Continuing normal operating expenses incurred in connection with that premises, including:

**(1)** Payroll; and

**(2)** The amount of charges which are the legal obligation of the tenant(s) but would otherwise be your obligations.

© ISO Properties, Inc., 2001

6.  "Suspension" means:

    a.  The slowdown or cessation of your business activities; or

    b.  That part or all of the described premises is rendered untenantable, if coverage for Business Income including "Rental Value" or "Rental Value" applies.

POLICY NUMBER:   63A1003781-03

COMMERCIAL PROPERTY

# COMMERCIAL PROPERTY CONDITIONS

This Coverage Part is subject to the following conditions, the Common Policy Conditions and applicable Loss Conditions and Additional Conditions in Commercial Property Coverage Forms.

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Part;
2. The Covered Property;
3. Your interest in the Covered Property; or
4. A Claim under this Coverage Part.

**B. CONTROL OF PROPERTY**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Part at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

**C. INSURANCE UNDER TWO OR MORE COVERAGES**

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

**D. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1. There has been full compliance with all of the terms of this Coverage Part; and
2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**E. LIBERALIZATION**

If we adopt any revision that would broaden the coverage under this Coverage Part without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Part.

**F. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

**G. OTHER INSURANCE**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
2. If there is other insurance covering the same loss or damage, other than that described in 1. above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

**H. POLICY PERIOD, COVERAGE TERRITORY**

Under this Coverage Part:

1. We cover loss or damage commencing:
   a. During the policy period shown in the Declarations; and
   b. Within the coverage territory.
2. The coverage territory is:
   a. The United States of America (including its territories and possessions);
   b. Puerto Rico; and
   c. Canada.

Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

I. **TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property or Covered Income.

2. After a loss to your Covered Property or Covered Income only if, at time of loss, that party is one of the following:

    a. Someone insured by this insurance;

    b. A business firm:

        (1) Owned or controlled by you; or

        (2) That owns or controls you; or

    c. Your tenant.

This will not restrict your insurance.

POLICY NUMBER:    63A1003781-03                                      **COMMERCIAL PROPERTY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CHANGES – POLLUTANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**A.** The changes below apply to the following forms:
**BUILDING AND PERSONAL PROPERTY COVERAGE FORM**
**CONDOMINIUM ASSOCIATION COVERAGE FORM**
**CONDOMINIUM COMMERCIAL UNIT–OWNERS COVERAGE FORM**
**BUILDERS' RISK COVERAGE FORM**
**TOBACCO SALES WAREHOUSES COVERAGE FORM**

**1.** Under **PROPERTY NOT COVERED**, the following is added:

Covered Property does not include water.

**2.** The **DEBRIS REMOVAL** Additional Coverage is replaced by the following:

**Debris Removal**

**a.** We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period.  The expenses will be paid only if they are reported to us within 180 days of the earlier of:

**(1)** The date of direct physical loss or damage; or

**(2)** The end of the policy period.

**b.** The most we will pay under this Additional Coverage is 25% of:

**(1)** The amount we pay for the direct loss or damage; plus

**(2)** The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in the Limit of Insurance section.

**c.** This Additional Coverage does not apply to costs to:

**(1)** Extract "pollutants" from land or water; or

**(2)** Remove, restore or replace polluted land or water.

**3.** The following Additional Coverage is added:

**Pollutant Clean Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the release, discharge or dispersal of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period.  The expenses will be paid only if they are reported to us within 180 days of the earlier of:

**a.** The date of direct physical loss or damage; or

**b.** The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.  This limit is in addition to the Limits of Insurance.

**4.** Paragraph **2.** of the **LIMITS OF INSURANCE** Section is replaced by the following:

**2.** Debris Removal; but if:

**a.** The sum of loss or damage and debris removal expense exceeds the Limit of Insurance; or

**b.** The debris removal expense exceeds the amount payable under the 25% Debris Removal coverage limitation in paragraph **2.b.** above;

we will pay up to an additional $5,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

**5.** The following **DEFINITION** is added:

**"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

B. The PERIOD OF RESTORATION definition is revised to include the following in the:

BUSINESS INCOME COVERAGE FORM

EXTRA EXPENSE COVERAGE FORM

BUSINESS INCOME FROM DEPENDENT PROPERTIES – BROAD FORM

BUSINESS INCOME FROM DEPENDENT PROPERTIES – LIMITED FORM

EXTRA EXPENSE FROM DEPENDENT PROPERTIES FORM

"Period of restoration" does not include any increased period required due to the enforcement of any law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Regulates the prevention, control, repair, clean-up or restoration of environmental damage.

C. The CAUSES OF LOSS – SPECIAL FORM is revised as follows:

1. The exclusion of, "Release, discharge or dispersal of contaminants or pollutants" in paragraph **B.2.d.(4)** is deleted.

2. The following Exclusion is added:

We will not pay for loss or damage caused by or resulting from the release, discharge or dispersal of "pollutants" unless the release, discharge or dispersal is itself caused by any of the "specified causes of loss". But if loss or damage by the "specified causes of loss" results, we will pay for the resulting damage caused by the "specified cause of loss".

Copyright, ISO Commercial Risk Services, Inc., 1986          CP 01 86 04 86  ☐

POLICY NUMBER:    63A1003781-03                            **COMMERCIAL PROPERTY**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CANCELLATION CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

The following is added to the **CANCELLATION** Common Policy Condition:

If any one of the following conditions exists at any building that is Covered Property in this policy, we may cancel this Coverage Part by mailing or delivering to the first Named Insured written notice of cancellation at least 5 days before the effective date of cancellation.

A. The building has been vacant or unoccupied 60 or more consecutive days.  This does not apply to:

1. Seasonal unoccupancy;

2. Buildings in the course of construction, renovation or addition; or

3. Buildings to which the Vacancy Permit endorsement applies.

Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

B. After damage by a covered cause of loss, permanent repairs to the building:

1. Have not started, and

2. Have not been contracted for,

within 30 days of initial payment of loss.

C. The building has:

1. An outstanding order to vacate;

2. An outstanding demolition order;

3. Been declared unsafe by governmental authority.

D. Fixed and salvageable items have been or are being removed from the building and are not being replaced.  This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

E. Failure to:

1. Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

2. Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

CP 02 99 11 85            Copyright, ISO Commercial Risk Services, Inc., 1984

COMMERCIAL PROPERTY
CP 10 30 04 02

# CAUSES OF LOSS – SPECIAL FORM

Words and phrases that appear in quotation marks have special meaning.  Refer to Section **F. –** Definitions.

**A. Covered Causes Of Loss**

When Special is shown in the Declarations, Covered Causes of Loss means Risks Of Direct Physical Loss unless the loss is:

**1.** Excluded in Section **B.,** Exclusions; or

**2.** Limited in Section **C.;** Limitations;

that follow.

**B. Exclusions**

**1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance Or Law**

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance Or Law, applies whether the loss results from:

**(1)** An ordinance or law that is enforced even if the property has not been damaged; or.

**(2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property, or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Earthquake, including any earth sinking, rising or shifting related to such event;

**(2)** Landslide, including any earth sinking, rising or shifting related to such event;

**(3)** Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

**(4)** Earth sinking (other than sinkhole collapse), rising or shifting including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface.

But if Earth Movement, as described in b.**(1)** through **(4)** above, results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(5)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or Volcanic Action, we will pay for the loss or damage caused by that fire, building glass breakage or Volcanic Action.

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

**(a)** Airborne volcanic blast or airborne shock waves;

**(b)** Ash, dust or particulate matter; or

**(c)** Lava flow.

All volcanic eruptions that occur within any 168 hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss or damage to the described property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this Coverage Part.

© ISO Properties, Inc.,  2001      ☐

d. **Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

e. **Utility Services**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises. Failure includes lack of sufficient capacity and reduction in supply.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

This exclusion does not apply to the Business Income coverage or to Extra Expense coverage. Instead, the Special Exclusion in Paragraph **B.4.a.(1)** applies to these coverages.

f. **War And Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

g. **Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if Water, as described in **g.(1)** through **g.(4)** above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

h. **"Fungus", Wet Rot, Dry Rot And Bacteria**

Presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria.

But if "fungus", wet or dry rot or bacteria results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion does not apply:

1. When "fungus", wet or dry rot or bacteria results from fire or lightning; or

2. To the extent that coverage is provided in the Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria with respect to loss or damage by a cause of loss other than fire or lightning.

Exclusions **B.1.a.** through **B.1.h.** apply whether or not the loss event results in widespread damage or affects a substantial area.

2. We will not pay for loss or damage caused by or resulting from any of the following:

a. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by that fire.

b. Delay, loss of use or loss of market.

c. Smoke, vapor or gas from agricultural smudging or industrial operations.

d. (1) Wear and tear;

(2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nesting or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals.

© ISO Properties, Inc., 2001

CP 10 30 04 02   □

(6) Mechanical breakdown, including rupture or bursting caused by centrifugal force. But if mechanical breakdown results in elevator collision, we will pay for the loss or damage caused by that elevator collision.

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

But if an excluded cause of loss that is listed in **2.d.(1)** through **(7)** results in a "specified cause of loss" or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss" or building glass breakage.

e. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

f. Continuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more.

g. Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

h. Dishonest or criminal act by you, any of your partners, members, officers, managers, employees (including leased employees), directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees (including leased employees); but theft by employees (including leased employees) is not covered.

i. Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

j. Rain, snow, ice or sleet to personal property in the open.

k. Collapse, except as provided below in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss at the described premises, we will pay for the loss or damage caused by that Covered Cause of Loss.

l. Discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss". But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss", we will pay for the loss or damage caused by that "specified cause of loss".

This exclusion, **l.**, does not apply to damage to glass caused by chemicals applied to the glass.

m. Neglect of an insured to use all reasonable means to save and preserve property from further damage at and after the time of loss.

3. We will not pay for loss or damage caused by or resulting from any of the following, **3.a.** through **3.c.** But if an excluded cause of loss that is listed in **3.a.** through **3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

a. Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in Paragraph **1.** above to produce the loss or damage.

b. Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

c. Faulty, inadequate or defective:

   (1) Planning, zoning, development, surveying, siting;

   (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

   (3) Materials used in repair, construction, renovation or remodeling; or

   (4) Maintenance;

of part or all of any property on or off the described premises.

**4. Special Exclusions**

The following provisions apply only to the specified Coverage Forms.

**a. Business Income (And Extra Expense) Coverage Form, Business Income (Without Extra Expense) Coverage Form, Or Extra Expense Coverage Form**

We will not pay for:

   (1) Any loss caused directly or indirectly by the failure of power or other utility service supplied to the described premises, however caused, if the failure occurs outside of a covered building. Failure includes lack of sufficient capacity and reduction in supply.

But if the failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss resulting from that Covered Cause of Loss.

   (2) Any loss caused by or resulting from:

     (a) Damage or destruction of "finished stock"; or

     (b) The time required to reproduce the "finished stock".

This exclusion does not apply to Extra Expense.

   (3) Any loss caused by or resulting from direct physical loss or damage to radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers.

   (4) Any increase of loss caused by or resulting from:

     (a) Delay in rebuilding, repairing or replacing the property or resuming "operations", due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

     (b) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the "suspension" of "operations", we will cover such loss that affects your Business Income during the "period of restoration" and any extension of the "period of restoration" in accordance with the terms of the Extended Business Income Additional Coverage and the Extended Period Of Indemnity Optional Coverage or any variation of these.

   (5) Any Extra Expense caused by or resulting from suspension, lapse or cancellation of any license, lease or contract beyond the "period of restoration".

   (6) Any other consequential loss.

**b. Leasehold Interest Coverage Form**

   (1) Paragraph **B.1.a.** Ordinance Or Law, does not apply to insurance under this Coverage Form.

   (2) We will not pay for any loss caused by:

     (a) Your cancelling the lease;

     (b) The suspension, lapse or cancellation of any license; or

     (c) Any other consequential loss.

**c. Legal Liability Coverage Form**

   (1) The following exclusions do not apply to insurance under this Coverage Form:

     (a) Paragraph **B.1.a.**, Ordinance Or Law;

     (b) Paragraph **B.1.c.**, Governmental Action;

     (c) Paragraph **B.1.d.**, Nuclear Hazard;

     (d) Paragraph **B.1.e.**, Utility Services; and

     (e) Paragraph **B.1.f.**, War And Military Action.

© ISO Properties, Inc., 2001

(2) The following additional exclusions apply to insurance under this Coverage Form:

**(a) Contractual Liability**

We will not defend any claim or "suit", or pay any damages that you are legally liable to pay, solely by reason of your assumption of liability in a contract or agreement. But this exclusion does not apply to a written lease agreement in which you have assumed liability for building damage resulting from an actual or attempted burglary or robbery, provided that:

(i) Your assumption of liability was executed prior to the accident; and

(ii) The building is Covered Property under this Coverage Form.

**(b) Nuclear Hazard**

We will not defend any claim or "suit", or pay any damages, loss, expense or obligation, resulting from nuclear reaction or radiation, or radioactive contamination, however caused.

## C. Limitations

The following limitations apply to all policy forms and endorsements, unless otherwise stated.

1. We will not pay for loss of or damage to property, as described and limited in this section. In addition, we will not pay for any loss that is a consequence of loss or damage as described and limited in this section.

   a. Steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment. But we will pay for loss of or damage to such equipment caused by or resulting from an explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

   b. Hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment, other than an explosion.

c. The interior of any building or structure, or to personal property in the building or structure, caused by or resulting from rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:

   (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters; or

   (2) The loss or damage is caused by or results from thawing of snow, sleet or ice on the building or structure.

d. Building materials and supplies not attached as part of the building or structure, caused by or resulting from theft.

   However, this limitation does not apply to:

   (1) Building materials and supplies held for sale by you, unless they are insured under the Builders Risk Coverage Form; or

   (2) Business Income coverage or Extra Expense coverage.

e. Property that is missing, where the only evidence of the loss or damage is a shortage disclosed on taking inventory, or other instances where there is no physical evidence to show what happened to the property.

f. Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

2. We will not pay for loss of or damage to the following types of property unless caused by the "specified causes of loss" or building glass breakage:

   a. Animals, and then only if they are killed or their destruction is made necessary.

   b. Fragile articles such as statuary, marbles, chinaware and porcelains, if broken. This restriction does not apply to:

   (1) Glass; or

   (2) Containers of property held for sale.

   c. Builders' machinery, tools and equipment owned by you or entrusted to you, provided such property is Covered Property.

However, this limitation does not apply:

(1) If the property is located on or within 100 feet of the described premises, unless the premises is insured under the Builders Risk Coverage Form; or

(2) To Business Income coverage or to Extra Expense coverage.

3. The special limit shown for each category, **a.** through **d.,** is the total limit for loss of or damage to all property in that category. The special limit applies to any one occurrence of theft, regardless of the types or number of articles that are lost or damaged in that occurrence. The special limits are:

   a. $2,500 for furs, fur garments and garments trimmed with fur.

   b. $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

   c. $2,500 for patterns, dies, molds and forms.

   d. $250 for stamps, tickets, including lottery tickets held for sale, and letters of credit.

   These special limits are part of, not in addition to, the Limit of Insurance applicable to the Covered Property.

   This limitation, **C.3.,** does not apply to Business Income coverage or to Extra Expense coverage.

4. We will not pay the cost to repair any defect to a system or appliance from which water, other liquid, powder or molten material escapes. But we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

   a. Results in discharge of any substance from an automatic fire protection system; or

   b. Is directly caused by freezing.

   However, this limitation does not apply to Business Income coverage or to Extra Expense coverage.

**D. Additional Coverage – Collapse**

The term Covered Cause of Loss includes the Additional Coverage – Collapse as described and limited in **D.1.** through **D.5.** below.

1. With respect to buildings:

   a. Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;

   b. A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;

   c. A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;

   d. A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

2. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage form, if the collapse is caused by one or more of the following:

   a. The "specified causes of loss" or breakage of building glass, all only as insured against in this Coverage Part;

   b. Decay that is hidden from view, unless the presence of such decay is known to an insured prior to collapse;

   c. Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an insured prior to collapse;

   d. Weight of people or personal property;

   e. Weight of rain that collects on a roof;

f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **2.a.** through **2.e.**, we will pay for the loss or damage even if use of defective material or methods, in construction, remodeling or renovation, contributes to the collapse.

The criteria set forth in **1.a.** through **1.d.** do not limit the coverage otherwise provided under this Causes Of Loss Form for the causes of loss listed in **2.a.**, **2.d.** and **2.e.**

3. With respect to the following property:

   a. Outdoor radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers;

   b. Awnings, gutters and downspouts;

   c. Yard fixtures;

   d. Outdoor swimming pools;

   e. Fences;

   f. Piers, wharves and docks;

   g. Beach or diving platforms or appurtenances;

   h. Retaining walls; and

   i. Walks, roadways and other paved surfaces;

   if the collapse is caused by a cause of loss listed in **2.b.** through **2.f.**, we will pay for loss or damage to that property only if:

   a. Such loss or damage is a direct result of the collapse of a building insured under this Coverage Form; and

   b. The property is Covered Property under this Coverage Form.

4. If personal property abruptly falls down or caves in and such collapse is not the result of collapse of a building, we will pay for loss or damage to Covered Property caused by such collapse of personal property only if:

   a. The collapse was caused by a Cause of Loss listed in **2.a.** through **2.f.** above;

   b. The personal property which collapses is inside a building; and

   c. The property which collapses is not of a kind listed in **3.** above, regardless of whether that kind of property is considered to be personal property or real property.

The coverage stated in this Paragraph **4.** does not apply to personal property if marring and/or scratching is the only damage to that personal property caused by the collapse.

Collapse of personal property does not mean cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

5. This Additional Coverage, Collapse, will not increase the Limits of Insurance provided in this Coverage Part.

E. **Additional Coverage – Limited Coverage For "Fungus", Wet Rot, Dry Rot And Bacteria**

1. The coverage described in **E.2.** and **E.6.** only applies when the "fungus", wet or dry rot or bacteria is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after that occurrence.

   a. A "specified cause of loss" other than fire or lightning; or

   b. Flood, if the Flood Coverage Endorsement applies to the affected premises.

2. We will pay for loss or damage by "fungus", wet or dry rot or bacteria. As used in this Limited Coverage, the term loss or damage means:

   a. Direct physical loss or damage to Covered Property caused by "fungus", wet or dry rot or bacteria, including the cost of removal of the "fungus", wet or dry rot or bacteria;

   b. The cost to tear out and replace any part of the building or other property as needed to gain access to the "fungus", wet or dry rot or bacteria; and

   c. The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that "fungus", wet or dry rot or bacteria are present.

3. The coverage described under **E.2.** of this Limited Coverage is limited to $15,000. Regardless of the number of claims, this limit is the most we will pay for the total of all loss or damage arising out of all occurrences of "specified causes of loss" (other than fire or lightning) and Flood which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular occurrence of loss which results in "fungus", wet or dry rot or bacteria, we will not pay more than a total of $15,000 even if the "fungus", wet or dry rot or bacteria continues to be present or active, or recurs, in a later policy period.

© ISO Properties, Inc., 2001

4. The coverage provided under this Limited Coverage does not increase the applicable Limit of Insurance on any Covered Property. If a particular occurrence results in loss or damage by "fungus", wet or dry rot or bacteria, and other loss or damage, we will not pay more, for the total of all loss or damage, than the applicable Limit of Insurance on the affected Covered Property.

If there is covered loss or damage to Covered Property, not caused by "fungus", wet or dry rot or bacteria, loss payment will not be limited by the terms of this Limited Coverage, except to the extent that "fungus", wet or dry rot or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

5. The terms of this Limited Coverage do not increase or reduce the coverage provided under Paragraph **F.2.** (Water Damage, Other Liquids, Powder Or Molten Material Damage) of this Causes of Loss Form or under the Additional Coverage – Collapse.

6. The following, **6.a.** or **6.b.,** applies only if Business Income and/or Extra Expense coverage applies to the described premises and only if the "suspension" of "operations" satisfies all terms and conditions of the applicable Business Income and/or Extra Expense coverage form.

   a. If the loss which resulted in "fungus", wet or dry rot or bacteria does not in itself necessitate a "suspension" of "operations", but such "suspension" is necessary due to loss or damage to property caused by "fungus", wet or dry rot or bacteria, then our payment under Business Income and/or Extra Expense is limited to the amount of loss and/or expense sustained in a period of not more than 30 days. The days need not be consecutive.

   b. If a covered "suspension" of "operations" was caused by loss or damage other than "fungus", wet or dry rot or bacteria but remediation of "fungus", wet or dry rot or bacteria prolongs the "period of restoration", we will pay for loss and/or expense sustained during the delay (regardless of when such a delay occurs during the "period of restoration"), but such coverage is limited to 30 days. The days need not be consecutive.

**F. Additional Coverage Extensions**

1. **Property In Transit**

   This Extension applies only to your personal property to which this form applies.

   a. You may extend the insurance provided by this Coverage Part to apply to your personal property (other than property in the care, custody or control of your salespersons) in transit more than 100 feet from the described premises. Property must be in or on a motor vehicle you own, lease or operate while between points in the coverage territory.

   b. Loss or damage must be caused by or result from one of the following causes of loss:

      (1) Fire, lightning, explosion, windstorm or hail, riot or civil commotion, or vandalism.

      (2) Vehicle collision, upset or overturn. Collision means accidental contact of your vehicle with another vehicle or object. It does not mean your vehicle's contact with the road bed.

      (3) Theft of an entire bale, case or package by forced entry into a securely locked body or compartment of the vehicle. There must be visible marks of the forced entry.

   c. The most we will pay for loss or damage under this Extension is $5,000.

   This Coverage Extension is additional insurance. The Additional Condition, Coinsurance, does not apply to this Extension.

2. **Water Damage, Other Liquids, Powder Or Molten Material Damage**

   If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes. This Coverage Extension does not increase the Limit of Insurance.

3. **Glass**

   a. We will pay for expenses incurred to put up temporary plates or board up openings if repair or replacement of damaged glass is delayed.

© ISO Properties, Inc.,  2001

**b.** We will pay for expenses incurred to remove or replace obstructions when repairing or replacing glass that is part of a building. This does not include removing or replacing window displays.

This Coverage Extension, **F.3.**, does not increase the Limit of Insurance.

**G. Definitions**

1. "Fungus" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

2. "Specified Causes of Loss" means the following: Fire; lightning; explosion; windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

   **a.** Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

      **(1)** The cost of filling sinkholes; or

      **(2)** Sinking or collapse of land into man-made underground cavities.

   **b.** Falling objects does not include loss or damage to:

      **(1)** Personal property in the open; or

      **(2)** The interior of a building or structure, or property inside the building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

   **c.** Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam.

POLICY NUMBER:   63A1003781-03                                    **COMMERCIAL PROPERTY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# PROTECTIVE SAFEGUARDS

This endorsement modifies insurance provided under the following:

COMMERCIAL PROPERTY COVERAGE PART

**SCHEDULE\***

| Prem. No. | Bldg. No. | Protective Safeguards Symbols Applicable |
|---|---|---|
| 1 | 1 | P-9 |

**Describe any "P-9":**   "Automatic Fire Suppression System (Ansul) Serviced Semi-Annually";"U.L. Rated Fire Extinguisher Serviced Annually"

A.  This insurance will be automatically suspended at the involved location if you fail to notify us immediately when you:

1.  Know of any suspension or impairment in the protective safeguards; or

2.  Fail to maintain the protective safeguards over which you have control in complete working order.

If part of an Automatic Sprinkler System is shut off due to breakage, leakage, freezing conditions or opening of sprinkler heads, notification to us will not be necessary if you can restore full protection within 48 hours.

B.  The protective safeguards to which this endorsement applies are identified by the following symbols:

**"P-1"   Automatic Sprinkler System,** including related supervisory services.

Automatic Sprinkler System means:

a.  Any automatic fire protective or extinguishing system, including connected:

(1)  Sprinklers and discharge nozzles;

(2)  Ducts, pipes, valves and fittings;

(3)  Tanks, their component parts and supports; and

(4)  Pumps and private fire protection mains.

b.  When supplied from an automatic fire protective system:

(1)  Non-automatic fire protective systems; and

(2)  Hydrants, standpipes and outlets.

**"P-2"   Automatic Fire Alarm,** protecting the entire building, that is:

a.  Connected to a central station; or

b.  Reporting to a public or private fire alarm station.

**"P-3"   Security Service,** with a recorded system or watch clock, making hourly rounds covering the entire building, when the premises are not in actual operation.

**"P-4"   Service Contract** with a privately owned fire department providing fire protection service to the described premises.

**"P-9"**   The protective system described in the Schedule.

\*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.

CP 12 10 11 85             Copyright, ISO Commercial Risk Services, Inc., 1983

POLICY NUMBER:  63A1003781-03                                    COMMERCIAL PROPERTY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# OUTSIDE SIGNS

This endorsement modifies insurance provided under the following:

> BUILDING AND PERSONAL PROPERTY COVERAGE FORM
> CONDOMINIUM ASSOCIATION COVERAGE FORM
> CONDOMINIUM COMMERCIAL UNIT-OWNERS COVERAGE FORM
> STANDARD PROPERTY POLICY

### SCHEDULE

| Prem. No. | Bldg. No. | Construction of Sign | | Limit of Insurance | Causes of Loss Form Applicable | Coin-surance Percentage | Additional Premium |
|---|---|---|---|---|---|---|---|
| | | Entirely Metal | Other | | | | |
| 1 | 1 | | X | Per PR-01 | Per PR-01 | | Incl. |

With respect to outside signs described in the Declarations or in the Schedule:

A.  "Signs (other than signs attached to buildings)" is deleted from **PROPERTY NOT COVERED.**

B.  The second paragraph of the **LIMITS OF INSURANCE** section does not apply.  The limit applicable to each sign will be shown in the Declarations or in the Schedule.

CP 14 40 07 88                    Copyright, ISO Commercial Risk Services, Inc., 1983, 1987

POLICY NUMBER:   63A1003781-03                                          COMMERCIAL PROPERTY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ORDINARY PAYROLL LIMITATION OR EXCLUSION

This endorsement modifies insurance provided under the following:

BUSINESS INCOME (AND EXTRA EXPENSE) COVERAGE FORM
BUSINESS INCOME (WITHOUT EXTRA EXPENSE) COVERAGE FORM

### SCHEDULE

| Prem.<br>No. | Bldg.<br>No. | Number of Days<br>Ordinary Payroll Coverage<br>is Provided | Additional Exemptions | |
|---|---|---|---|---|
| | | | Job Classifications | Employees |
| 1 | 1 | 90 | | |

**A.** Business Income includes "ordinary payroll expenses" only for the number of days shown in the Schedule, or in the Declarations, following the date of direct physical loss or damage.  If no entry is made, "ordinary payroll expenses" are excluded.

**B.** In determining the operating expenses for the policy year for Coinsurance purposes, payroll expenses will not include "ordinary payroll expenses", except for "ordinary payroll expenses" incurred during the number of days shown in the Schedule, or in the Declarations. If the "ordinary payroll expenses" for the policy year vary during the year, the period of greatest "ordinary payroll expenses" will be used.

**C.** "Ordinary payroll expenses" means payroll expenses for all your employees except:

    **1.** Officers;

    **2.** Executives;

    **3.** Department managers;

    **4.** Employees under contract; and

    **5.** Additional Exemptions, shown in the Schedule or in the Declarations as:

        **a.** Job Classifications; or

        **b.** Employees.

    "Ordinary payroll expenses" include:

**(1)** Payroll;

**(2)** Employee benefits, if directly related to payroll;

**(3)** FICA payments you pay;

**(4)** Union dues you pay; and

**(5)** Workers compensation premiums.

**CP 15 10 10 90**          Copyright, ISO Commercial Risk Services, Inc., 1983, 1989          Page 1 of 1   ☐

POLICY NUMBER:  63A1003781-03

# EMPLOYEE DISHONESTY COVERAGE FORM
### (Coverage Form A – Blanket)

**A. COVERAGE**

We will pay for loss of, and loss from damage to, Covered Property resulting directly from the Covered Cause of Loss.

1. **Covered Property:** "Money", "securities", and "property other than money and securities".

2. **Covered Cause of Loss:** "Employee dishonesty".

3. **Coverage Extension**

   **Employees Temporarily Outside Coverage Territory:** We will pay for loss caused by any "employee" while temporarily outside the territory specified in the Territory General Condition for a period not more than 90 days.

**B. LIMIT OF INSURANCE**

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the **DECLARATIONS.**

**C. DEDUCTIBLE**

1. We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the **DECLARATIONS.** We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance.

2. You must:

   a. Give us notice as soon as possible of any loss of the type insured under this Coverage Form even though it falls entirely within the Deductible Amount.

   b. Upon our request, give us a statement describing the loss.

**D. ADDITIONAL EXCLUSIONS, CONDITION AND DEFINITIONS:** In addition to the provisions in the Crime General Provisions, this Coverage Form is subject to the following:

1. **Additional Exclusions:** We will not pay for loss as specified below:

   a. **Employee Cancelled Under Prior Insurance:** loss caused by any "employee" of yours, or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last such cancellation.

   b. **Inventory Shortages:** loss, or that part of any loss, the proof of which as to its existence or amount is dependent upon:

      (1) An inventory computation; or

      (2) A profit and loss computation.

2. **Additional Condition**

   **Cancellation As To Any Employee:** This insurance is cancelled as to any "employee":

   a. Immediately upon discovery by:

      (1) You; or

      (2) Any of your partners, officers or directors not in collusion with the "employee";

      of any dishonest act committed by that "employee" whether before or after becoming employed by you.

   b. On the date specified in a notice mailed to you. That date will be least 30 days after the date of mailing.

      The mailing of notice to you at the last mailing address known to us will be sufficient proof of notice. Delivery of notice is the same as mailing.

3. **Additional Definitions**

   a. **"Employee Dishonesty"** in paragraph **A.2.** means only dishonest acts committed by an "employee", whether identified or not, acting alone or in collusion with other persons, except you or a partner, with the manifest intent to:

      (1) Cause you to sustain loss; and also

      (2) Obtain financial benefit (other than employee benefits earned in the normal course of employment, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing or pensions) for:

         (a) The "employee"; or

         (b) Any person or organization intended by the "employee" to receive that benefit.

   b. **"Occurrence"** means all loss caused by, or involving, one or more "employees", whether the result of a single act or series of acts.

CR 00 01 10 90

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

This endorsement modifies the insurance provided under this policy.

COMMERCIAL CRIME COVERAGE
EMPLOYEE DISHONESTY COVERAGE FORM

# LIMITATION ON AMOUNT PAID UNDER THE EMPLOYEE DISHONESTY COVERAGE FORMS

The policy limit shown in the Declarations Pages is an aggregate policy limit.  We will not pay more than the stated policy limit for all losses that are covered under this policy form.

This aggregate policy limit applies regardless of the number of insured locations listed in this policy.

This aggregate policy limit applies to any and all coverages provided by the Employee Dishonesty Coverage Form.

LED-1 (1-2007)

POLICY NUMBER:    63A1003781-03

<div align="right">COMMERCIAL CRIME<br>COVERAGE FORM B</div>

# FORGERY OR ALTERATION COVERAGE FORM

**A. COVERAGE**

We will pay for loss involving Covered Instruments resulting directly from the Covered Causes of Loss.

1. **Covered Instruments:** Checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are:

   a. Made or drawn by or drawn upon you;

   b. Made or drawn by one acting as your agent;

   or that are purported to have been so made or drawn.

2. **Covered Causes Of Loss:** Forgery or alteration of, on or in any Covered Instrument.

3. **Coverage Extension**

   **Legal Expenses:** If you are sued for refusing to pay any Covered Instrument on the basis that it has been forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur and pay in that defense. The amount we will pay under this extension is in addition to the Limit of Insurance applicable to this insurance.

**B. LIMIT OF INSURANCE**

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

**C. DEDUCTIBLE**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. This provision does not apply to legal expenses paid under the Coverage Extension.

**D. ADDITIONAL EXCLUSION, CONDITIONS AND DEFINITION** In addition to the provisions in the Crime General Provisions Form, this Coverage Form is also subject to the following:

1. **Additional Exclusion**

   **Acts of Employees, Directors, or Trustees:** We will not pay for loss resulting from any dishonest or criminal act committed by any of your "employees", directors, or trustees:

   a. Whether acting alone or in collusion with other persons; or

   b. Whether while performing services for you or otherwise.

2. **Additional Conditions**

   a. **Facsimile Signatures:** We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

   b. **General Amendment:** As respects this Coverage Form, the words Covered Property in the Crime General Provisions Form mean Covered Instruments.

   c. **Proof of Loss:** You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss.

   d. **Territory:** We will cover loss you sustain anywhere in the world.

   The Territory General Condition does apply to this Coverage Form.

3. **Additional Definition**

   **"Occurrence"** means all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.

CR 00 03 01 86

POLICY NUMBER:  63A1003781-03

<div align="right">

**COMMERCIAL CRIME**
Coverage Form C
</div>

# THEFT, DISAPPEARANCE AND DESTRUCTION COVERAGE FORM

**A. COVERAGE** – We will pay for loss of Covered Property resulting directly from the Covered Causes of Loss.

  **1. Section 1. – Inside The Premises**

    **a. Covered Property:** "Money" and "Securities" inside the "premises" or a "banking premises".

    **b. Covered Causes of Loss**

      **(1)** "Theft"

      **(2)** Disappearance

      **(3)** Destruction

    **c. Coverage Extensions**

      **(1) Containers of Covered Property:** We will pay for loss of, and loss from damage to, a locked safe, vault, cash register, cash box or cash drawer located in the "premises" resulting directly from an actual or attempted:

        **(a)** "Theft" of; or

        **(b)** Unlawful entry into

        those containers.

      **(2) Premises Damage:** We will pay for loss from damage to the "premises" or its exterior resulting directly from an actual or attempted "theft" of Covered Property if you are the owner of the "premises" or are liable for damage to it.

  **2. Section 2. – Outside the Premises**

    **a. Covered Property:** "Money" and "Securities" outside the "premises" in the care and custody of a "messenger".

    **b. Covered Causes of Loss**

      **(1)** "Theft"

      **(2)** Disappearance

      **(3)** Destruction

    **c. Coverage Extension**

    **Conveyance of Property By Armored Motor Vehicle Company:** We will pay for loss of Covered Property resulting directly from the Covered Causes of Loss while outside the "premises" in the care and custody of an armored motor vehicle company.

But, we will pay only for the amount of loss that you cannot recover:

  **(1)** Under your contract with the armored motor vehicle company; and

  **(2)** From any insurance or indemnity carried by, or for the benefit of customers of, the armored motor vehicle company.

**B. LIMIT OF INSURANCE**

The most we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the **DECLARATIONS.**

**C. DEDUCTIBLE**

We will not pay for loss in any one "occurrence" unless the amount of loss exceeds the Deductible Amount shown in the **DECLARATIONS.** We will then pay the amount of loss in excess of the Deductible Amount up to the Limit of Insurance. In the event more than one Deductible Amount could apply to the loss, only the highest Deductible Amount may be applied.

**D. ADDITIONAL EXCLUSIONS, CONDITION AND DEFINITIONS:** In addition to the provisions in the Crime General Provisions, this Coverage Form is subject to the following:

  **1. Additional Exclusions:** We will not pay for loss as specified below

    **a. Accounting or Arithmetical Errors or Omissions:** Loss resulting from accounting or arithmetical errors or omissions.

    **b. Acts of Employees, Directors, Trustees or Representatives:** Loss resulting from any dishonest or criminal act committed by any of your "employees", directors, trustees or authorized representatives:

      **(1)** Acting alone or in collusion with other persons; or

      **(2)** While performing services for you or otherwise.

    **c. Exchanges or Purchases:** Loss resulting from the giving or surrendering of property in any exchange or purchase.

    **d. Fire:** Loss from damage to the "premises" resulting from fire, however caused.

CR 00 04 10 90        Copyright, Insurance Services Office, Inc., 1984, 1989        Page 1 of 2 □

e. **Money Operated Devices:** Loss of property contained in any money operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

f. **Transfer or Surrender of Property**

(1) Loss of property after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises":

    (a) On the basis of unauthorized instructions; or

    (b) As a result of a threat to do:

       i. Bodily harm to any person; or

       ii. Damage to any property

(2) But, this exclusion does not apply under **COVERAGE**, Section **2.** to loss of Covered Property while outside the "premises" or "banking premises" in the care and custody of a "messenger" if you:

    (a) Had no knowledge of any threat at the time the conveyance began; or

    (b) Had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

g. **Vandalism:** Loss from damage to the "premises" or its exterior or to containers of Covered Property by vandalism or malicious mischief.

h. **Voluntary Parting of Title to or Possession of Property:** Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

2. **Additional Condition**

**Duties in the Event of Loss:** If you have reason to believe that any loss of, or loss from damage to, Covered Property involves a violation of law, you must notify the police.

3. **Additional Definitions**

a. **"Banking Premises"** means the interior of that portion of any building occupied by a banking institution or similar safe depository.

b. **"Messenger"** means you, any of your partners or any "employee" while having care and custody of the property outside the "premises".

c. **"Occurrence"** means an:

(1) Act or series of related acts involving one or more persons; or

(2) Act or event, or a series of related acts or events not involving any person.

d. **"Premises"** means the interior of that portion of any building you occupy in conducting your business.

e. **"Theft"** means any act of stealing.

 Copyright, Insurance Services Office, Inc., 1984, 1989 CR 00 04 10 90 □

COMMERCIAL GENERAL LIABILITY
CG 00 01 12 04

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

**(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

 © ISO Properties, Inc., 2003

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

## 2. Exclusions

This insurance does not apply to:

### a. Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

### b. Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

### c. Liquor Liability

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

### d. Workers' Compensation And Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

### e. Employer's Liability

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003    CG 00 01 12 04   □

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

  (e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2003

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003

CG 00 01 12 04 □

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. **Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

p. **Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

## COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a., b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

 © ISO Properties, Inc., 2003 CG 00 01 12 04 □

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

**(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**COVERAGE C MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(1)** The accident takes place in the "coverage territory" and during the policy period;

**(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

**(1)** First aid administered at the time of an accident;

**(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

**(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003

CG 00 01 12 04   □

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage **C**;

   b. Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage **B**.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage **A**; and

   b. Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

     (1) How, when and where the "occurrence" or offense took place;

     (2) The names and addresses of any injured persons and witnesses; and

     (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

     (1) Immediately record the specifics of the claim or "suit" and the date received; and

     (2) Notify us as soon as practicable.

     You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

     (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

     (2) Authorize us to obtain records and other information;

     (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

     (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

**(1)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

**(2)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

© ISO Properties, Inc., 2003

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

© ISO Properties, Inc., 2003

b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

(1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

   (a) Snow removal;

   (b) Road maintenance, but not construction or resurfacing; or

   (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  a. False arrest, detention or imprisonment;

  b. Malicious prosecution;

  c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

  f. The use of another's advertising idea in your "advertisement"; or

  g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

  a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

     (a) When all of the work called for in your contract has been completed.

     (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

     (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  b. Does not include "bodily injury" or "property damage" arising out of:

   (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

   (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

   (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

  a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

     © ISO Properties, Inc., 2003      CG 00 01 12 04   □

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

POLICY NUMBER:   63A1003781-03                              COMMERCIAL GENERAL LIABILITY

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CHANGES IN GENERAL LIABILITY FORMS FOR COMMERCIAL PACKAGE POLICIES

This endorsement modifies insurance provided under the following:

COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE
COMPREHENSIVE GENERAL LIABILITY INSURANCE
CONTRACTUAL LIABILITY INSURANCE
DRUGGISTS LIABILITY INSURANCE
ELEVATOR COLLISION INSURANCE
MANUFACTURERS AND CONTRACTORS LIABILITY INSURANCE
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY INSURANCE
OWNERS, LANDLORDS AND TENANTS LIABILITY INSURANCE
PREMISES MEDICAL PAYMENTS INSURANCE
SPECIAL MULTI-PERIL POLICY LIABILITY INSURANCE
STOREKEEPERS INSURANCE

A.  Whenever the term "policy" is used in any form listed above or in the declarations or any related endorsement, it is changed to "coverage part".

B.  The Common Policy Declarations (other than any references to premiums) and the Common Policy Conditions do not apply.

C.  With respect to the Special Multi-Peril Policy Conditions and Definitions Form attached to this policy:

1.  The General Conditions, Conditions Applicable to Section II and Definitions Applicable to Section II apply only to the Commercial General Liability Coverage Part;

2.  The Conditions Applicable to Section I do not apply to any part of this policy; and

3.  The Cancellation condition is replaced by the following:

Cancellation. This policy may be cancelled by the "named insured" by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the "named insured" at the address shown in this policy, written notice stating when not less than thirty days thereafter such cancellation shall be effective; provided that in the event of nonpayment of premium, such notice shall state when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The effective date of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the "named insured" or by the company shall be equivalent to mailing.

If the "named insured" cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

CG 00 99 11 85            Copyright, Insurance Services Office, Inc., 1985            Page 1 of 1  □

POLICY NUMBER:   63A1003781-03

COMMERCIAL GENERAL LIABILITY
CG 21 47 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph **2.,** Exclusions of **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY** (Section I – Coverages):

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph **2.,** Exclusions of **COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY** (Section I – Coverages):

This insurance does not apply to:

"Personal injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs **(a)**, **(b)** or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**CG 21 47 10 93**               Copyright, Insurance Services Office, Inc., 1992               □

POLICY NUMBER:   63A1003781-03

COMMERCIAL GENERAL LIABILITY
CG 21 60 04 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability** and Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising directly or indirectly out of:

a. Any actual or alleged failure, malfunction or inadequacy of:

   **(1)** Any of the following, whether belonging to any insured or to others:

   **(a)** Computer hardware, including microprocessors;

   **(b)** Computer application software;

   **(c)** Computer operating systems and related software;

   **(d)** Computer networks;

   **(e)** Microprocessors (computer chips) not part of any computer system; or

   **(f)** Any other computerized or electronic equipment or components; or

   **(2)** Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **2.a.(1)** of this endorsement

   due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

b. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER:   63A1003781-03

COMMERCIAL GENERAL LIABILITY
CG 21 61 04 98

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – YEAR 2000 COMPUTER-RELATED AND OTHER ELECTRONIC PROBLEMS – PRODUCTS/COMPLETED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2., Exclusions of Section I – Bodily Injury And Property Damage Liability:**

2.  **Exclusions**

This insurance does not apply to "bodily injury" or "property damage" included in the "products–completed operations hazard" definition and arising directly or indirectly out of:

a.  Any actual or alleged failure, malfunction or inadequacy of:

(1)  Any of the following, whether belonging to any insured or to others:

(a)  Computer hardware, including microprocessors;

(b)  Computer application software;

(c)  Computer operating systems and related software;

(d)  Computer networks;

(e)  Microprocessors (computer chips) not part of any computer system; or

(f)  Any other computerized or electronic equipment or components; or

(2)  Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **2.a.(1)** of this endorsement

due to the inability to correctly recognize, process, distinguish, interpret or accept the year 2000 and beyond.

b.  Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **2.a.** of this endorsement.

CG 21 61 04 98

Copyright, Insurance Services Office, Inc., 1997

**Page 1 of 1**    □

COMMERCIAL GENERAL LIABILITY
CG 21 73 01 08

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM**

"Any injury or damage" arising, directly or indirectly, out of a "certified act of terrorism".

**B.** The following definitions are added:

**1.** For the purposes of this endorsement, "any injury or damage" means any injury or damage covered under any Coverage Part to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "injury" or "environmental damage" as may be defined in any applicable Coverage Part.

**2.** "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**a.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**b.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

CG 21 73 01 08                    © ISO Properties, Inc., 2007                    Page 1 of 1   □

POLICY NUMBER:  63A1003781-03

COMMERCIAL GENERAL LIABILITY
CG 24 07 01 96

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# PRODUCTS/COMPLETED OPERATIONS HAZARD REDEFINED

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

## SCHEDULE

**Description of Premises and Operations:**

Per PR-01

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to "bodily injury" or "property damage" arising out of "your products" manufactured, sold, handled or distributed:

1. On, from or in connection with the use of any premises described in the Schedule, or

2. In connection with the conduct of any operation described in the Schedule, when conducted by you or on your behalf,

Paragraph **a.** of the definition of "Products-completed operations hazard" in the **DEFINITIONS** Section is replaced by the following:

"Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" that arises out of "your products" if the "bodily injury" or "property damage" occurs after you have relinquished possession of those products.

CG 24 07 01 96

Copyright, Insurance Services Office, Inc., 1994

Page 1 of 1

POLICY NUMBER:     63A1003781-03

**COMMERCIAL CRIME**
**CR 10 00 06 95**

# CRIME GENERAL PROVISIONS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the **DECLARATIONS.** The words "we," "us" and "our" refer to the Company providing this insurance.

Words and phrases in quotation marks are defined in the policy.

Unless stated otherwise in any Crime Coverage Form, **DECLARATIONS** or endorsement, the following General Exclusions, General Conditions and General Definitions apply to all Crime Coverage Forms forming part of this policy.

A.  **GENERAL EXCLUSIONS:** We will not pay for loss as specified below:

1.  **Acts Committed by You or Your Partners:** Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

2.  **Governmental Action:** Loss resulting from seizure or destruction of property by order of governmental authority.

3.  **Indirect Loss:** Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

    a.  Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

    b.  Payment of damages of any type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

    c.  Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

4.  **Legal Expenses:** Expenses related to any legal action.

5.  **Nuclear:** Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

6.  **War and Similar Actions:** Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

B.  **GENERAL CONDITIONS**

1.  **Concealment, Misrepresentation or Fraud:** This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

    a.  This insurance;

    b.  The Covered Property;

    c.  Your interest in the Covered Property; or

    d.  A claim under this insurance.

2.  **Consolidation – Merger:** If through consolidation or merger with, or purchase of assets of, some other entity:

    a.  Any additional persons become "employees;" or

    b.  You acquire the use and control of any additional "premises;"

    any insurance afforded for "employees" or "premises" also applies to those additional "employees" and "premises," but only if you:

    a.  Give us written notice within 30 days thereafter; and

    b.  Pay us an additional premium.

3.  **Coverage Extensions:** Unless stated otherwise in the Coverage Form, our liability under any Coverage Extension is part of, not in addition to, the Limit of Insurance applying to the Coverage or Coverage Section.

4.  **Discovery Period for Loss:** We will pay only for covered loss discovered no later than one year from the end of the policy period.

5.  **Duties in the Event of Loss:** After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property you must:

    a.  Notify us as soon as possible.

    b.  Submit to examination under oath at our request and give us a signed statement of your answers.

    c.  Give us a detailed, sworn proof of loss within 120 days.

    d.  Cooperate with us in the investigation and settlement of any claim.

6. **Joint Insured**

   a. If more than one Insured is named in the **DECLARATIONS**, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

   b. If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

   c. An "employee" of any Insured is considered to be an "employee" of every Insured.

   d. If this insurance or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

   e. We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

7. **Legal Action Against Us:** You may not bring any legal action against us involving loss:

   a. Unless you have complied with all the terms of this insurance; and

   b. Until 90 days after you have filed proof of loss with us; and

   c. Unless brought within 2 years from the date you discover the loss.

8. **Liberalization:** If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this insurance.

9. **Loss Covered Under More Than One Coverage of This Insurance:** If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

   a. The actual amount of loss; or

   b. The sum of the limits of insurance applicable to those coverages.

10. **Loss Sustained During Prior Insurance**

    a. If you, or any predecessor in interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

       (1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

       (2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

    b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

       (1) This insurance as of its effective date; or

       (2) The prior insurance had it remained in effect.

11. **Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate:** If any loss is covered:

    a. Partly by this insurance; and

    b. Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;

    the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

12. **Non-Cumulation of Limit of Insurance:** Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

13. **Other Insurance:** This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or indemnity. However, this insurance will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the **DECLARATIONS.**

14. **Ownership of Property; Interests Covered:** The property covered under this insurance is limited to property:

    a. That you own or hold; or

    b. For which you are legally liable.

    However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

**15. Policy Period**

    **a.** The Policy Period is shown in the **DECLARATIONS.**

    **b.** Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

**16. Records:** You must keep records of all Covered Property so we can verify the amount of any loss.

**17. Recoveries**

    **a.** Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

        **(1)** To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

        **(2)** Then to us, until we are reimbursed for the settlement made;

        **(3)** Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

    **b.** Recoveries do not include any recovery:

        **(1)** From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

        **(2)** Of original "securities" after duplicates of them have been issued.

**18. Territory:** This insurance covers only acts committed or events occurring within the United States of America, U. S. Virgin Islands, Puerto Rico, Canal Zone, or Canada.

**19. Transfer of Your Rights of Recovery Against Others to Us:** You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**20. Valuation – Settlement**

    **a.** Subject to the applicable Limit of Insurance provision we will pay for:

        **(1)** Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

            **(a)** At face value in the "money" issued by that country; or

            **(b)** In the United States of America dollar equivalent determined by the rate of exchange on the day the loss was discovered.

        **(2)** Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

            **(a)** Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities;"

            **(b)** Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities." However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

                **(i)** Value of the "securities" at the close of business on the day the loss was discovered; or

                **(ii)** Limit of Insurance.

        **(3)** Loss of, or loss from damage to, "property other than money and securities" or loss from damage to the "premises" for not more than the:

            **(a)** Actual cash value of the property on the day the loss was discovered;

(b) Cost of repairing the property or "premises;" or

(c) Cost of replacing the property with property of like kind and quality.

We may, at our option, pay the actual cash value of the property or repair or replace it.

If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

b. We may, at our option, pay for loss of, or loss from damage to, property other than "money:"

(1) In the "money" of the country in which the loss occurred; or

(2) In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

c. Any property that we pay for or replace becomes our property.

C. **GENERAL DEFINITIONS**

1. **"Employee"** means:

a. Any natural person:

(1) While in your service (and for 30 days after termination of service); and

(2) Whom you compensate directly by salary, wages or commissions; and

(3) Whom you have the right to direct and control while performing services for you; or

b. Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the "premises."

But "employee" does not mean any:

(1) Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

(2) Director or trustee except while performing acts coming within the scope of the usual duties of an employee.

2. **"Money"** means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

3. **"Property Other Than Money and Securities"** means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Crime Coverage Form as Property Not Covered.

4. **"Securities"** means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money.".

POLICY NUMBER:    63A1003781-03

<div align="right">

**COMMERCIAL INLAND MARINE**
CM 00 01 06 95

</div>

# COMMERCIAL INLAND MARINE CONDITIONS

The following conditions apply in addition to the Common Policy Conditions and applicable Additional Conditions in Commercial Inland Marine Coverage Forms:

## LOSS CONDITIONS

### A. ABANDONMENT

There can be no abandonment of any property to us.

### B. APPRAISAL

If we and you disagree on the value of the property or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each Party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

### C. DUTIES IN THE EVENT OF LOSS

You must see that the following are done in the event of "loss" to Covered Property:

1. Notify the police if a law may have been broken.

2. Give us prompt notice of the "loss". Include a description of the property involved.

3. As soon as possible, give us a description of how, when and where the "loss" occurred.

4. Take all reasonable steps to protect the Covered Property from further damage and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance. However, we will not pay for any subsequent "loss" resulting from a cause of loss that is not a Covered Cause of Loss. Also if feasible, set the damaged property aside and in the best possible order for examination.

5. Make no statement that will assume any obligation or admit any liability, for any "loss" for which we may be liable, without our consent.

6. Permit us to inspect the property and records proving "loss".

7. If requested, permit us to question you under oath, at such times as may be reasonably required, about any matter relating to this insurance or your claim, including your books and records. In such event, your answers must be signed.

8. Send us a signed, sworn statement of "loss" containing the information we request to settle the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

9. Promptly send us any legal papers or notices received concerning the "loss".

10. Cooperate with us in the investigation or settlement of the claim.

### D. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same "loss", we will not pay more than the actual amount of the "loss".

### E. LOSS PAYMENT

We will pay or make good any "loss" covered under this Coverage Part within 30 days after:

1. We reach agreement with you;

2. The entry of final judgment; or

3. The filing of an appraisal award.

We will not be liable for any part of a "loss" that has been paid or made good by others.

### F. OTHER INSURANCE

If you have other insurance covering the same "loss" as the insurance under this Coverage Part, we will pay only the excess over what you should have received from the other insurance. We will pay the excess whether you can collect on the other insurance or not.

Copyright, Insurance Services Office, inc., 1994

**G. PAIR, SETS OR PARTS**

1.  **Pair or set.** In case of "loss" to any part of a pair or set we may:

    a.  Repair or replace any part to restore the pair or set to its value before the "loss"; or

    b.  Pay the difference between the value of the pair or set before and after the "loss".

2.  **Parts.** In case of "loss" to any part of Covered Property consisting of several parts when complete, we will only pay for the value of the lost or damaged part.

**H. PRIVILEGE TO ADJUST WITH OWNER**

In the event of "loss" involving property of others in your care, custody or control, we have the right to:

1.  Settle the "loss" with the owners of the property. A receipt for payment from the owners of that property will satisfy any claim of yours.

2.  Provide a defense for legal proceedings brought against you. If provided, the expense of this defense will be at our cost and will not reduce the applicable Limit of Insurance under this insurance.

**I. RECOVERIES**

Any recovery or salvage on a "loss" will accrue entirely to our benefit until the sum paid by us has been made up.

**J. REINSTATEMENT OF LIMIT AFTER LOSS**

The Limit of Insurance will not be reduced by the payment of any claim, except for total "loss" of a scheduled item, in which event we will refund the unearned premium on that item.

**K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US**

If any person or organization to or for whom we make payment under this insurance has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after "loss" to impair them.

**GENERAL CONDITIONS**

**A. CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:

1.  This Coverage Part;

2.  The Covered Property;

3.  Your interest in the Covered Property; or

4.  A claim under this Coverage Part.

**B. LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this Coverage Part unless:

1.  There has been full compliance with all the terms of this Coverage Part; and

2.  The action is brought within 2 years after you first have knowledge of the "loss".

**C. NO BENEFIT TO BAILEE**

No person or organization, other than you, having custody of Covered Property, will benefit from this insurance.

**D. POLICY PERIOD**

We cover "loss" commencing during the policy period shown in the Declarations.

**E. VALUATION**

The value of property will be the least of the following amounts:

1.  The actual cash value of that property;

2.  The cost of reasonably restoring that property to its condition immediately before "loss"; or

3.  The cost of replacing that property with substantially identical property.

In the event of "loss", the value of property will be determined as of the time of "loss".

Copyright, Insurance Services Office, Inc., 1994          CM 00 01 06 95   ☐

POLICY NUMBER:   63A1003781-03

COMMERCIAL INLAND MARINE
CM 00 66 06 95

# ACCOUNTS RECEIVABLE COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section E – DEFINITIONS.

## A. COVERAGE

1. We will pay:

   a. All amounts due from your customers that you are unable to collect;

   b. Interest charges on any loan required to offset amounts you are unable to collect pending our payment of these amounts;

   c. Collection expenses in excess of your normal collection expenses that are made necessary by the "loss"; and

   d. Other reasonable expenses that you incur to re-establish your records of accounts receivable;

   that result from Covered Causes of Loss to your records of accounts receivable.

2. **PROPERTY NOT COVERED**

   Coverage does not apply to:

   a. Records of accounts receivable in storage away from the "premises" shown in the Declarations; or

   b. Contraband, or property in the course of illegal transportation or trade.

3. **COVERED CAUSES OF LOSS**

   Covered Causes of Loss means RISKS OF DIRECT PHYSICAL "LOSS" to your records of accounts receivable except those causes of "loss" listed in the Exclusions.

4. **ADDITIONAL COVERAGE – COLLAPSE**

   We will pay for direct "loss" caused by or resulting from risks of direct physical "loss" involving collapse of all or part of a building or structure caused by one or more of the following:

   a. Fire; lightning; windstorm; hail; explosion; smoke; aircraft; vehicles; riot; civil commotion; vandalism; leakage from fire extinguishing equipment; sinkhole collapse; volcanic action; breakage of building glass; falling objects; weight of snow, ice or sleet; water damage; all only as insured against in this Coverage Form;

   b. Hidden decay;

   c. Hidden insect or vermin damage;

   d. Weight of people or personal property;

   e. Weight of rain that collects on a roof;

   f. Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   This Additional Coverage does not increase the Limits of Insurance provided in this Coverage Form.

5. **COVERAGE EXTENSION**

   **Removal**

   If you give us written notice within 10 days of removal of your records of accounts receivable because of imminent danger of "loss", we will pay for "loss" while they are:

   a. At a safe place away from your "premises"; or

   b. Being taken to and returned from that place.

   This Coverage Extension is included within the Limit of Insurance applicable to the "premises" from which the records of accounts receivable are removed.

## B. EXCLUSIONS

1. We will not pay for "loss" caused directly or indirectly by any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

   a. **GOVERNMENTAL ACTION**

      Seizure or destruction of property by order of governmental authority.

Copyright, Insurance Services Office, Inc., 1994

But we will pay for "loss" caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread if the fire would be covered under this Coverage Form.

**b. NUCLEAR HAZARD**

  (1) Any weapon employing atomic fission or fusion; or

  (2) Nuclear reaction or radiation, or radioactive contamination from any other cause. But we will pay for direct "loss" caused by resulting fire if the fire would be covered under this Coverage Form.

**c. WAR AND MILITARY ACTION**

  (1) War, including undeclared or civil war;

  (2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

  (3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for a "loss" caused by or resulting from any of the following:

  **a.** Delay, loss of use, loss of market or any other consequential loss.

  **b.** Dishonest or criminal act committed by:

  (1) You, any of your partners, employees, directors, trustees, or authorized representatives;

  (2) Anyone else with an interest in the property, or their employees or authorized representatives; or

  (3) Anyone else to whom the property is entrusted for any purpose.

  This exclusion applies whether or not such persons are acting alone or in collusion with other persons or such acts occur during the hours of employment.

  This exclusion does not apply to Covered Property that is entrusted to others who are carriers for hire or to acts of destruction by your employees. But theft by employees is not covered.

**c.** Alteration, falsification, concealment or destruction of records of accounts receivable done to conceal the wrongful giving, taking or withholding of money, securities or other property.

  This exclusion applies only to the extent of the wrongful giving, taking or withholding.

**d.** Bookkeeping, accounting or billing errors or omissions.

**e.** Electrical or magnetic injury, disturbance or erasure of electronic recordings that is caused by or results from:

  (1) Programming errors or faulty machine instructions;

  (2) Faulty installation or maintenance of data processing equipment or component parts;

  (3) An occurrence that took place more than 100 feet from your "premises"; or

  (4) Interruption of electrical power supply, power surge, blackout or brownout if the cause of such occurrence took place more than 100 feet from your "premises".

  But we will pay for direct "loss" caused by lightning.

**f.** Voluntary parting with any property by you or anyone entrusted with the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

**g.** Unauthorized instructions to transfer property to any person or to any place.

**3.** We will not pay for "loss" that requires any audit of records or any inventory computation to prove its factual existence.

**4.** We will not pay for a "loss" caused by or resulting from any of the following. But if "loss" by a Covered Cause of Loss results, we will pay for that resulting "loss".

  **a.** Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1.** above to produce the "loss".

  **b.** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

  **c.** Faulty, inadequate or defective:

  (1) Planning, zoning, development, surveying, siting;

  (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

## EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
## CLAIMS MADE AND REPORTED COVERAGE (STANDARD)

NOTICE: THIS COVERAGE IS PROVIDED ON A CLAIMS MADE AND REPORTED BASIS.  EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE AFFORDED UNDER THIS COVERAGE PART IS LIMITED TO LIABILITY FOR ONLY THOSE COVERED CLAIMS THAT ARE FIRST MADE AGAINST AN INSURED AND REPORTED TO US IN ACCORDANCE WITH THE NOTICE/REPORTING PROVISIONS SET FORTH IN THIS COVERAGE PART. THE LIMIT OF LIABILITY SHALL BE REDUCED AND MAY BE COMPLETELY EXHAUSTED BY PAYMENT OF DEFENSE COSTS.   PLEASE REVIEW THE COVERAGE AFFORDED UNDER THIS COVERAGE PART CAREFULLY AND DISCUSS THE COVERAGE HEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

The consideration for **our** issuing this coverage part is the payment of premium; in issuing the coverage part, **we** have relied upon all statements made to **us** in the **Application** and any attachments and all other information provided to **us**. The **Application** and attachments are incorporated herein and form a part of this coverage part.

Throughout this coverage part the words **"you"** and **"your"** refer to the **Named Insured** shown in the Declarations.

Under this coverage part the words **"we"**, **"us"** and **"our"** refer to the Company providing this insurance.

I.    **COVERAGE: WHAT IS COVERED**

    A.    **We** will pay **Loss** amounts that an **Insured** is legally obligated to pay on account of a **Claim** because of an **Insured Event** to which this coverage part applies.  However, the amount **we** will pay is limited as described in **Section VI. LIMIT OF LIABILITY** and **Section VII. RETENTION** sections of this coverage part.

    B.    This coverage part applies only if:

        1.    A **Claim** is first made against an **Insured** in accordance with **Section III. WHEN COVERAGE IS PROVIDED**;

        2.    The **Claim** is reported in accordance with **Section III. WHEN COVERAGE IS PROVIDED** and CONDITIONS and section VIII. CONDITIONS A. Duties in the event of a **Claim** (d);

        3.    A **Claim** is first made against an **Insured** in accordance with **Section IV. WHERE COVERAGE IS PROVIDED**; and

        4.    A **Claim** is first made against an **Insured** based upon an **Insured Event** that first occurred after the Retroactive Date set forth in the Declarations.

    C.    **Defense. We** have the right and duty to defend any **Claim** for an **Insured Event** made or brought against any **Insured** to which this coverage part applies. **We** have the right to choose counsel to defend a **Claim**. **We** have no duty to provide other services or take other actions. **Our** duty to defend any **Claim** ends when the Limit of Liability that applies has been exhausted, and in such event, the **Named Insured** shall, upon notice from **us**, promptly take over control of the defense.

GUD 050 0110                                                                                            Page 1 of 12

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

But **Claim** shall not mean any labor or grievance arbitration subject to a collective bargaining agreement; or any complaint, writ or other proceeding in which an **Insured** is alleged to have committed or engaged in a criminal offense or violation of a federal, state of local penal law.

C.   **Defense Costs** means those reasonable and necessary expenses that result from the investigation, settlement or defense of a specific **Claim** including attorney fees and expenses, the cost of legal proceedings, the cost of appeal bonds, the cost of bonds to release property being used to secure a legal obligation (but only for bond amounts within the Limit of Liability that applies). **We** have no obligation to furnish any bonds.

The following are not **Defense Costs**: costs incurred by any **Insured** before notice is provided to **us**; salaries and expenses of **your** **employees**, including in-house and/or coverage attorneys, salaries and expenses of **our** employees, or **our** in-house or coverage attorneys or the fees and expenses of independent adjusters we hire.

D.   **Discrimination** means termination of the employment relationship, a demotion, a failure or refusal to hire or promote, denial of an employment benefit or the taking of any adverse or differential employment action because of race, color, religion, age, sex, disability, pregnancy, sexual orientation, national origin, or any other basis prohibited by federal, state or local law occurring on or after the Retroactive Date as shown in the Declarations.

This coverage part covers retaliation **Claims** based on unlawful **discrimination** occurring on or after the Retroactive Date as shown on the Declarations Page, except as excluded in **Section IX**. **EXCLUSIONS: WHAT IS NOT COVERED.**

E.   **Employee** means an individual whose labor or service is engaged by and directed by the **Named Insured**, or any covered entity. This includes volunteers, part time, seasonal and temporary **Employees** as well as any individual employed in a supervisory, managerial or confidential position. Independent contractors and sub contractors are not **Employees** unless they are dedicated agents or representatives of an **Insured**. **Employees** who are leased to another employer are not **Employees**.

F.   **Harassment** means unwelcome sexual or non-sexual advances, requests for sexual or non-sexual favors or other verbal, visual or physical conduct of a sexual or non-sexual nature, where such **harassment** occurs on or after the Retroactive Date as shown in the Declarations and is based on a factor or category prohibited by law (including sex, race, age, national origin, disability, etc.), that (1) explicitly or implicitly are made a condition of employment, (2) are used as a basis for employment decisions, or (3) create a work environment that interferes with performance.

G.   **Inappropriate Employment Conduct** means any of the following occurring on or after the Retroactive Date as shown in the Declarations:

1.   actual or constructive termination of an employment relationship in a manner which is alleged to have been against the law or wrongful or in breach of an implied employment contract or breach of the covenant of good faith and fair dealing in the employment contract;

2.   allegations of wrongful demotion, or wrongful discipline;

3.   allegations of misrepresentation made by an **Employee**, a former **Employee** or an applicant for employment which arise from an **Insured's** employment decision to hire, fire, promote or demote;

GUD 050 0110                                                                 Page 3 of 12

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

4.  allegations of infliction of emotional distress, mental injury, mental anguish, shock, sickness, disease or disability made by an **Employee**, a former **Employee** or an applicant for employment which arise from an **Insured's** employment decision to hire, fire, promote or demote;

5.  allegations of false imprisonment, detention or malicious prosecution made by an **Employee**, a former **Employee** or an applicant for employment which arise from an **Insured's** employment decision to hire, fire, promote or demote;

6.  allegations of libel, slander, defamation of character or any invasion of right of privacy made by an **Employee**, a former **Employee** or an applicant for employment which arise from an **Insured's** employment decision to hire, fire, promote or demote; or

7.  other personal injury allegations made by an **Employee**, a former **Employee** or an applicant for employment which arise from an **Insured's** employment decision to hire, fire, promote or demote.

**Inappropriate Employment Conduct** shall not include any allegations other than those set forth above.

H.  **Insured** means person(s) described in **Section V. WHO IS INSURED**

I.  **Insured Event** means actual or alleged acts of **Discrimination**, **Harassment**, and/or **Inappropriate Employment Conduct**, by an **Insured** against an **Employee** or former **Employee** or applicant for employment with an **Insured** entity occurring on or after the Retroactive Date as shown in the Declarations. **Insured Event** shall not include **Claims** for actual or alleged violation of any federal, state or local wage and hour laws or regulations.

J.  **Laundry List Notification** means any attempt by an **Insured** to report multiple matters under this coverage part in a summary fashion that does not comply with **Section VIII. CONDITIONS A.** or **B**. By way of example, a **Laundry List Notification** may consist of a report by an **Insured** that lists purported potential claimants, either in the absence of a **Claim**, or in the absence of an oral complaint.

K.  **Loss** means damages, judgments (including prejudgment and post judgment interest awarded against an **Insured** on that part of any judgment paid by **us**), settlements **we** authorize or agree to, statutory attorney fees and **Defense Costs**.

However, **Loss** does not include anything specifically excluded in **Section IX. EXCLUSIONS: WHAT IS NOT COVERED**, or any of the following:

1.  salary or wages of the **Insured**;

2.  non-monetary relief (this provision does not apply to **Defense Costs** where non-monetary relief is sought for alleged **Harassment**, **Discrimination**, **Inappropriate Employment Conduct**;

3.  payment of insurance plan benefits by or on behalf of retired **Employees**, or that to which a claimant would have been entitled as an **Employee** had any **Insured** provided the claimant with a continuation of insurance plan benefits ;

4.  liquidated damages where there is a finding of wilfulness;

GUD 050 0110

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

5.     costs incurred by an **Insured** to modify or adapt any building or property in order to make such building or property more accessible or accommodating to any disabled person; costs associated with eliminating non-essential duties from the job description of a disabled person;  costs associated with providing a disabled person with reasonable workplace accommodations; and costs associated with lost productivity by an employer as the result of making a reasonable workplace accommodation for a disabled person;

6.     matters which may be deemed uninsurable according to the law under which this coverage part is construed;

7.     amounts owed under federal, state or local wage and hour laws;

8.     amounts owed under a contract of employment;

9.     commissions, bonuses, profit sharing or benefits pursuant to a contract of employment, including but not limited to vacation, holiday, and/or sick pay;

10.    severance payments or obligations to make payments;

11.    amounts that are sought or deemed to be owed under partnership, stock or other ownership agreements;

12.    fines, penalties and taxes; or

13.    punitive or exemplary damages.

L.     **Named Insured** means the person or entity designated in the Declarations of this coverage part.

M.     **One Insured Event** means (1) one or more covered allegations of **Discrimination**, **Harassment** and/or **Inappropriate Employment Conduct** which are related by an unbroken chain of events or (2) class action or multiple claimant or multiple plaintiff suits arising out of related **Insured Events**.

N.     **Subsidiary** means any organization more than fifty (50%) owned by the **Named Insured** listed in the **Application**.

## III.    <u>WHEN COVERAGE IS PROVIDED</u>

A.     This coverage part applies only to **Claims** arising out of an **Insured Event** first made or brought during the policy period and which are reported to **us** in accordance with the coverage part's notice provisions as set forth in **Section VIII. CONDITIONS. A. Duties in the Event of a Claim**.  **Claims** are considered to be first made when it is first served or received by the **Insured**.

B.     All **Claims** because of **One Insured Event** will be considered to have been made or brought on the date that the first of those **Claims** was first made or brought.

C.     Limited Reporting Period:  means the thirty (30) day period after the coverage part ends, during which **Claims** because of **Insured Events** which happen or commence during the **policy period** and are reported in accordance with **Sections I. COVERAGE:  WHAT IS COVERED** and **Section VIII. CONDITIONS** of the coverage part can be made.

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

**D.**     Extended Reporting Period.  If **you** cancel this coverage part or this coverage part is non-renewed, **you** shall have the right to buy an Extended Reporting Period Endorsement providing an extended reporting period of up to twelve (12) months from the end of the policy period, or the effective date of cancellation, whichever is earlier, in exchange for **your** payment of an additional premium.  **You** do not have this right, however, if **we** cancel for non payment of premium.

The Extended Reporting Period Endorsement will not be issued unless **we** receive a written request for it within thirty (30) days after this coverage part is cancelled or non-renewed, nor will it take effect unless the additional premium is paid within thirty (30) days after this coverage part is cancelled or non-renewed.  Once that premium is paid the endorsement may not be cancelled and the additional premium will be fully earned.

The additional premium for a twelve (12) month Extended Reporting Period will be one hundred percent (100%) of the premium charged for the last Policy Period.

However, the Extended Reporting Period will not apply to any **Claim** if other insurance **you** buy covers **you** or would cover **you** if its limits of coverage had not been exhausted.

Coverage under the Extended Reporting Period is with respect to **Claims** first made against an **Insured** during the policy period or Extended Reporting Period and first reported by an **Insured** during the Extended Reporting Period, provided always that **Claims** reported during the Extended Reported Period are limited to **Insured Events** which happen or commence before the original policy period ends by either cancellation or non-renewal and which are otherwise covered by this coverage part.

The Limit of Liability that applies at the end of the policy period is not renewed or increased and the Limits, as shown in the Declarations, shall not be increased in any way by the Limited Reporting Period or the addition of the Extended Reporting Period.

**E.**     If, during the policy period, any of the following changes occur:

**1.**     the acquisition of an **Insured**, or of all or substantially all of its assets, by another entity, or the merger or consolidation of an **Insured** into or with another entity such that the **Insured** is not the surviving entity; or

**2.**     the obtaining by any person, entity or affiliated group of persons or entities of the right to elect, appoint or designate over fifty percent (50%) of the directors of an **Insured** coverage under this coverage part with respect to such **Insured** will continue in full force and effect with respect to **Claims** for **Insured Events** committed before such change, but coverage with respect to such **Insured** will cease with respect to **Claims** for **Insured Events** committed after such change.  After any such change, this coverage part may not be cancelled and the entire premium for the coverage part will be deemed fully earned.

## IV.    <u>WHERE COVERAGE IS PROVIDED</u>

This coverage part covers **Claims** made and **Insured Events** occurring anywhere in the United States of America or its territories.

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

**V.**   **WHO IS INSURED**

    **A.**    **Individual.** If **you** are shown in the Declarations as an individual, **you** and **your** spouse are **Insureds** but only for the conduct of a business of which **you** are the sole owner.

    **B.**    **Corporation**, If **you** are shown in the Declarations as a corporation or organization other than a partnership or joint venture, **you** are an **Insured**. **Your** stockholders are also **Insureds**, but only with respect to their liability as **your** stockholders.

    **C.**    **Partnership or Joint Venture.** If **you** are shown in the Declarations as a partnership or joint venture, **you** are an **Insured**. **Your** partners or co-venturers and their spouses are also **Insureds**, but only for the conduct of **your** business.

        However, no person nor organization is covered for the conduct of any current or past partnership or joint venture not named in the Declarations.

    **D.**    **Other.** If **you** are a Limited Liability Corporation (LLC), or a Limited Liability Partnership ('LLP') of the **Named Insured** and **you** are shown in the Declarations as 'Other' **you** are an **Insured**. **Your** members, partners and shareholders are also **Insureds** but only with respect to the conduct of **your** business.

    **E.**    **Employees. Your Employees**, executive officers, directors and **your** trustees are **Insureds** only for the conduct of **your** business within the scope of their employment. **Your Employee's** status as an **Insured** will be determined as of the date of the **Discrimination, Harassment, Inappropriate Employment Conduct**, which caused an **Insured Event**.

    **F.**    **Mergers and Acquisitions.** Any organization that **you** newly acquire, form or merge with while this coverage part is in effect that has less than ten (10%) of the total number of **your Employees** as of the inception date of this coverage part shall be an **Insured** at the time of such acquisition, merger or formation if **you** own at least fifty-one percent (51%) of it. Within thirty (30) days prior to the expiration of the coverage part, the **Insured** shall give **us** written notice as to all such organizations. If **you** acquire, form or merge with any organization that has more than ten (10%) of the total number of **your Employees** as of the inception date of this coverage part, such organization is also an **Insured** if **you** own at least fifty-one (51%) of it; provided, however, no such organization is covered for more than forty-five (45) days or the remainder of the policy period, whichever is less, from the date acquired, merged or formed unless **we** agree to cover such acquisition or. newly formed organization within such forty-five (45) day period in consideration of an additional premium to be determined by **us**. Notwithstanding the foregoing, any acquired or formed organization is neither covered for **Loss** that results from an **Insured Event** that happened or first commenced before the **Insured** acquired or formed it; nor for **Loss** covered under any other insurance.

        This provision does not apply to a partnership or joint venture. Nor does it apply to any organization once it is shown in the Declarations of this coverage part.

    **G.**    Any **Subsidiary** listed in the **Application** shall be an **Insured**.

**VI.**   **LIMIT OF LIABILITY**

    **A.**    The amount shown at Item 4 (a) in the Declarations as the Each **Insured Event** Limit is the most **we** will pay for **Claims** first made or brought during the policy period for **Loss** that results from any **One Insured Event** regardless of the number of **Claims**.

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

B.      The amount shown at Item 4 (b) in the Declarations as the Aggregate Limit of Liability is the most we will pay for the combined total of all **Claims** first made or brought during the policy period for **Loss** that result from all **Insured Events**.

If this policy period is extended, the Limits, as shown in the Declarations shall not in any way increase. For purposes of the Limit of Liability, any coverage part extension is considered to be part of and not in addition to the former policy period.

## VII.    RETENTION

**Our** obligation to pay under this coverage part applies only to covered amounts in excess of any Retention amount that the **Insured** must pay, as shown in the Declarations, and the Limit of Liability will not be reduced by the amount of such Retention.

The Retention amount will apply separately to each **Claim** made, however, it will only apply once to all **Claims** arising out of any **One Insured Event** regardless of the number of claimants who allege damages.

If, prior to terminating or demoting an **Employee** the **Insured** consults with and follows the advice of the EPL hotline and/or a labor law attorney approved by **our** Authorized Representatives, as shown in the Declarations, then the **Insured's** Retention is reduced by fifty (50%) in the event the **Insured** faces a **Claim** involving such termination or demotion.

## VIII.   CONDITIONS

**We** have no duty to provide coverage under this coverage part unless there has been full compliance with all the conditions contained in this coverage part.

### Duties in the event of a Claim

1.      **You** must see to it that **we** or **our** Authorized Representatives, as shown in the Declarations, are notified as soon as practicable but in no event more than thirty (30) days after any **Insured** who is a principal, partner, officer, director, trustee, in house counsel, **Employee(s)** within the HR Risk Management department or **Employee(s)** with personnel and risk management responsibilities, becomes aware that a **Claim** has been made.  **Your** notification should include:

   (a)     the identity of the person(s) alleging **Discrimination, Harassment, Inappropriate Employment Conduct;**

   (b)     the identity of any **Insured(s)** who allegedly committed the **Discrimination, Harassment, Inappropriate Employment Conduct;**

   (c)     the identity of any witnesses to the alleged **Discrimination, Harassment, Inappropriate Employment Conduct;** and

   (d)     the date(s) an **Insured Event** took place.

2.      **You** and any other **Insured** must:

   (a)     immediately send **us** or **our** Authorized Representatives, as shown in the Declarations, copies of any demands, notices, summonses or legal papers received in connection with the **Claim:**

   (b)     authorize **us** or **our** Authorized Representatives, as shown in the Declarations, to obtain statements, records and other information;

GUD 050 0110                                                                    Page 8 of 12

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

(c)    co-operate with **us** and **our** Authorized Representatives, as shown in the Declarations, in the investigation or defense of the **Claim**; and

(d)    co-operate with **us** and and **our** Authorized Representatives in the investigation, defense and settlement of a **Claim** and enforcement of contribution or indemnification actions against others;

3.    No **Insured** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without **our** consent. Subsequent payments that are deemed by **us** as having been prejudiced by any such voluntary payment will also be the sole responsibility of the **Insured**.

**B.    Report of a Potential Claim**

Solely at an **Insured's** option, an **Insured** may within the policy period report an oral complaint by an **Employee**, former **Employee** or applicant for employment alleging **Discrimination**, **Harassment** and/or **Inappropriate Employment Conduct**. If such report is received by **us** or **our** Authorized Representatives, as shown in the Declarations, within the policy period then any **Claim** subsequently arising from such oral complaint will be deemed to be made on the date such report was received. Such report must include the identity of the person(s) making the oral complaint. In no event, however, is an **Insured** entitled to coverage under this coverage part based on a **Laundry List Notification**.

**C.    Legal Action Against Us**

1.    No person or organization has the right under this coverage part:

(a)    to join **us** as a party or otherwise bring **us** into a suit asking for damages from an **Insured**; or

(b)    to sue **us** on this coverage part unless all of its terms have been fully complied with.

2.    A person or organization may sue **us** to recover on an agreed settlement or on final judgment against an **Insured** obtained after an actual trial, but we will not be liable for damages that are not payable under the terms of this coverage part or that are in excess of the applicable Limit of Liability. An agreed settlement means a settlement and release of liability signed by **us**, an **Insured** and the claimant's legal representative.

**D.    Other Insurance**

This coverage part shall deemed primary insurance in connection with covered **Claims** by **Employees** against an **Insured** because of an **Insured Event**. In connection with any other covered **Claim**, this Coverage part shall apply in excess of all indemnity rights of an **Insured** and in excess of any other valid or collectible insurance available to any **Insured**. Nothing herein is intended to make this coverage part subject to the terms, conditions and limitations of any other insurance, and nothing herein is intended to limit **our** or any **Insured's** right to contribution or indemnity from any other party, insurer or indemnitor.

GUD 050 0110                                        Page 9 of 12

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

E. **Premium**

    1.    The premium shown in the Declarations is for the policy period shown in the Declarations.

F. **Representations**

By accepting this coverage part **you** agree:

1. all statements in the **Application** and any attachments as well as all other information provided are true and complete and shall be deemed material to the acceptance of the risk or the hazard assumed by **us** under this coverage part;

2. those statements are based upon representations **you** made to **us**;

3. **we** have issued this coverage part in reliance upon **your** representations;

4. in the event that any statement or representation in the **Application** is untrue, this coverage part in its entirety shall be void at inception and of no effect whatsoever; and

5. to disclose any material facts **you** become aware of between the time that the **Application** for this coverage part is signed and the coverage part inception date.

Any representations in the **Application** shall be determined without regard to whether any **Insured** knew the **Application** contained such untrue statement or representation.

G. **Transfer Of Rights Of Recovery Against Others to Us**

If any **Insured** has rights to recover all or part of any payments **we** have made under this coverage part, those rights are transferred to **us**; the **Insured** must do nothing after a **Loss** to impair them. At **our** request, any **Insured** will bring suit or transfer those rights to **us** and help to enforce them.

H. **Bankruptcy**

Bankruptcy or insolvency of any **Insured** or of an **Insured's** estate will not relieve **us** of **our** obligations under this coverage part, except as excluded in **Section IX. EXCLUSIONS:  WHAT IS NOT COVERED.**

I. **False Or Fraudulent Claims**

If any **Insured** shall report any **Claim** knowing the same to be false or fraudulent as regards amount or otherwise, this coverage part will become void in its entirety and all coverage hereunder shall be forfeited.

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

IX.   **EXCLUSIONS: WHAT IS NOT COVERED**

A.   **Worker's Compensation/ERISA/FLSA/NRLA/WARN/COBRA/OSHA.** This coverage part does not cover any **Loss** arising out of any **Claim** alleging violation of any:  i) worker's compensation, disability benefits or unemployment compensation law, social security and other employment benefits law; ii) the Employee Retirement Income Security Act of 1974 Public Law 93-406; iii) the Fair Labor Standards Act (except the Equal Pay Act); (iv) the National Labor Relations Act; (v) the Worker Adjustment and Retraining Notification Act; (vi) the Consolidated Omnibus Budget Reconciliation Act of 1985; (vii) the Occupational Safety and Health Act; (viii) any other federal, state or local statute or law similar to any statute or law described in (i) through (vii) of this exclusion; provided, however, this exclusion shall not apply to any **Claim** for any actual or alleged retaliatory treatment of the claimant on account of the claimant's exercise of rights pursuant to such statute, law, rule or regulation.

B.   **Contractual Liability.** This coverage part does not cover any **Loss** based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any **Claim** any **Insured** is obligated to pay by reason of the assumption of another's liability for an **Insured Event** in a contract or agreement.  This exclusion will not apply to liability for damages because of an **Insured Event** that any **Insured** would have without the contract or agreement.

C.   **Consequential Loss.** This coverage part does not cover any **Loss** resulting from or attributable to any allegations made by or solely for the benefit of a claimant's domestic partner, spouse, child, parent, brother or sister.

D.   **Wage and Hour Law.** This coverage part does not cover any **Loss** arising out of a **Claim** based upon, arising out of, directly or indirectly in connection with, related to or in any way alleging violation of any state or local wage and hour law, however, in the event such **Claim** also alleges an **Insured Event** otherwise covered by this coverage part, notwithstanding the provisions of Section **1.C. Defense**, and subject to all other terms, conditions and exclusion contained in this coverage part, we agree to pay loss solely for that portion of the **claim** involving such **Insured Event**.

E.   **Stock Options.** This coverage part does not cover any **Loss** resulting from or attributable to stock options, including, without limitation, 1) the failure to grant stock options and/or 2) amounts attributable to unvested stock options which options did not vest because of the actual or alleged wrongful termination of an **Employee**.

F.   **Fraud and Collusion.**  This coverage part does not cover any **Loss** based upon, arising out of, directly or indirectly in connection with, related to, or in any way involving any **Claim** alleging fraud, collusion, dishonest, criminal or malicious acts by or at the direction of an **Insured**. Without limiting the foregoing, **we** will pay **Defense Costs** incurred relating to allegations of fraud, collusion, dishonest, criminal or malicious acts to defend an innocent **Insured** named in such **Claim** so long as such **Claim** also contains allegations against that innocent **Insured** involving an **Insured Event** otherwise covered by this coverage part.

G.   **Prior Knowledge.** This coverage part does not cover any **Loss** arising out of **Insured Events** of which any **Insured** who is a principal, partner, officer, director, trustee, in-house counsel, **Employee(s)** within the HR or Risk Management department or **Employee(s)** with personnel and risk management responsibilities was aware by actual knowledge of the facts or circumstances of such **Insured Event** prior to the Prior Knowledge Date as shown in the Declarations.

H.   **Prior Notice.** This coverage part does not cover any **Loss** arising out of **Insured Events** that have been the subject of any notice given under any other coverage part prior to the inception date of this coverage part.

GUD 050 0110                                                                                   Page 11 of 12

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

I.     **Punitive Damages.**  This endorsement does not cover any **Loss** arising out of any fines, penalties, punitive damages, exemplary damages or any additional damages resulting from the multiplication of compensatory damages (referred to herein collectively as "Punitive Damages"), except that if a suit is brought against the **Named Insured** on a **Claim** falling within the coverage hereof, seeking both compensatory and Punitive Damages, then **we** will afford a defense to such action, without liability, however, for such Punitive Damages; provided further, that **our** obligation to provide such defense for Punitive Damages shall terminate when the **Claim** for compensatory damages in such action is terminated or paid through judgment or settlement and, in no event, shall **we** afford a defense for Punitive Damages after the Limit of Liability for compensatory damages has been paid.

J.     **Retroactive Date.** This coverage part does not cover any **Loss** arising out of any **Insured Events** that first occurred on or before the Retroactive Date as set forth in the Declarations.  For the purposes of this exclusion, related **Insured Events** are excluded if the first related **Insured Event** took place or is alleged to have taken place prior to the Retroactive Date.

GUD 050 0110                                               Page 12 of 12

© 2010 X.L. America, Inc. except material provided by third parties.
All Rights Reserved.

# NOTICE TO POLICYHOLDERS

**IMPORTANT INFORMATION TO POLICYHOLDERS - CALIFORNIA**

In the event you need to contact someone about this Policy for any reason please contact your agent.  If you have additional questions, you may contact the insurance company issuing this Policy at the following address and telephone number:

> XL Insurance
> Seaview House
> 70 Seaview Avenue
> Stamford, CT  06902-6040
> 1-800-688-1840

If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

> California Department of Insurance
> Consumer Communications Bureau
> 300 South Spring Street, South Tower
> Los Angeles, CA  90013
>
> 1-800-927-4357
> 213-897-8921 (if calling from within the Los Angeles area)
> 1-800-482-4833 (TDD Number)

Written correspondence is preferable so that a record of your inquiry can be maintained.  When contacting your agent, company or the Bureau of Insurance, have your Policy Number available.

PN CA 02 0405                                    Page 1 of 1

# NOTICE TO POLICYHOLDERS

## PRIVACY POLICY

The XL America, Inc. insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

## Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

## Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;
- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;

# NOTICE TO POLICYHOLDERS

- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

- Your independent insurance agent or broker;

PN CW 02 0505                                     Page 2 of 3

# NOTICE TO POLICYHOLDERS

- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

PN CW 02 0505                              Page 3 of 3

EXHIBIT "B"

## *PRECISION RISK MANAGEMENT, INC.*

*P.O. BOX 628, CYPRESS, CA 90630-0628*
*(714) 228-7900 • FAX: (714) 228-7879*

July 01, 2014

David C. Werner
35-900 Bob Hope Drive #105
Rancho Mirage, CA 92270

| RE: | Our Named Insd: | Savas Zois and Juan Amaya |
|---|---|---|
| | DBA: | Dukes Burgers |
| | Date of Loss: | 11/06/2012 |
| | Our Claim No.: | 2012-8770-63A |
| | Loss Location: | 14359 Valley Blvd., La Puente, CA 91746 |

Dear Mr. Werner:

As you know, we have been retained to investigate the above captioned loss on behalf of XL Specialty Insurance Company.

We are in receipt of 2 letters from your office. The first dated 06/242014 and the second dated 06/25/2014. The 06/24 letter was faxed to our offices on 06/24 at 4:18pm. The second letter was received at our offices on 06/30/2014.

In the letter dated 06/24/2014 you requested file notes, e-mails and reports between PRM and XL Specialty. In that letter you referred to Insurance Code 2071. In reviewing that code I confirmed that the documents named include the following: estimates, bids, appraisals, scopes of loss, drawings, plans, reports, third party findings, covered damages and cost to repair.

In the letter dated 06/25/2014 you discuss the cause of loss as it relates to coverage under form COEND EBC2 02/09 - EQUIPMENT BREAKDOWN COVERAGE. I refer you to our letter dated June 23, 2014. The proximate cause of the loss was a fire that began in the attic space above the kitchen.

Please return the check issued to the named insured on 04/16/14 for $35,409.06 for the replacement of Business Personal Property. Upon receipt of the check I will request authority to issue payment under the building limit not to exceed the policy limit.

The XL Specialty Insurance company reserves its right to supplement this statement or its position with additional grounds for reserving its rights or defending coverage under its reference policy should any such grounds appear hereafter. This is not intended to be nor should be construed as a waiver of any terms and conditions of the policy or XL Specialty Insurance company's right there under all of which continue in full force and effect.

Nothing contained herein waives any rights that the XL Specialty Insurance Company has under the subject policy or applicable law all of which rights are reserved including but not limited to the rights to reply upon other basis or grounds for denial of coverage not articulated herein and the rights to investigate this matter should not constitute an admission of coverage.

[c:\claimsdocs\P-32]

Please note that no one may bring action against us under this policy unless; there has been full compliance with all the terms of this policy and; the action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Regards,

Terry Huggins
Property Field Claims Specialist
PRECISON RISK MANAGEMENT, INC.
for XL Specialty Insurance Company
714-228-7900 x1160

cc:    GRG Best Insurance Agency
       1400 E. Katella Avenue, Ste 213
       Orange, CA 92867

## PRECISION RISK MANAGEMENT, INC.

P.O. BOX 628, CYPRESS, CA 90630-0628
(714) 228-7900 • FAX: (714) 228-7879

July 11, 2014

David C. Werner
35-900 Bob Hope Drive #105
Rancho Mirage, CA 92270

RE: | Our Named Insd: | Savas Zois and Juan Amaya
--- | --- | ---
| DBA: | Dukes Burgers
| Date of Loss: | 11/06/2012
| Our Claim No.: | 2012-8770-63A
| Loss Location: | 14359 Valley Blvd., La Puente, CA 91746

Dear Mr. Werner:

As you know, we have been retained to investigate the above captioned loss on behalf of XL Specialty Insurance Company.

We are forwarding this letter as a follow up to our letter dated 07/01/2014.

We are most recently in receipt of 2 letters from your office. The first dated 07/03/2014 and was received at our offices on 07/07/2014 and the second dated 07/09/2014 was received in our offices on 07/09/2014.

A payment for $35,409.06 was issued to the named insured's on 04/16/2014 under the Business Personal Property coverage line after we confirmed with the named insured's that the items claimed were Business Personal Property.

It is my understanding that the named insured's are now claiming that the items this payment was issued for are building items. We cannot "reclassify" an issued payment as you have requested. Check #21716 for $35,409.06 must be voided and returned. We will then request authority to issue a check for the building damages not to exceed the building policy limit. This check will not be issued to your client but rather to the additional insured who is the building owner.

We are once again requesting that you return the check issued to the named insured's on 04/16/14 for $35,409.06 for the replacement of Business Personal Property. Upon receipt of the check we will request authority to issue payment under the building limit not to exceed the policy limit.

The XL Specialty Insurance company reserves its right to supplement this statement or its position with additional grounds for reserving its rights or defending coverage under its reference policy should any such grounds appear hereafter. This is not intended to be nor should be construed as a waiver of any terms and conditions of the policy or XL Specialty Insurance company's right there under all of which continue in full force and effect.

Nothing contained herein waives any rights that the XL Specialty Insurance Company has under the subject policy or applicable law all of which rights are reserved including but not limited to the rights to reply upon other basis or grounds for denial of coverage not

[c:\claimsdocs\P-J2]

articulated herein and the rights to investigate this matter should not constitute an admission of coverage.

Please note that no one may bring action against us under this policy unless; there has been full compliance with all the terms of this policy and; the action is brought within 2 years after the date on which the direct physical loss or damage occurred.

Regards,

Terry Huggins
Property Field Claims Specialist
PRECISON RISK MANAGEMENT, INC.
for XL Specialty Insurance Company
714-228-7900 x1160

cc:     GRG Best Insurance Agency
        1400 E. Katella Avenue, Ste 213
        Orange, CA 92867

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| David C. Werner [SBN: 67993]<br>Law Offices of David C. Werner<br>35-900 Bob Hope Drive, Suite 105<br><br>Rancho Mirage, California 92270<br>TELEPHONE NO.: 760-321-1676   FAX NO.: 760-321-1567<br>ATTORNEY FOR *(Name)*: Plaintiffs, Savas Zois and Juan Amaya | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**08/12/2014** at 04:24:34 PM<br>Clerk of the Superior Court<br>By Norri Lau,Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, California 92653
BRANCH NAME: Central Justice Center

CASE NAME: Dukes Burgers v. XL Specialty Ins. Co.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | C 30-2014-00739439-CU-IC-CJC |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>*(Cal. Rules of Court, rule 3.402)* | JUDGE Judge Geoffrey T. Glass<br>DEPT.: | |

*Items 1-6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | **(Cal. Rules of Court, rules 3.400-3.403)** |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [X] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [ ] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint *(not specified above)* (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition *(not specified above)* (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties       d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel  e. [ ] Coordination with related actions pending in one or more courts
      issues that will be time-consuming to resolve                in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence           f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [X] monetary b. [ ] nonmonetary; declaratory or injunctive relief c. [X] punitive

4. Number of causes of action *(specify)*: 2

5. This case [ ] is [X] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 8/06/2014

David C. Werner
_____                                    ▶ _____
(TYPE OR PRINT NAME)                                                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 2.30, 3.220, 3.400-3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10 |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) (*if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto*)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability (*not asbestos or
    toxic/environmental*) (24)
Medical Malpractice (45)
    Medical Malpractice—
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) (*not civil
    harassment*) (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract (*not unlawful detainer
        or wrongful eviction*)
    Contract/Warranty Breach—Seller
        Plaintiff (*not fraud or negligence*)
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case—Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage (*not provisionally
    complex*) (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property (*not eminent
        domain, landlord/tenant, or
        foreclosure*)
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential*)
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    (*arising from provisionally complex
    case type listed above*) (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment (*non-
        domestic relations*)
    Sister State Judgment
    Administrative Agency Award
        (*not unpaid taxes*)
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
    above*) (42)
    Declaratory Relief Only
    Injunctive Relief Only (*non-
        harassment*)
    Mechanics Lien
    Other Commercial Complaint
        Case (*non-tort/non-complex*)
    Other Civil Complaint
        (*non-tort/non-complex*)
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition (*not specified
    above*) (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief from Late
        Claim
    Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

CM-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
David C. Werner [SBN: 67993]
Law Offices of David C. Werner
35-900 Bob Hope Drive, Suite 105

Rancho Mirage, California 92270
TELEPHONE NO.: 760-321-1676    FAX NO. (Optional): 760-321-1567
E-MAIL ADDRESS (Optional): davidw@wernerllp.com
ATTORNEY FOR (Name): Plaintiffs, Savas Zois and Juan Amaya

**FOR COURT USE ONLY**

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**08/12/2014** at 04:24:34 PM
Clerk of the Superior Court
By Norri Lau, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Orange
STREET ADDRESS: 700 Civic Center Drive West
MAILING ADDRESS: 700 Civic Center Drive West
CITY AND ZIP CODE: Santa Ana, California 92653
BRANCH NAME: Central Justice Center

PLAINTIFF/PETITIONER: Savas Zois and Juan Amaya dba Dukes Burgers

DEFENDANT/RESPONDENT: XL Specialty Insurance Company

CASE: 30-2014-00739439-CU-IC-CJC

JUDICIAL OFFICER:
Judge Geoffrey T. Glass

| **NOTICE OF RELATED CASE** | DEPT.: |
|---|---|

*Identify, in chronological order according to date of filing, all cases related to the case referenced above.*

1.  a.  Title: Savas Zois and Juan Amaya dba Dukes Charbroiler Burgers v. Sam G. Doukas, et al.
    b.  Case number: 30-2014-00727292
    c.  Court:  [X] same as above
        [ ] other state or federal court *(name and address):*

    d.  Department: C15
    e.  Case type:  [ ] limited civil  [X] unlimited civil  [ ] probate  [ ] family law  [ ] other *(specify):*

    f.  Filing date: June 9, 2014
    g.  Has this case been designated or determined as "complex?"  [ ] Yes  [X] No
    h.  Relationship of this case to the case referenced above *(check all that apply):*
        [X] involves the same parties and is based on the same or similar claims.
        [ ] arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
        [X] involves claims against, title to, possession of, or damages to the same property.
        [ ] is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
            [ ] Additional explanation is attached in attachment 1h
    i.  Status of case:
        [X] pending
        [ ] dismissed  [ ] with  [ ] without prejudice
        [ ] disposed of by judgment

2.  a.  Title:
    b.  Case number:
    c.  Court:  [ ] same as above
        [ ] other state or federal court *(name and address):*

    d.  Department:

Page 1 of 3

Form Approved for Optional Use
Judicial Council of California
CM-015 [Rev. July 1, 2007]

**NOTICE OF RELATED CASE**

Legal
Solutions
Plus

Cal. Rules of Court, rule 3.300

CM-015

| PLAINTIFF/PETITIONER: Savas Zois and Juan Amaya dba Dukes Burgers<br>DEFENDANT/RESPONDENT: XL Specialty Insurance Company | CASE NUMBER: |
|---|---|

**2. (continued)**

e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other (specify):

f. Filing date:

g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

h. Relationship of this case to the case referenced above (check all that apply):
- ☐ involves the same parties and is based on the same or similar claims.
- ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
- ☐ involves claims against, title to, possession of, or damages to the same property.
- ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
  - ☐ Additional explanation is attached in attachment 2h

i. Status of case:
- ☐ pending
- ☐ dismissed ☐ with ☐ without prejudice
- ☐ disposed of by judgment

**3.** a. Title:

b. Case number:

c. Court: ☐ same as above
☐ other state or federal court (name and address):

d. Department:

e. Case type: ☐ limited civil ☐ unlimited civil ☐ probate ☐ family law ☐ other (specify):

f. Filing date:

g. Has this case been designated or determined as "complex?" ☐ Yes ☐ No

h. Relationship of this case to the case referenced above (check all that apply):
- ☐ involves the same parties and is based on the same or similar claims.
- ☐ arises from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.
- ☐ involves claims against, title to, possession of, or damages to the same property.
- ☐ is likely for other reasons to require substantial duplication of judicial resources if heard by different judges.
  - ☐ Additional explanation is attached in attachment 3h

i. Status of case:
- ☐ pending
- ☐ dismissed ☐ with ☐ without prejudice
- ☐ disposed of by judgment

**4.** ☐ Additional related cases are described in Attachment 4. Number of pages attached: _____

Date: 08/06/2014

David C. Werner, Esq.
(TYPE OR PRINT NAME OF PARTY OR ATTORNEY)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

CM-015

| PLAINTIFF/PETITIONER: Savas Zois and Juan Amaya dba Dukes Burgers<br>DEFENDANT/RESPONDENT: XL Specialty Insurance Company | CASE NUMBER: |
|---|---|

### PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF RELATED CASE

*(NOTE: You cannot serve the Notice of Related Case if you are a party in the action. The person who served the notice must complete this proof of service. The notice must be served on all known parties in each related action or proceeding.)*

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):* 23422 Mill Creek Drive, Suite 110, Laguna Hills, California 92653

2. I served a copy of the *Notice of Related Case* by enclosing it in a sealed envelope with first-class postage fully prepaid and *(check one):*
   a. ☐ deposited the sealed envelope with the United States Postal Service.
   b. ☒ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Related Case* was mailed:
   a. on *(date):* 8/12/2014
   b. from *(city and state):* Laguna Hills, California

4. The envelope was addressed and mailed as follows:
   a. Name of person served: Gregory Beam, Esq.
      Gregory Beam & Associates, Inc.
      Street address: 23113 Plaza Pointe Dr., Ste. 100
      City: Laguna Hills
      State and zip code: California 92653

   c. Name of person served:
      Street address:
      City:
      State and zip code:

   b. Name of person served:
      Street address:
      City:
      State and zip code:

   d. Name of person served:
      Street address:
      City:
      State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 8/12/2014

Sandra A. Gomez
_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

# EXHIBIT B

Robins, Kaplan, Miller & Ciresi L.L.P.
William A. Webster, Bar No. 262359
WAWebster@rkmc.com
2049 Century Park East, 34th Floor
Los Angeles, CA  90067-3208
Telephone:     310-552-0130
Facsimile:     310-229-5800

Attorneys for Defendant
XL SPECIALTY INSURANCE COMPANY

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

| | |
|---|---|
| SAVAS ZOIS and JUAN AMAYA dba DUKES BURGERS,<br><br>Plaintiffs,<br><br>v.<br><br>XL SPECIALTY INSURANCE COMPANY, DOES 1 through 25, and ROES 1 through 25, inclusive,<br><br>Defendants. | Case No. 30-2014-00739439-CU-IC-CJC<br><br>[Assigned for all Purposes to Honorable Geoffrey T. Glass, Judge - Dept. 32]<br><br>**XL SPECIALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT FOR (1) BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH**<br><br>Complaint filed: Aug. 12, 2014 |

Defendant, XL SPECIALTY INSURANCE COMPANY, (hereafter "Defendant" or "Insurer") in response to Plaintiffs' Complaint, hereby states and alleges as follows:

Defendant denies all allegations of Plaintiffs' Complaint unless expressly admitted herein.

## I.

## <u>IDENTIFICATION OF THE PARTIES</u>

1.     The statement contained in Paragraph 1 of Plaintiffs' Complaint does not require a response.

2.     Defendant admits the allegation contained in Paragraph 2 of Plaintiffs' Complaint that Savas Zois is the owner of Duke's Burgers. Defendant denies all other allegations in

60842405.1

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

Paragraph 2 of Plaintiffs' Complaint.

     3.      Defendant admits the allegations contained in Paragraph 3 of Plaintiffs' Complaint that Juan P. Amaya is a co-owner of Dukes Burgers. Defendant denies all other allegations in Paragraph 3 of Plaintiffs' Complaint.

     4.      Defendant denies the allegations contained in Paragraph 4 of Plaintiffs' Complaint.

## II.

### IDENTIFICATION OF PERTINENT DOCUMENTS

     5.      Defendant admits that Exhibit "A" attached to Plaintiffs' Complaint is a true and correct copy of the policy of insurance, policy number 63A 1003781-03 issued to Savas Zois and Juan Amaya d/b/a Dukes Burgers and denies all other allegations contained in Paragraph 5 of Plaintiffs' Complaint.

## III.

### FIRE DAMAGE

     6.      Defendant admits the allegation contained in Paragraph 6 of Plaintiffs' Complaint that on or about November 6, 2012, a fire occurred at the premises where Duke's Burgers conducted business. Defendant denies any and all additional allegations contained in Paragraph 6 of Plaintiffs' Complaint.

## IV.

### FACTS PERTINENT TO ALL CAUSES OF ACTION

     7.      Defendant denies the allegations contained in Paragraph 7 of Plaintiffs' Complaint.

     8.      Defendant denies the allegations contained in Paragraph 8 of Plaintiffs' Complaint.

     9.      Defendant denies the allegations contained in Paragraph 9 of Plaintiffs' Complaint.

     10.      Defendant denies the allegations contained in Paragraph 10 of Plaintiffs' Complaint.

///

60842405.1

- 2 -

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

11. Defendant denies the allegations contained in Paragraph 11 of Plaintiffs' Complaint.

12. Defendant denies the allegations contained in Paragraph 12 of Plaintiffs' Complaint.

13. Defendant denies the allegations contained in Paragraph 13 of Plaintiffs' Complaint.

## V.

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT

14. The statement contained in Paragraph 14 of Plaintiffs' Complaint does not require a response.

15. Defendant denies the allegations contained in Paragraph 15 of Plaintiffs' Complaint.

16. Defendant denies the allegations contained in Paragraph 16 of Plaintiffs' Complaint.

17. Defendant denies the allegations contained in Paragraph 17 of Plaintiffs' Complaint.

## VI.

### SECOND CAUSE OF ACTION

### BAD FAITH

18. The statement contained in Paragraph 18 of Plaintiffs' Complaint does not require a response.

19. Defendant denies the allegations contained in Paragraph 19 of Plaintiffs' Complaint.

20. Defendant denies the allegations contained in Paragraph 20 of Plaintiffs' Complaint.

21. Defendant denies the allegations contained in Paragraph 21 of Plaintiffs' Complaint.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

XL SPECIALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT

22. Defendant denies the allegations contained in Paragraph 22 of Plaintiffs' Complaint.

23. Defendant denies the allegations contained in Paragraph 23 of Plaintiffs' Complaint.

24. Defendant denies the allegations contained in Paragraph 24 of Plaintiffs' Complaint.

25. Defendant denies the allegations contained in Paragraph 25 of Plaintiffs' Complaint.

## VII.

## PRAYER

26. Defendant denies that Plaintiffs are entitled to any relief in their favor.

## AFFIRMATIVE DEFENSES

Defendant, XL SPECIALTY INSURANCE COMPANY, (hereafter "Defendant" or "Insurer") for its Affirmative Defenses to Plaintiffs' Complaint, hereby states and alleges as follows:

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

1. Plaintiffs have failed to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
### (Failure of Conditions Precedent)

2. Plaintiffs failed to satisfy all conditions precedent under the policy.

### THIRD AFFIRMATIVE DEFENSE
### (Policy Provisions)

3. Plaintiffs' claims are barred in whole, or in part, by the terms, conditions, limitations, and exclusions contained in the Defendant's policy, all of which are asserted and relied upon and none of which are waived.

///

60842405.1

- 4 -

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

XL SPECIALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

## FOURTH AFFIRMATIVE DEFENSE
### (Other Defenses Reserved)

4.    There may be other affirmative defenses that would be applicable to Plaintiffs' claims. If it is hereafter determined that any additional defenses are applicable, Defendant reserves the right to assert such affirmative defenses based on additional information and discovery.

WHEREFORE, Defendant prays that:

1.    Plaintiffs take nothing by their Complaint.

2.    Judgment be entered for Defendant.

3.    Defendant be awarded its costs of suit and to the extent appropriate as determined by the Court upon motion or otherwise, its attorneys' fees incurred and to be incurred.

4.    Such other relief as the Court deems just and proper.

DATED: September 9, 2014                    ROBINS, KAPLAN, MILLER & CIRESI L.L.P.

By: _____
            William A. Webster

**ATTORNEYS FOR DEFENDANT**
**XL SPECIALTY INSURANCE COMPANY**

60842405.1

- 5 -

XL SPECIALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT

**PROOF OF SERVICE**
**[1013A (3) CCP]**

STATE OF CALIFORNIA    )
                              ) ss.
COUNTY OF LOS ANGELES    )

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 2049 Century Park East, Suite 3400, Los Angeles, California 90067.

      On September 9, 2014, I caused the foregoing document described as **XL SPECIALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT FOR (1) BREACH OF INSURANCE CONTRACT AND (2) BAD FAITH** to be served on all interested parties in this action by [ ] faxing [X] placing [ ] hand delivering [ ] the original to the propounding party; [X] a true and correct copy thereof enclosed in a sealed envelope addressed as follows:

    David C. Werner
    Law Offices of David C. Werner
    35-900 Bob Hope Drive., Suite 105
    Rancho Mirage, CA 92270
    Tel: 760-321-1676 / Fax: 760-321-1567

[X]    **BY MAIL** as follows: I deposited such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal California date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **BY PERSONAL SERVICE:** By personally delivering a copy to each interested party, or by causing a copy to be personally delivered this same day to each interested party.

[X]    **(State)** I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

    Executed on September 9, 2014, at Los Angeles, California.

                              _____
                                CAROL LEE

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

XL SPECIALTY INSURANCE COMPANY'S ANSWER TO PLAINTIFFS' COMPLAINT

# EXHIBIT C

Case Summary:

| Case Id: | 30-2014-00739439-CU-IC-CJC |
|---|---|
| Case Title: | SAVAS ZOIS VS. XL SPECIALTY INSURANCE COMPANY |
| Case Type: | INSURANCE COVERAGE |
| Filing Date: | 08/12/2014 |
| Category: | CIVIL - UNLIMITED |

Register Of Actions:

| ROA | Docket | Filing Date | Filing Party | Document | Select |
|---|---|---|---|---|---|
| 1 | E-FILING TRANSACTION 2359214 RECEIVED ON 08/12/2014 04:24:34 PM. | 08/13/2014 | | *NV* | |
| 2 | COMPLAINT FILED BY ZOIS, SAVAS; AMAYA, JUAN ON 08/12/2014 | 08/12/2014 | | 164 pages | ☐ |
| 3 | CIVIL CASE COVER SHEET FILED BY ZOIS, SAVAS; AMAYA, JUAN ON 08/12/2014 | 08/12/2014 | | 2 pages | ☐ |
| 4 | SUMMONS ISSUED AND FILED FILED BY ZOIS, SAVAS; AMAYA, JUAN ON 08/12/2014 | 08/12/2014 | | 1 pages | ☐ |
| 5 | NOTICE OF RELATED CASE FILED BY ZOIS, SAVAS; AMAYA, JUAN ON 08/12/2014 | 08/12/2014 | | 3 pages | ☐ |
| 6 | PAYMENT RECEIVED BY FOR 194 - COMPLAINT OR OTHER 1ST PAPER IN THE AMOUNT OF 435.00, TRANSACTION NUMBER 11641895 AND RECEIPT NUMBER 11465998. | 08/13/2014 | | 1 pages | ☐ |
| 7 | CASE ASSIGNED TO JUDICIAL OFFICER GLASS, GEOFFREY ON 08/12/2014. | 08/12/2014 | | 1 pages | ☐ |
| 8 | E-FILING TRANSACTION 2365201 RECEIVED ON 09/04/2014 09:55:29 AM. | 09/04/2014 | | *NV* | |
| 9 | PROOF OF SERVICE OF 30-DAY SUMMONS & COMPLAINT - PERSONAL FILED BY ZOIS, SAVAS; AMAYA, JUAN ON 09/04/2014 | 09/04/2014 | | 3 pages | ☐ |

Participants:

| Name | Type | Assoc | Start Date | End Date |
|---|---|---|---|---|
| SAVAS ZOIS | PLAINTIFF | | 08/13/2014 | |
| LAW OFFICES OF DAVID C. WERNER | ATTORNEY | | 08/13/2014 | |
| JUAN AMAYA | PLAINTIFF | | 08/13/2014 | |
| XL SPECIALTY INSURANCE COMPANY | DEFENDANT | | 08/13/2014 | |

Hearings:

| Description | Date | Time | Department | Judge |
|---|---|---|---|---|

[ Print this page ]

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
Savas Zois and Juan Amaya dba Dukes Burgers

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
XL Specialty Insurance Company

(b) County of Residence of First Listed Plaintiff Los Angeles
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant ____________
*(IN U.S. PLAINTIFF CASES ONLY)*

(c) Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.
David C. Werner, Esq.
Law Offices of David C. Werner
35-900 Bob Hope Drive, Suite 105
Rancho Mirage, CA 92270
(760) 321-1676

Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.
William A. Webster, Esq.
Robins, Kaplan, Miller & Ciresi L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA 90067
(310) 552-0130

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☐ 2. U.S. Government Defendant
- ☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding ☒ 2. Removed from State Court ☐ 3. Remanded from Appellate Court ☐ 4. Reinstated or Reopened ☐ 5. Transferred from Another District (Specify) ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No ☐ **MONEY DEMANDED IN COMPLAINT: $** excess of $100,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Section 1332

**VII. NATURE OF SUIT** (Place an X in one box only).

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce/ICC Rates/Etc.
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced & Corrupt Org.
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Info. Act
- ☐ 896 Arbitration
- ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**CONTRACT**
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.)
- ☐ 153 Recovery of Overpayment of Vet. Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment

**REAL PROPERTY CONT.**
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS PERSONAL PROPERTY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Fed. Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury-Med Malpratice
- ☐ 365 Personal Injury-Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**TORTS PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accomodations
- ☐ 445 American with Disabilities-Employment
- ☐ 446 American with Disabilities-Other
- ☐ 448 Education

**PRISONER PETITIONS**
**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus/Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Ret. Inc. Security Act

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405 (g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405 (g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

**FOR OFFICE USE ONLY:** Case Number: SACV14-01461 JVS(JCGx)

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:   Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| [X] Yes   [ ] No | | | |
| If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | [ ] Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | | Western |
| | [X] Orange | | Southern |
| | [ ] Riverside or San Bernardino | | Eastern |

| QUESTION B:   Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes   [X] No | | [ ] NO. Continue to Question B.2. |
| If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | *check one of the boxes to the right* ➡ | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:   Is the United States, or one of its agencies or employees, a DEFENDANT in this action? | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.? *check one of the boxes to the right* ➡ | [ ] YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
|---|---|---|
| [ ] Yes   [X] No | | [ ] NO. Continue to Question C.2. |
| If "no," skip to Question D. If "yes," answer Question C.1, at right. | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.) | [ ] YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | *check one of the boxes to the right* ➡ | [ ] NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A. Orange County | B. Riverside or San Bernardino County | C. Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [X] | [ ] | [ ] |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | [ ] | [ ] | [ ] |

| **D.1.  Is there at least one answer in Column A?** | **D.2.  Is there at least one answer in Column B?** |
|---|---|
| [X] Yes   [ ] No | [ ] Yes   [X] No |
| If "yes," your case will initially be assigned to the | If "yes," your case will initially be assigned to the |
| SOUTHERN DIVISION. | EASTERN DIVISION. |
| Enter "Southern" in response to Question E, below, and continue from there. | Enter "Eastern" in response to Question E, below. |
| If "no," go to question D2 to the right. ➡ | If "no," your case will be assigned to the WESTERN DIVISION. |
| | Enter "Western" in response to Question E, below. ⬇ |

| **QUESTION E: Initial Division?** | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | SOUTHERN DIVISION |

| **QUESTION F: Northern Counties?** | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | [ ] Yes   [X] No |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?          [X] NO          [ ] YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Is this case related (as defined below) to any cases previously filed **in this court**?          [X] NO          [ ] YES

If yes, list case number(s): _____

**Civil cases are related when they:** (1) arise from the same or a closely related transaction, happening, or event; (2) call for determination of the same or substantially related or similar questions of law and fact; or (3) for other reasons would entail substantial duplication of labor if heard by different judges. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY**
**(OR SELF-REPRESENTED LITIGANT):** _____          DATE: <u>September 10, 2014</u>

William A. Webster

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

---

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
LOS ANGELES

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 10th day of September, 2014, served the foregoing **CIVIL COVER SHEET** via the manner listed below and addressed as follows:

**Via U.S. Mail**

David C. Werner
Law Offices of David C. Werner
35-900 Bob Hope Drive., Suite 105
Rancho Mirage, CA 92270
Tel: 760-321-1676 / Fax: 760-321-1567

*Attorneys for Plaintiffs Savas Zois and Juan Amaya dba Dukes Burgers*

CAROL LEE

60846817.1